United States District Court
District of Minnesota

| | |
|---|---|
| United States Of America,<br><br>    Plaintiff,<br><br>v.<br><br>Anton Joseph Lazzaro,<br><br>    Defendant. | Case No. 21-cr-173 (WMW/DTS) |

**Motion To Release Defendant On Bond Pending Trial**

Defendant Anton Lazzaro ("Mr. Lazzaro") submits this Motion to Release Defendant on Bond Pending Trial for the Court's consideration. As detailed below, Mr. Lazzaro respectfully requests that the Court release Mr. Lazzaro under conditions that provide 24-hour real-time video surveillance to the Court as well as ankle monitoring for location surveillance. Mr. Lazzaro's proposed round the clock surveillance would ensure his appearance at Court and mitigate any danger Mr. Lazzaro could potentially pose to the community.

Mr. Lazzaro requests that the Court set this matter for an evidentiary hearing to allow for live testimony on any disputed issues of fact.

## I. Background

**C. New Indictment and No Detention Hearing**

On August 11, 2021, a grand jury returned a multi-count indictment in this case against Mr. Lazzaro alleging various pornographic and sexual crimes related to

minors. (Indictment). Mr. Lazzaro, who was previously in touch with the U.S. Attorney's Office through counsel before the indictment was issued, was arrested at his home on August 12, 2021.

An initial appearance on the new indictment was held on August 12, 2021, with Mr. Lazzaro appearing via videoconference. (Minute Entry, ECF No. 7). There was no detention hearing conducted on the indictment charges at the time. (*Id.*). Mr. Lazzaro has remained in pre-trial incarceration for the past 12-days.

## II. Applicable Law

"From the passage of the Judiciary Act of 1789…to the present…federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Id*. "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id*.

It is axiomatic that a criminal defendant is presumed innocent until proven guilty. That is why the United States Constitution and 18 U.S.C. § 3142 clearly favor pre-trial release under the "least restrictive further condition, or combination of conditions, that the judicial officer determines will reasonably assure…the safety of the community." 18 U.S.C. § 3142(c)(1)(B); *Stack*, 342 U.S. at 4-5. However, Congress has created statutory carve-outs to this default rule of the traditional right to freedom. One such carve-out can be found in 18 U.S.C. § 3142(e) in cases involving a

sex offense and minors. This is one of those cases where a rebuttable presumption applies.

In order for Mr. Lazzaro to be subject to detention, and his constitutional right to bail denied, the Court must find a risk of dangerousness to the community "by clear and convincing evidence." *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Furthermore, even just the proffering of proof by the defendant is sufficient to rebut the presumption of dangerousness. *United States v. Gourley*, 936 F. Supp. 412, 416 (S.D. Tex. 1996) (citing *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989).

Mr. Lazzaro only has the burden of production with respect to the rebuttable presumption. *Id*. In fact, Mr. Lazzaro never has to carry the burden of persuasion to be admitted to bail; otherwise, the Eighth Amendment constitutional right to bail would be eviscerated.

The Court is instructed by statute to weigh four types of factors in determining whether Mr. Lazzaro has shown that his release will not pose a danger to any person or the community. *See* 18 U.S.C. § 3142(g). Those four categories include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id*.

### III. Mr. Lazzaro's Proposed Release Conditions

Mr. Lazzaro is seeking an order from the Court setting the most restrictive bond conditions imaginable. Mr. Lazzaro is asking the Court to place him on home

confinement. Mr. Lazzaro is asking the Court to require him to wear an ankle monitor with GPS location tracking. Mr. Lazzaro is asking the Court to require the installation of cameras in every area of the residence where he would stay during home confinement. Mr. Lazzaro is asking the Court to require that those cameras provide a real-time live video feed accessible by U.S. Probation and Pretrial Services 24 hours a day.

Mr. Lazzaro is asking to be allowed to leave the Sherburne jail to effectively go reside in a jail of the Court's own making with even more restrictions on his freedom than his current jailers impose. Mr. Lazzaro does not make this request lightly.

**A) Security Assessment**

Mr. Lazzaro proposes that he be released to reside at his home located at 201 South 11th Street, Unit 1920, Minneapolis, Minnesota 55403. (Security Assessment, Defense Exhibit 1). Mr. Lazzaro's home consists of a three-bedroom condominium of approximately 2,208 square feet. (Defense Exhibit 1). Mr. Lazzaro's home can only be accessed from the ground floor by first walking past the front desk which is consistently monitored 24-hours per day by a desk clerk. Visitors are required to check in with the desk clerk from 8:00 a.m. until 8:00 p.m.

There is no general public access to the elevator which leads to the building's residential apartments without first speaking with building staff during these hours. After 8:00 p.m., access to the elevator is only possible for people who have an electronic key FOB which are given to condominium owners only.

Mr. Lazzaro's residence is accessed by taking the non-public elevator to the 19th floor of the building. The building reports that there are cameras inside of the elevators which are used to access Mr. Lazzaro's home. Mr. Lazzaro's home is one of multiple condominiums on the 19th floor.

A "Ring" brand doorbell security camera that records when it detects movement is already in place on Mr. Lazzaro's front door and is operable. Access to video generated by the doorbell security camera can be easily made available for U.S. Probation Pretrial Services. Mr. Lazzaro is also willing to install a commercial grade access control pin-pad type system on the front door with biometric (thumbprint) authentication required to access the apartment. (Defense Exhibit 1).

The interior of Mr. Lazzaro's home is very much a controlled environment. The detailed floorplan of Mr. Lazzaro's home provided below shows that the entire residence is covered by commercial grade security cameras:



The red "X" marks indicate existing cameras, and the orange "X" marks indicate proposed camera placements. (Defense Exhibit 1). The proposed camera placements were arrived at after individuals with extensive law enforcement experience, including working for the FBI, personally visited the release residence and inspected the premises. Mr. Lazzaro recognizes that the Court may want security cameras providing coverage for all areas of the home at all times to allay any concerns about community safety. That is why Mr. Lazzaro is proposing such a restrictive bail package.

**B) Security Camera Specifications and Operations**

The type of cameras that are installed are manufactured and serviced by Haicam. (Defense Exhibit 1). The specific model is the Haicam E23 whose specifications may be viewed online. https://haicam.tech/haicam-e23 (last visited March 19, 2021). These high-resolution cameras record video captured at 1080p resolution and offer 300 degree horizontal and 60 degree vertical angle range. *Id*. The camera has built in night vision and infrared LEDs for superior coverage when light might be otherwise limited within the recording space. *Id*. Simply put, the cameras are overkill for the area and will not miss a single thing that takes place in Mr. Lazzaro's home.

These cameras would be powered over the ethernet and hard-wired into the internet connection at the proposed release residence. *Id*. The camera equipment on-site would be kept in a secure lock-box to prevent any tampering; the lock-box would be equipped with an alarm to notify U.S. Probation and Pre-trial Services of any tampering attempts immediately. (*Id*.). Importantly, Mr. Lazzaro proposes to provide U.S. Probation and Pre-trial Services with real-time access to live data as well as access to stored data:

- On a computer or handheld device with the appropriate log-in information, designated monitors such as U.S. Probation and Pretrial Release officials or their designee, would be able to view thumbnail views of all cameras. Any individual camera(s) can be selected by a monitor for specific viewing. Cameras can be accessed and monitored by anyone with the appropriate log-in and password combination in real time.

- Video is recorded constantly and stored both to a device and a cloud back up. The storage device is also maintained in the

> lockbox described above. Monitors may remotely retrieve historical footage as desired. Length of storage is variable per needs of the user. It is recommended at least 30 days of storage be maintained prior to it being written over.

- The above cameras would be integrated with access control and alarm systems. Contact alarms would be installed on all external doors and windows. "Push" notifications can be sent to designated monitors indicating a door or window has been opened. A monitor can then log-in to the video system to see what occurred and who entered/exited. The system can be configured to alert to any or all contact disruptions.

Although small blind spots may still exist in the home, sufficient coverage would exist to make it apparent if Mr. Lazzaro is missing or attempting to avoid monitors in a blind spot. Mr. Lazzaro proposes that all monitoring and security items would need to be installed, inspected, and approved by U.S. Probation prior to his release to the residence.

Taking the cameras together with the recommended use of bio-metric locks on areas where Mr. Lazzaro cannot go inside the home Mr. Lazzaro will be living inside a real-life "Truman Show" scenario. NICCOL, A., & WEIR, P., *The Truman Show*, Hollywood, CA, Paramount Pictures (1999).

### C) Other Proposed Release Conditions

In addition to the home confinement conditions outlined above, Mr. Lazzaro would also propose that he be equipped with an ankle monitor at all times. This would be a fail-safe in addition to the cameras to provide the Court with even greater assurances of Mr. Lazzaro's compliance.

Mr. Lazzaro also proposes that he would not be permitted access to any internet capable device including cell phones, tablets, or other item which allows its

user to access the internet without the prior approval of the Court. The Court could easily be certain that Mr. Lazzaro would not use any internet capable device for non-approved purposes by installing router monitoring software at Mr. Lazzaro's expense. Mr. Lazzaro proposes that he would only be permitted to use these devices for 1) work, 2) communications with his attorneys, and 3) pre-approved recreational television to not include adult entertainment.

Mr. Lazzaro is willing to submit to drug and alcohol testing on a schedule as provided by the Court. Mr. Lazzaro proposes that he not be allowed any contact with minors without the prior approval of the U.S. Probation and Pretrial Services office. Mr. Lazzaro is willing to submit to any other conditions of bond the Court might deem appropriate.

In the event that the Court believes Mr. Lazzaro's release on pre-trial home confinement in Minneapolis is insufficient, Mr. Lazzaro would ask that the Court consider allowing him to reside in California with his mother as a third-party custodian. U.S. Probation and Pretrial Services has already provided information about the single-family residence where Mr. Lazzaro could live in California with his mother. Additionally, Mr. Lazzaro would have the benefit of his living just blocks away from his brother who is a licensed attorney and officer of the court. If the Court were to allow Mr. Lazzaro to reside in California pending trial, then undersigned counsel would offer to accompany Mr. Lazzaro on a commercial flight directly from Minneapolis to California so that the Court does not worry about the risk of fleeing.

### D) Mr. Lazzaro Poses No Danger Under Proposed Release Conditions

Mr. Lazzaro has no prior criminal history. Even the Government must concede that Mr. Lazzaro has never spent a single day in jail in his entire life. Mr. Lazzaro is an upstanding member of the community who is actively engaged in the rich political life of Minneapolis. He also owns and operates multiple local businesses that keep at least a dozen Minneapolis residents employed full-time. Mr. Lazzaro is by all accounts a law-abiding citizen, contrary to the serious allegations in the Government's charging document. To keep Mr. Lazzaro in jail pre-trial is to effectively shut down those businesses and force his employees out of a job.

Mr. Lazzaro will not be permitted to leave the release residence without prior approval. Mr. Lazzaro will not have access to internet capable devices outside of the Court's monitoring. Mr. Lazzaro's own home is just blocks away from the federal courthouse in Minneapolis.

Mr. Lazzaro will be functionally in a prison of the Court's own design under the proposed bail conditions. "Danger" used in this sense must mean more than some generalized fear of Mr. Lazzaro. There must be a "danger" of him committing further <u>criminal acts</u> if released on bond. No such "danger" could possibly exist under Mr. Lazzaro's proposed conditions of bond.

## Conclusion

Mr. Lazzaro does not make this request for release on bond flippantly. The Court can see that Mr. Lazzaro has gone to great lengths to provide the Court with a detailed release plan. The proposed release plan and monitoring conditions are among the most restrictive imaginable. Mr. Lazzaro is still presumed innocent until

proven guilty. The proposed plan will protect the safety of the community without a doubt. Mr. Lazzaro should be released on bond.

Respectfully submitted,

/s/ Zachary L. Newland
Zachary Lee Newland
Senior Litigation Counsel
**Jeremy Gordon P.L.L.C.**
P.O. Box 2275
Mansfield, Texas 76063
Tel:  (972) 483-4865
Fax: (972) 584-9230
E-mail: zach@gordondefense.com
Texas Bar: 24088967
https://gordondefense.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was duly filed and served upon counsel of record, via the Court's CM/ECF system, this 24th day of August 2020.

/s/ Zachary L. Newland
Zachary L. Newland