UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-173-01 (WMW/DTS)

UNITED STATES OF AMERICA,

                    Plaintiff,

                                        **GOVERNMENT'S MOTION**
          v.                            **FOR DETENTION**

ANTON JOSEPH LAZZARO,                   **FILED UNDER SEAL**
a/k/a Tony Lazzaro,                     **PURSUANT TO 18 U.S.C.**
a/k/a Tony,                             **§ 3509(d)(2)**

                    Defendant.

      The United States of America, by and through its attorneys, W. Anders Folk,

Acting United States Attorney for the District of Minnesota, and Angela Munoz, Emily

Polachek, and Laura Provinzino, Assistant United States Attorneys, hereby moves for

the pretrial detention of Defendant Anton Lazzaro, pursuant to 18 U.S.C.

§ 3142(f)(1)(A).

## BACKGROUND

      From approximately May 2020 through December 2020, Anton Lazzaro

conspired with Gisela Castro Medina to recruit minor girls to engage in sexual acts with

Lazzaro in exchange for cash and other things of value such as cellular telephones,

vaping pens, alcohol, and accommodations in the Hotel Ivy in Minneapolis, Minnesota.

      On August 11, 2021, a grand jury returned a 10-count indictment against

Lazzaro, with seven of those counts also naming Medina as a co-defendant.  The

indictment charges:  conspiracy to commit sex trafficking of minors (Count 1), in

violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), (c), and 1594(c); sex trafficking of a minor (Counts 2–6), in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), (c), and 1594(a); attempted sex trafficking (Count 7), in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), (c), and 1594(a); and sex trafficking—obstruction (Counts 8–10), in violation of 18 U.S.C. §§ 1591(d) and 2.

## I.    Overview of Conspiracy To Commit Sex Trafficking of Minors

As set out in the Indictment, the Government has identified six minor victims of this sex-trafficking conspiracy. The FBI and Minnesota Bureau of Criminal Apprehension (BCA) have interviewed each of the six victims. Their reports have been corroborated through the forensic examination of digital devices, social media accounts, collateral interviews, commercial receipts, and geolocation evidence. In general, this evidence has shown that Lazzaro used Medina to identify girls on social media where Lazzaro could act as their "sugar daddy." Once Medina identified the girls, she would share their photographs with Lazzaro. If Lazzaro approved, Medina would continue to recruit and entice the girls on Snapchat to have sex with Lazzaro in exchange for money. Thereafter, Lazzaro would communicate with the girls on social media and invite them to his penthouse condominium located at the Hotel Ivy. Lazzaro often provided transportation to the girls and instructed them to tell the desk clerk they were there to see "Tony in room 1920." Once the girls arrived at Lazzaro's residence, they were enticed with alcohol and cash to engage in sexual acts. Once the sexual acts were completed, they would be paid in alcohol, cash, cellular telephones, vaping pens, and

accommodations in the Hotel Ivy. Medina would receive cash, alcohol, hotel accommodations, and travel for her role in the sex trafficking conspiracy.

## II.    Sex Trafficking of Minors

Government Exhibit 1 outlines additional specific details of numerous instances of Lazzaro sex trafficking multiple minor victims, which form the basis of the sex trafficking counts in the Indictment.  *See* Government Exhibit 1 ███████████ ██████████████████████  ████████████  The information provided in the affidavits of Special Agent Richard Waller of the FBI documents the strength of the evidence of the offenses.  The information provided by the victims has been consistent and corroborated.

## III.    Sex Trafficking — Obstruction

### A.    Victim █

On July 29, 2020, Victim █ told Lazzaro that he owed her additional money because Medina would "pimp out" Victim █ to him.  Lazzaro refused to pay Victim █ any additional money.  Instead, he hired a law firm to draft a Non-disclosure/Non-disparagement Agreement (NDA) to be signed by Victim █, her father, Lazzaro, and Medina.  The Government has attached a redacted copy of this NDA as Government Exhibit 2.  In brief, the NDA required Victim █ to agree that the sexual activity she had with Lazzaro was a "consensual interaction in the recent past" and she would not disparage him publicly.  In exchange, Lazzaro would give Victim █ $1000.  Victim █ and her father refused to sign the NDA.

## B. Victim ▮

At some point after having sex with Victim ▮ and paying her multiple times, Lazzaro told her that he had learned she was only 15 years old. Lazzaro previously believed she was 16 years old—even though her Snapchat profile indicated that she was 15 years old at the time they met. In October 2020, Lazzaro subsequently offered to pay Victim ▮ if she promised not to tell anyone that she had sex with him. In March 2021, Medina went to Victim ▮ home and gave her vapes, alcohol, and cash from Lazzaro. Medina warned Victim ▮ that Lazzaro had good lawyers and also told Victim ▮ not to text Lazzaro anymore. Medina also told Victim ▮ not to answer questions of law enforcement.

## IV. Execution of Search Warrants

In December 2020, the FBI obtained and executed search warrants at Lazzaro's apartment in the Hotel Ivy and Medina's dorm room at the University of St. Thomas. The search of Lazzaro's residence yielded vaping pens and a significant amount of cash, foreign currencies, and various precious metals (*e.g.*, palladium, rhodium, platinum, and silver). The FBI also seized more than 20 digital devices from Lazzaro, including multiple external storage devices. The phones Lazzaro had and that he wants to obtain, including a new Google Pixel 11, provide for end-to-end encryption.

At the time the search warrants were executed, the United States also served target letters on Lazzaro and Medina. The U.S. Attorney's Office has become aware that Lazzaro used these target letters to investigate the prosecution team, including

learning where members of the prosecution team live. Then, when Lazzaro was arrested, he told law enforcement that Assistant United States Attorney Laura Provinzino "will regret doing this."

## ARGUMENT

Lazzaro should be detained pending trial because he presents both a flight risk and a danger to the public. A sex trafficking case "involving sexual victimization of a minor is unusual in that it includes a presumption in favor of pretrial detention, reflecting the significant harm caused by such a crime." *United States v. Epstein*, 425 F. Supp. 3d 306, 313 (S.D.N.Y. 2019). The presumption states that, if the Court finds that probable cause supports the charges in the Indictment, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). The presumption imposes on Lazzaro a burden of production "to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (citation omitted). Even if Lazzaro can overcome that burden, "the presumption favoring detention . . . remains a factor to be considered among those weighed by the district court." *Id.*

In addition to the rebuttable presumption, the Court considers several other factors to determine a defendant's risk of nonappearance and danger to the community. The additional factors include: (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against the person, (3) the person's history and

characteristics, and (4) the nature and seriousness of the danger that the person poses. *Id.* § 3142(g). In addition, the victims under the Crime Victims Rights Act have a right to weigh in on the bond determination. They are unanimous in their overwhelming support of detention for Lazzaro. Here, a consideration of all the factors requires Lazzaro's detention because a preponderance of the evidence shows that he is a flight risk and clear and convincing evidence demonstrates his dangerousness to the community.

## I.     Lazzaro Presents a Flight Risk and a Danger to the Public

The Court must detain Lazzaro pending trial if it finds that (1) he has not met his burden of production to rebut the presumption of detention, (2) a preponderance of the evidence shows that he poses a risk of nonappearance, or (3) clear and convincing evidence demonstrates that he is a danger to the community.

### A.     The Nature of the Offense Involves the Sexual Exploitation of Minors in Violation of 18 U.S.C. § 1591

First, the Court must consider the "nature and circumstances of the offense charged, including whether the offense is . . . a violation of section 1591." 18 U.S.C. § 3142(g)(1). This factor demonstrates that Lazzaro is both a flight risk and a danger to the public. Each count of sex trafficking of a minor carries a mandatory minimum sentence of 10 years in prison. Lazzaro faces both a statutory maximum and advisory guidelines sentence of life in prison if convicted of the charges in the Indictment.

Facing such a lengthy sentence provides incentive for Lazzaro to use his vast resources to flee the jurisdiction. *See Abad*, 350 F.3d at 799.

The length of Lazzaro's potential sentence also reflects Congress's view that sex trafficking of minors is a serious and dangerous offense. Lazzaro faces charges under the Trafficking Victims Protection Act of 2000 (TVPA). The TVPA was enacted "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children." 22 U.S.C. § 7101(a). Indeed, Congress described the sex trafficking of minors—the charges against Lazzaro—as one of the two most "severe forms of trafficking in persons." *Id.* § 7102(8)(A). And Congress further found that those who, like Lazzaro, violate § 1591 are part of a "particular class[] of offenders [who] should ordinarily be detained prior to trial." *Epstein*, 425 F. Supp. 3d at 315 (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

## B. Weighty Evidence of Guilt

Second, the weight of the evidence counsels in favor of detention. 18 U.S.C. § 3142(g)(2). As demonstrated in the search warrant affidavit submitted as Government Exhibit 1, the victims' accounts of their encounters with Lazzaro have been extensively corroborated. The victims' reports are consistent with one another, they were able to accurately identify Lazzaro's vehicles and penthouse condominium, and the timing of their encounters matches receipts, social media posts, cellular records, and geolocation information. Moreover, the Government is actively investigating new tips that the FBI has received since Lazzaro's arrest on August 12, 2021.

7

## C.   Lazzaro has Extensive Resources and Contacts that Would Enable Flight from Prosecution

Third, Lazzaro's personal history and characteristics show that he presents a flight risk.  18 U.S.C. § 3142(g)(3).  Lazzaro has no significant ties to the community other than his teenaged girlfriend.  His mother and brother reside in California, and Lazzaro himself has multiple residences in other states, including Idaho and North Carolina.  According to the bond report prepared by U.S. Probation and Pretrial Services, Lazzaro has a net worth of more than 2 million dollars, including money offshore.  The Government notes that these calculations do not appear to include Lazzaro's extensive Bitcoin holdings, which are difficult to trace and readily accessible anywhere in the world.  And at the time the search warrant was executed on his penthouse, Lazzaro was found to be in possession of multiple types of foreign currency, including Euros, Japanese yen, Arab dirham, and Hong Kong currency, as well as precious metals worth more than $500,000.  Lazzaro's social media posts on Twitter and Instagram show him posing in his underwear with wads of cash, bragging about flying on private jets, and extensive international travel. Indeed, evidence at the detention hearing will reveal that Lazzaro has travelled at least 10 times internationally since 2017.  There is no indication that Lazzaro is employed in any capacity that would require him to stay in Minnesota.   In short, Lazzaro has sufficient financial and social resources that he could easily flee the jurisdiction and avoid prosecution.

### D.    Defendant Presents a Danger to Others

Finally, Lazzaro presents a serious risk to the victims and the general public.  18 U.S.C. § 3142(g)(4).  Under the Bail Reform Act, a defendant should be detained if there is "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."  *Id.* § 3142(f)(2).  As previously noted, the best evidence of the danger that Lazzaro poses to witnesses comes from the victims themselves.

Indeed, Lazzaro is already charged with three counts of obstruction in relation to different victims.  *See United States v. Savader*, 944 F. Supp. 2d 209, 214 (E.D.N.Y. 2013) (detaining a defendant after considering both his "capacity to threaten or intimidate the victims, both identified and unidentified" and the fact that his previous intimidation of victims shows a willingness to cause further harm).  Two of the charged acts involved Lazzaro sending others to intimidate victims, showing that he presents a danger to victims and witnesses so long as his means of communication are unfettered—something that can only be addressed through pretrial detention.  "Even a single incident of witness tampering has been a 'traditional ground for pretrial detention by the courts.'"  *Epstein*, 425 F. Supp. 3d at 318 (quoting *United States v. LaFontaine*, 210 F.3d 125, 132 (2d Cir. 2000)).  Lazzaro's three attempts to buy his victims' silence, then, certainly justify pretrial detention.

Lazzaro has also investigated and made threats against members of the prosecution, including his statement at the time of his arrest that AUSA Provinzino

"will regret doing this." This threat, coupled with Lazzaro's research of the prosecution team, is concerning and suggests that he intends to continue to obstruct the federal prosecution beyond the three instances of obstruction charged in the Indictment.[1]

These actions demonstrate that Lazzaro is inclined to intimidate, bribe, or threaten individuals—including the victims and witnesses in this case—who pose a threat to his current way of life.

## II.    The Court Must Consider the Victims' Requests that Lazzaro Be Detained.

The Government has submitted as Exhibit 3 letters from at least 10 of the minor victims and/or their family members requesting that the Court detain Lazzaro. These letters speak for themselves as to the victims' fear for their safety, and the Court should consider these requests. The Crime Victims' Rights Act (CVRA) provides that victims have "[t]he right to be reasonably heard at any public proceeding in the district court involving release" of the defendant. 18 U.S.C. § 3771(a)(4). The CVRA further provides that victims have "[t]he right to be reasonably protected from the accused."

---

[1] The United States is aware of an online post by political investigations reporter Jose Pagliery that Lazzaro called him in July. Lazzaro told him "There is nothing to this case. It's not some Matt Gaetz or whatever you think this is" and "revealed that he secretly recorded the phone call and asserted that he would buy the domain name 'JosePaglieryNews.com' to release audio of the call. After the interview, Lazzaro sent an email with a screenshot indicating he had already purchased six similar domains with that intent." *See* https://www.thedailybeast.com/gop-strategist-anton-lazzaro-arrested-for-underage-sex-trafficking (last accessed Aug. 23, 2021).

*Id.* § 3771(a)(1). Indeed, in enacting the CVRA, the Senate made clear that victims play a vital role in detention hearings:

> Victim participation in bail hearings can also serve valuable functions, particularly in alerting courts to the dangers that defendants might present if released unconditionally. Without victim participation, courts may not be fully informed about the consequences of releasing a defendant. It is difficult for a judge to evaluate the danger that a defendant presents to the community if the judge hears only from the defendant's counsel, who will present him in the best possible light, and from a prosecutor who does not know of the basis for the victim's fear. The person best able to inform the court of threatening statements that may have been made by the defendant and the threat he poses is often the person he victimized.

S. Rep. No. 108-191, at 22 (2003) (citation and internal quotation marks omitted). As such, the Court should consider the victims' assertions that they will not be reasonably protected from Lazzaro if he were released pending trial. Lazzaro knows where they live, where they work, and where they go to school. Anything short of detention cannot adequately provide for the victims' safety.

## III. There Are No Less Restrictive Measures that Would Ensure Lazzaro's Presence and the Safety of the Community.

Detention is appropriate in this case because there are no less restrictive measures or combination of conditions that would sufficiently mitigate Lazzaro's risk of flight and danger to the community. First, and most importantly, U.S. Probation and Pretrial Services has concurred that detention is appropriate in this case. ECF No. 9.

Home detention is inappropriate as it would mean returning Lazzaro to the scene of his offenses—every sexual encounter with a minor victim happened in his Hotel Ivy

penthouse. The crimes happened there. All Lazzaro needs is a Blackberry or Google Pixel 11 to arrange the commercial sex acts, order transportation, and obstruct the investigation. He can do that in the privacy of his own home and beyond the supervision of U.S. Probation and Pretrial Services. Even with the request of additional time for an in-person hearing, the Government has not been presented with any alternative release plan for vetting. Although the Defendant has provided a security assessment ahead of the August 24, 2021 detention hearing, there has been no representations or additional information to confirm whether this is a proposed release plan. To the extent that this is intended to be a release plan, the Government objects as this does not mitigate the risk of non-appearance or provide for community safety.

A halfway house is also an insufficient option. The Eighth Circuit has previously held that the serious nature and circumstances of an offense may alone suffice to warrant detention rather than a halfway house placement. *See United States v. Archibald*, No. 07-cr-52, 2007 WL 8321519, at *2 (S.D. Iowa Sept. 27, 2007) (citing *Abad*, 350 F.3d at 798)*; see also United States v. Dodd*, No. 20-cr-16 (NEB/HB), 2020 WL 1547419, at *2 (D. Minn. Apr. 1, 2020). This is particularly true given that some of the halfway houses in the District are not locked facilities, meaning Lazzaro, facing a lifetime in prison, could walk out of the halfway house and disappear. A halfway house also fails to address concerns of victim and witness intimidation. *See United States v. Baker*, 349 F. Supp. 3d 1113, 1134 (D.N.M. 2018) ("Placing Baker at [a halfway house] does not appear to address the danger concern or decrease the risk that Baker could retaliate

against victims, because it appears that Baker can do so through his associates and/or through virtual contact if he gains access to someone's cellular phone or computer at the [halfway house] or has a visitor to which he can pass on threats.").

Nor is electronic monitoring a sufficient measure to ensure Lazzaro's continued presence and the safety of the community. The preponderance of the evidence shows that Lazzaro's financial resources, out-of-state connections, international travel, and the possibility of a lifetime in prison make him a flight risk. "While an electronic bracelet may somewhat mitigate the risk of flight, realistically, a defendant can take off long before the USPO and the United States Marshals Service realize that he has fled, putting great distance between the defendant and the police." *Baker*, 349 F. Supp. 3d at 1134; *see also United States v. Portz*, No. 19-cr-168 (MJD/HB), 2020 WL 1862364, at *4 (D. Minn. Apr. 14, 2020) (revoking this Court's release order and noting that "GPS monitors can be cut off, and it takes time for probation to respond to such an action"). And Lazzaro has shown proficiency in computers and the willingness to use confederates to intimidate witnesses—both of which are possible even while wearing an ankle bracelet.

Based on this, Lazzaro poses a serious risk that he will flee and be a danger to the community, including by obstructing justice or intimidating a witness. The § 3142 factors, including the presumption, strongly weigh in favor of detention along with the consistent and unwavering recommendation of the victims. And it is consistent with all other sex trafficking cases in this District.

## CONCLUSION

For the foregoing reasons, Anton Joseph Lazzaro should be detained pending trial.

Respectfully submitted,

Dated: August 23, 2021

W. ANDERS FOLK
Acting United States Attorney

*s/ Laura M. Provinzino*
BY: LAURA M. PROVINZINO
Attorney Reg. No. 0329691
ANGELA M. MUNOZ
Attorney Reg. No. 0389207
EMILY A. POLACHEK
Attorney Reg. No.0390973
Assistant United States Attorneys

United States Attorney's Office
District of Minnesota
300 South Fourth Street, Ste 600
Minneapolis, MN  55415
612-664-5600