United States District Court
District of Minnesota

United States Of America,

Plaintiff,

v.                                              Case No. 21-cr-173 (WMW/DTS)

Anton Joseph Lazzaro,

Defendant.

## Brief in Support of Motion for Review and Revocation of the Order of Detention

Defendant Anton Lazzaro ("Mr. Lazzaro") submits this Brief in Support of Motion for Review and Revocation of Order of Detention. Mr. Lazzaro seeks review and revocation of the magistrate judge's order of detention (Doc. No. 28) pursuant to 18 U.S.C. § 3145(b).

There was zero evidence presented at the detention hearing showing that Mr. Lazzaro was a flight risk. Confronted with the specter of an incredibly serious federal criminal investigation, Mr. Lazzaro did not flee Minnesota in the 8 months between the FBI search of his home and the time he was indicted. Mr. Lazzaro stood his ground and faced these allegations head on. Mr. Lazzaro never tried or planned to flee because he is innocent; and that is what falsely accused innocent men do. Affluence alone does not make the innocent more likely to run away to hide.

As discussed below, the order of detention was based on clearly erroneous findings of act and an incorrect application of the facts to the applicable legal

standard under 18 U.S.C. § 3142(e). Mr. Lazzaro requests the Court revoke the order of detention and grant Mr. Lazzaro bond pending trial with standard and special conditions.

## I. Background

On August 11, 2021, a grand jury returned ten-count indictment charging Mr. Lazzaro as follows: Count 1–conspiracy to commit sex trafficking of minors, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1591(c), and 1594(c); Counts 2 through 6–sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1591(c), 1594(a), and 2; Count 7–attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1591(c), and 1594(a); Count 8 through 10– obstruction of the enforcement of 18 U.S.C. § 1591(a), in violation of 18 U.S.C. §§ 1591(d) and 2. (Doc. No. 1). Co-defendant Gisela Castro Medina was also named in Counts 1 through 6 and Count 10 of the indictment. (*Id.*).

Mr. Lazzaro, who was previously in touch with the U.S. Attorney's Office through counsel before the indictment was issued, was arrested at his home on August 12, 2021. An initial appearance on the indictment was held on August 12, 2021, with Mr. Lazzaro appearing via videoconference. (Doc. No. 7). There was no detention hearing conducted on the indictment charges at the time. (*Id.*).

The Government moved for Mr. Lazzaro's pre-trial detention on August 23, 2021. (Doc. No. 19). On August 24, 2021, Mr. Lazzaro filed a motion for release on bond pending trial. (Doc. No. 22). A detention hearing was held before the Honorable U.S. Magistrate Judge Hildy Bowbeer on August 24, 2021. (Doc. No. 24). After

hearing evidence and testimony on the matter, the magistrate judge determined that Mr. Lazzaro rebutted the presumption favoring detention. (Tr. of Detention Hearing, 148:14–20). Nonetheless, the magistrate concluded that there are no conditions of release that would reasonably ensure the safety of the community, nor that there were any conditions of release that would assure Mr. Lazzaro would not flee. (*Id.* at 154:21–25; 155:1–3). The magistrate ordered Mr. Lazzaro be detained pending trial. On August 27, 2021, the magistrate issued a written Order for Detention. (Doc. No. 28).

On September 10, 2021, Mr. Lazzaro filed a Motion for Review and Revocation of the Order of Detention pursuant to 18 U.S.C. § 3145(b). (Doc. No. 44). Mr. Lazzaro submitted that the order was based on clearly erroneous findings of fact and on an incorrect application of the facts to the applicable legal standard under 18 U.S.C. § 3142(e). (*Id.*). Further, Mr. Lazzaro requested an evidentiary hearing to review the order, receive evidence, and hear arguments on whether to revoke or amend the order of detention. (*Id.*).

On September 23, 2021, co-defendant Gisela Castro Medina appeared before U.S. Magistrate Judge Becky R. Thorson for initial appearance. (Doc. No. 49). Ms. Castro Medina was ordered released on a personal recognizance bond with set conditions. (Doc. No. 52). On September 29, 2021, the Court entered an order denying Mr. Lazzaro's request for an evidentiary hearing and directing Mr. Lazzaro to submit a supplemental brief on his appeal from the magistrate judge's order of detention. (Doc. No. 56).

## II. Applicable Law

"From the passage of the Judiciary Act of 1789…to the present…federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Id.* "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.*

It is axiomatic that a criminal defendant is presumed innocent until proven guilty. That is why the United States Constitution and 18 U.S.C. § 3142 clearly favor pre-trial release under the "least restrictive further condition, or combination of conditions, that the judicial officer determines will reasonably assure…the safety of the community." 18 U.S.C. § 3142(c)(1)(B); *Stack*, 342 U.S. at 4-5. However, Congress has created statutory carve-outs to this default rule of the traditional right to freedom. One such carve-out can be found in 18 U.S.C. § 3142(e) in cases involving a sex offense and minors. This is one of those cases where a rebuttable presumption applies.

In order for Mr. Lazzaro to be subject to detention, and his constitutional right to bail denied, the Court must find a risk of dangerousness to the community "by clear and convincing evidence." *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Furthermore, even just the proffering of proof by the defendant is sufficient to rebut

the presumption of dangerousness. *United States v. Gourley*, 936 F. Supp. 412, 416 (S.D. Tex. 1996) (citing *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989)).

Mr. Lazzaro only has the burden of production with respect to the rebuttable presumption. *Id*. In fact, Mr. Lazzaro never has to carry the burden of persuasion to be admitted to bail; otherwise, the Eighth Amendment constitutional right to bail would be eviscerated.

The Court is instructed by statute to weigh four types of factors in determining whether Mr. Lazzaro has shown that his release will not pose a danger to any person or the community. *See* 18 U.S.C. § 3142(g). Those four categories include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id*.

Finally, "[i]f a person is ordered detained by a magistrate judge . . . the person may file . . . a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court reviews a detention order *de novo*. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985).

### III. Argument

Mr. Lazzaro has met his burden of production with respect to the rebuttal presumption under 18 U.S.C. § 3142(e)(3)(E). That much Mr. Lazzaro agrees the Magistrate's decision got right. Once this burden has been met, the burden shifts to the government to show by clear and convincing evidence the risk Mr. Lazzaro's

release would pose to the community. Mr. Lazzaro submits that the government failed to carry its burden, and the order of detention was based on clearly erroneous findings of fact and an incorrect application of the facts to the applicable legal standards under § 3142(e).

Mr. Lazzaro submitted a detailed and restrictive release plan in his motion for pretrial bond. (Doc. No. 22). Mr. Lazzaro's release plan included asking the Court to place him on home confinement. Mr. Lazzaro requested the Court require him to wear an ankle monitor with GPS location tracking, installation of cameras in every area of his residence, and provide real-time live video feed accessible by U.S. Probation and Pretrial Services 24 hours a day. (*Id*.). Mr. Lazzaro also submitted a Security Assessment of his residence as Defense Exhibit 1 during the bond hearing.

In addressing the factors enumerated under 18 U.S.C. § 3142(g), the magistrate concluded that–despite Mr. Lazzaro's detailed and restrictive release plan–no condition or combination of conditions could assure Mr. Lazzaro's appearance at future proceedings nor reasonably ensure the safety of the community. (Doc. No. 28 at 4). Specifically, the magistrate made the following findings and conclusions with respect to each factor under § 3142(g):

> As to the first and second § 3142(g) factors, the Court finds that the nature and circumstances of the charged offenses and the weight of the evidence supporting them weigh strongly in favor of the pretrial detention of the Defendant. 18 U.S.C. §§ 3142(g)(1), (2). As charged in the indictment, and based on the testimony of Officer Brandon Brugger at the hearing as well as the information supporting the search warrants, the Defendant is accused of sex trafficking and the attempted sex trafficking of six minor victims over an eight-month period. The Defendant is also accused of obstructing justice by attempting to interfere with the reporting of the Defendant's alleged crimes to law

enforcement by at least two of the minor victims . . . . The nature and circumstances of the offense and the weight of the evidence against the Defendant are relevant both to the danger that he presents to the community and, in view of the potential penalties if he were to be convicted, his incentive to flee the jurisdiction if released on bond.

(Doc. No. 28 at 5). In weighing the third factor under § 3142(g), the magistrate concluded that Mr. Lazzaro's lack of criminal history, significant ties to the community, and the fact he remained in the district knowing he was under investigation all weighed in Mr. Lazzaro's favor. (*Id*. at 5–6). Despite all of this, the magistrate found that Mr. Lazzaro's resources "provide him a greater ability to flee the jurisdiction, to avoid detection after he flees, and to contact the six charged victims and potential new victims." (*Id*.).

As to the fourth factor, the magistrate concluded: "The risk of the Defendant being able to commit new offenses similar to those charged in the indictment, using similar means to those alleged in the indictment, and attempting to influence or interfere with the charged victims or other potentially unknown victims or otherwise attempt to obstruct the prosecution of this matter is both significant and serious." (*Id*. at 6–7).

Turning to Mr. Lazzaro's proposed conditions of release, the order of detention determined:

> The Court concludes that the proposed release plan will not reasonably ensure the safety of the community or the Defendant's appearance at future court proceedings. The release plan and assessment authored by Mr. Kouns was solely focused on physical access to the Defendant's residence at the Hotel Ivy and did not adequately address other significant areas of concern, most notably the Defendant's ability to use the internet and cellular technology to exploit or contact alleged prior victims or potential new victims. Even as to physical access, the

Defendant's proposed release conditions did not address physical access to other parts of the Hotel Ivy complex . . . .

Moreover, the proposed release conditions are incompatible with the ability of the U.S. Probation and Pretrial Services to effectively supervise the Defendant. *Inter alia*, due to the nature of access to the Hotel Ivy and Defendant's residence, the release plan would not permit a supervising Probation Officer to conduct unannounced visits to supervise the Defendant at his residence. Furthermore, in addition to fundamental concerns about having U.S. Probation and Pretrial Services reliant on a monitoring and security system owned and operated by the Defendant, the release plan also failed to take into account whether U.S. Probation and Pretrial Services personnel could access the applications necessary to monitor the security cameras proposed by the Defendant, or the practical feasibility of expecting U.S. Probation and Pretrial Services personnel to monitor the cameras and security system around the clock. Finally, the release plan does not take into account that "geofencing" and GPS monitoring would not prevent the Defendant from moving *vertically* without detection within the 19-story building.

(*Id.* at 7–8) (emphasis in original).

1) **There is no clear and convincing evidence that Mr. Lazzaro is a flight risk.**

   **A) If he wanted to flee, he would have done just that.**

It is undisputed that Mr. Lazzaro knew he was under investigation for approximately eight months prior to his arrest. Mr. Lazzaro's attorneys were meeting with members of the United States Attorneys' Office to try and resolve the ongoing investigation less than 48-hours before an indictment was issued. In fact, Mr. Lazzaro was informed by the government that an indictment was forthcoming just two days before his arrest. Yet, Mr. Lazzaro stayed put. If Mr. Lazzaro were truly a flight risk, it is only reasonable to believe that he would have fled long before the indictment and his arrest. He did not flee when he received a target letter from the FBI and his home

was searched in December 2020. He did not run in the Spring of 2021 as the U.S. Attorney's Office refused to discuss the case with Mr. Lazzaro's counsel. He did not abscond in August of 2021 when prosecutors told him an indictment was coming in "days to weeks". Mr. Lazzaro did not flee because Mr. Lazzaro is innocent. The magistrate's finding on this point was clear error.

Indeed, U.S. Probation and Pretrial Services' Pretrial Risk Assessment found Mr. Lazzaro to fall within Category I, the lowest category of risk possible. However, the magistrate entirely disregarded the findings of this objective measurement and refused to give it any weight in Mr. Lazzaro's case.

### B) GPS monitoring works in apartment buildings

Moreover, the proposed GPS monitoring and security camera installation would certainly ensure that Mr. Lazzaro appears for future court dates. Specifically on the issue of GPS operation, the magistrate's findings were without any basis in the facts presented at the detention hearing:

> Finally, the release plan does not take into account that "geofencing" and GPS monitoring would not prevent the Defendant from moving *vertically* without detection within the 19-story building.

(Doc. No. 28 at 8).

First, the Government did not put on any testimony from anyone discussing how GPS operates. The Government did not provide any written submissions describing how GPS ankle monitors function in multi-story building. There was no testimony from any member of the U.S. Probation Pre-Trial Services discussing problems with GPS monitoring inside apartment buildings. The magistrate judge did

not hear any testimony from a single witness that would even indicate that GPS ankle monitoring would be unsuitable for use in a multi-story building. There simply was no evidence in the record for the magistrate to make this finding.

Second, any issues with how GPS ankle monitors might function inside the context of a multi-story apartment building would need to be explained through technical and detailed evidence. It is certainly not the type of fact that could be readily established through judicial notice only. *E.g.,* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). This was not a minor fact that the court found which was unessential to its' calculus either. The court needed to undermine the normal reliability of GPS ankle monitoring to bolster the findings on flight as well as danger to community. However, without any testimony on this subject, the magistrate clearly erred in finding that GPS monitoring would not work as designed if it was used at Mr. Lazzaro's residence inside an apartment building.

Third, if the magistrate's unsupported findings about GPS monitoring not working in apartment buildings were true then no offender could ever be released to a multi-story apartment building. Thousands if not tens of thousands of offenders are on pre-trial release every day related to federal criminal charges. Another few thousand federal inmates from the Federal Bureau of Prisons are living at home with ankle monitoring under the CARES Act authority for home confinement. All of these

individuals are under the supervision of U.S. Probation and Pretrial Services. It would defy belief if none of these thousands of individuals with an ankle monitor live in a multi-story apartment building. It is safe to assume that if GPS ankle monitoring did not work inside apartment buildings, then you would never see a GPS ankle monitor ordered for a defendant living anywhere in New York City. That is simply not the case in reality.

Additionally, the magistrate's determination that Mr. Lazzaro's apartment at the Ivy would not permit "unannounced visits" was similarly devoid of support in the record. (Doc. No. 28 at 7-8). There was no testimony presented at the detention hearing about the inability of U.S. Probation to conduct surprise visits. Visitors to the building must generally check in with the front desk. But that does not in any way mean that Mr. Lazzaro would somehow be notified of U.S. Probation's presence prior to them reaching his home on the upper floors.

Take as an example the way that the FBI both searched Mr. Lazzaro's apartment and arrested him. Both times dozens of federal law enforcement officers entered the Ivy, obtained access to the residential elevator by speaking with the front desk, traveled up the elevator to the floor where Mr. Lazzaro lived, and arrived at Mr. Lazzaro's front door without Mr. Lazzaro having any idea of their presence. Why could one member of U.S. Probation and Pretrial Services conceivably not covertly accomplish the exact same feat? Certainly, it is not because Pretrial Services is so much more poorly trained than the FBI. Instead, this finding rests upon supposition of facts that are not inside of the record. The magistrate's conclusion that Pretrial

Services could not conduct unannounced visits under Mr. Lazzaro's proposed release plan was clearly erroneous and should be overturned.

The magistrate's findings that Mr. Lazzaro's personal wealth make him more likely to flee were clearly erroneous. The existence of personal assets such as cash, lines of credit, ownership of businesses, and cars undoubtedly makes Mr. Lazzaro more affluent than the average citizen. However, the mere existence of personal wealth does not make Mr. Lazzaro himself *more likely to flee*. Simply because Mr. Lazzaro possessed the means to travel in a pre-pandemic world does not mean that he is more likely to use those means to flee the jurisdiction. The magistrate's finding took a generalized proposition (rich people *can* flee) and applied it to this specific instance (Mr. Lazzaro *would* use his money to flee) without any evidence to support that logical leap.

Further, the picture the Government tried to paint of Mr. Lazzaro's life is simply not accurate. Despite the Government's implications to the contrary, Mr. Lazzaro is not a frequent flier on chartered airplanes or private international flights. Mr. Lazzaro has only flown on non-commercial airplanes less than half a dozen times in his entire life. Mr. Lazzaro's simply does not have a private jet or frankly the ability to order one up on a moment's notice. Mr. Lazzaro has done well in business, but he is no tycoon or billionaire. The magistrate's finding that Mr. Lazzaro's personal wealth would make him more likely to flee was clearly erroneous and should be overturned.

**2)** **There is no clear and convincing evidence that Mr. Lazzaro's release would be a danger to the community.**

Much of the magistrate's concern related to 18 U.S.C. § 3142(g)(4) is the possibility that, if granted bond, Mr. Lazzaro would contact alleged victims, unknown victims, or potential new victims. As a threshold matter, Mr. Lazzaro is undeniably presumed innocent until proven guilty. Even so, there is no clear and convincing evidence that no conditions or combinations of conditions could be implemented to protect the community from any alleged dangers.

As Mr. Lazzaro previously submitted, Mr. Lazzaro would surrender any electronic devices not specifically authorized by U.S. Probation and Pretrial Services, and any authorized devices could be monitored by the same just as Probation does with thousands of individuals on pretrial and supervised release.

**3)    Mr. Lazzaro's proposed Security Assessment is not an "all or nothing," and could be modified to conform with U.S. Probation and Pretrial Services practices.**

The magistrate's findings take issue with several aspects of Mr. Lazzaro's proposed security assessment. Namely, the order of detention concludes that (1) U.S. Probation and Pretrial Services could not make unannounced visits at Mr. Lazzaro's residence; (2) U.S. Probation may not have access to the security cameras proposed by Mr. Lazzaro; (3) U.S. Probation does not have the personnel for 24-hour around the clock monitoring; and (4) the "geofencing" does not account for vertical movement in Mr. Lazzaro's building.

The release plan proposed by Mr. Lazzaro is not an "all or nothing" situation. The assessment is the most comprehensive plan the defense could provide, but far from the only means of monitoring Mr. Lazzaro while on pretrial release. Mr.

Lazzaro, through counsel, has noted that he is more than happy to work with U.S. Probation and Pretrial Services to modify the release plan in any way that would be less burdensome to U.S. Probation and Pretrial Services.

Mr. Lazzaro offered 24-hour live surveillance because Mr. Lazzaro was seeking release. However, the magistrate's finding that Pretrial Services lacked the resources to monitor Mr. Lazzaro under the proposed release plan was not supported by any record evidence. There was no testimony or submission from Pretrial Services about a lack of resources. As a result, this finding itself is clearly erroneous. Of course, Mr. Lazzaro did not expect a member of Pretrial Services to watch him all day every day. That is the reason the security assessment was multi-layered. There were cameras inside the residence; there would be alerts if the door to the residence was opened; there would be real-time GPS monitoring via ankle monitor; there would be electronic monitoring of every device in his home; there would be restricted internet access. Mr. Lazzaro was trying to overcome the argument that there was no *combination of conditions* which would ensure his compliance. He was and is happy to modify the proposed conditions as U.S. Pretrial Services saw fit.

In sum, there are conditions and combinations of conditions of pretrial bond that would ensure Mr. Lazzaro's appearance and protect the community. Mr. Lazzaro is happy to work with U.S. Probation and Pretrial Services to ensure this goal.

**4)      Release pending trial is required by the Sixth Amendment**

The Sixth Amendment right to counsel is the cornerstone of our adversarial

system of criminal justice. "The right to consult with legal counsel about being released on bond, entering a plea, negotiating and accepting a plea agreement, going to trial, testifying at trial, locating trial witnesses, and other decisions confronting the detained suspect, whose innocence is presumed, is a right inextricably linked to the legitimacy of our criminal justice system." *Federal Defenders of New York, Inc. v. Bureau of Prisons*, Docket No. 19-1778 (2d. Cir. Mar. 20, 2020).

The right plays an especially important role before the commencement of trial. It is during that critical pre-trial period when the accused relies on counsel to investigate the charges against them, formulate potential defenses, and assist in preparing the case for trial. Indeed, the Supreme Court has recognized that to "deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself," since what happens at the "earlier, critical stages in the criminal justice process … might well settle the accused's fate and reduce the trial to a mere formality." *Maine v. Moulton*, 474 U.S. 159, 170 (1985) (internal quotation marks omitted).

Mr. Lazzaro has pre-trial deadlines and a trial date approaching only a few months away. Mr. Lazzaro is going to a jury trial on charges that carry a 10-year mandatory minimum, and yet his counsel have not been allowed to visit him in person one time in Sherburne County Jail since legal visits are closed. This means we cannot review discovery with him, we cannot prepare him to testify, and we will not be able to review the 3500 material with him upon receiving it presumably on the eve of trial. This is particularly problematic because due to the court ordered restrictions on

sharing the sensitive discovery material as well as the nature of the charges, we cannot send him the material and the only way we can review it with him is in person. We have yet to receive any 3500 material and, even after receiving it will have no ability to review it with our client while he is at the Sherburne County Jail during its current and ongoing lockdown. Considering that the 3500 material is likely extraordinarily voluminous and presumably will disclose for the first time not just the prior statements of, but the most basic information about, the alleged minor victims who will testify against Mr. Lazzaro, the inevitable inability to meaningfully review it with him would reduce his Sixth Amendment rights to a dead letter. We cannot send him the 3500. We cannot bring it to review with him. We would have to hold up each of the thousands of pages one by one to a video screen and wait for him to read it.

Notably, in recognition of this vital right, BOP regulations instruct that detention center wardens "*shall prov*ide the opportunity for pretrial inmate-attorney visits on a seven-days-a-week basis." 28 C.F.R. § 551.l 17(a) (emphasis added). If seven-days-a-week in-person access to one's attorney is the constitutionally acceptable norm, it would stand to reason that zero-days-a-week, especially as trial approaches, does not pass constitutional muster.

A detention facility violates the Sixth Amendment when it "unreasonabl[y] interfere[s] with the accused person's ability to consult counsel." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). Unreasonable interference requires a showing much, much smaller than the one here. In *Benjamin*, the Second Circuit held that New York

City correctional facilities violated the right to counsel when defense attorneys "routinely face[d] unpredictable, substantial delays in meeting with clients" and were "forced to wait between 45 minutes and two hours, or even substantially longer, after arriving at a facility to see a client." 264 F.3d at 179. Those circumstances, where the Second Circuit refused to dissolve a consent decree providing judicial supervision of legal visitation in City correctional facilities, are not even a speck of what's happening--or not happening--here.

Mr. Lazzaro remains innocent until proven guilty and faces an impending trial on extremely serious charges with no ability to meet with his lawyers or review the evidence the government intends to present against him. At this juncture the only way he can have a fair opportunity to prepare for trial is if he is released. This extraordinary moment requires the Court's intervention to safeguard Mr. Lazzaro's constitutional rights.

## IV. Conclusion

The magistrate's findings that Mr. Lazzaro posed a flight risk were clearly erroneous. The proof is in the pudding: he never left when he easily could have. Mr. Lazzaro is also not a danger to the community. The Court should overturn the magistrate's findings and grant Mr. Lazzaro release on bond.

Respectfully submitted,

/s/ Zachary L. Newland
Zachary Lee Newland
Senior Litigation Counsel
**Jeremy Gordon P.L.L.C.**
P.O. Box 2275

Mansfield, Texas 76063
Tel: (972) 483-4865
Fax: (972) 584-9230
E-mail: zach@gordondefense.com
Texas Bar: 24088967
https://gordondefense.com

*Lead Counsel for Anton Lazzaro*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was duly filed and served upon counsel of record, via the Court's CM/ECF system, this 8th day of October 2021.

/s/ Zachary L. Newland
Zachary Lee Newland