UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-cr-173(PJS/DTS)

UNITED STATES OF AMERICA

        Plaintiff,               **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE RESTRAINTS ON CERTAIN SEIZED PROPERTY**

v.

ANTON JOSEPH LAZZARO et ano.,

        Defendants.

**PRELIMINARY STATEMENT**

Untainted property may not be restrained before trial. This fundamental principle is central to both civil and criminal federal forfeiture law. But it seems to go out the window when, as here, the defendant property owner is perceived as wealthy.

The theme of the government's case against Mr. Lazzaro is not that he got rich from the alleged unlawful activity. This is not a case where the defendant is alleged to have amassed his fortune from illegal activity. Indeed, the forfeiture allegations in the indictment concede that every dime Mr. Lazzaro owns is legitimate and derived from wholly legal sources.

No, the theme of the government's case is that Mr. Lazzaro should receive special punishment *because* he is "rich." Thus, the government maintains, it is somehow "fair" that he be stripped of his legitimately acquired assets because his wealth is unseemly. Unbeknownst to the Court, however, behind the scenes, the government has returned the vast majority of the assets it seized from Mr. Lazzaro, including more than $1 million in gold bars, other precious

1

metals and foreign currency it seized from his apartment.  In addition, in its press releases and forfeiture allegations, the government makes much of Mr. Lazzaro's Ferrari, but quietly leaves untouched his Cadillac – even though the same flimsy allegations of unlawful use are made against both vehicles.  Apparently, the optics of the Ferrari fit in with the government's theme.  Similarly, the government continues to retain and seek the forfeiture of $371,000 in cash seized from Mr. Lazzaro's residence, even though its value is a fraction of the returned metals and foreign currency, because, again, it suits the image of Mr. Lazzaro that the government seeks to portray.  This case is about perception and optics over substance and law.

Perception and optics can only go so far, however.  The properties seized by the government and sought here to be released have not been shown to be either the proceeds of, or involved in, the alleged criminal activity. Under the facts and the law, therefore, this property is not subject to forfeiture and must be returned.

## PROPERTY AT ISSUE ON THIS MOTION

There are three categories of properties sought to be released on this motion: (1) currency, (2) a vehicle and (3) various electronics.  The cash and electronics were seized from Mr. Lazzaro's apartment ten months ago, during the execution of a search and seizure warrant issued by Magistrate Judge Katherine M. Menendez and filed under seal on December 14, 2020, and assigned Case No. 20-mj-913 (KMM) ("the search warrant").  This warrant, together with the government's affidavit in support of the warrant application and the "Receipt for Property" listing the seized items, including the cash and electronics, is submitted herewith as Exhibit "B" to the Declaration of Catherine Turner, Esq.

The currency is sought to be forfeited in the indictment at ¶ 11(c), identified as

"$371,240.00 in U.S. Currency" seized from Mr. Lazzaro's residence on December 15, 2020. A copy of the indictment is submitted herewith as Exhibit "A" to the Turner Declaration.

The vehicle, an eleven-year-old Ferrari, was seized from the parking lot of Mr. Lazzaro's building pursuant to a civil seizure warrant issued on August 13, 2021 by Magistrate Judge Becky R. Thorson, under Case No. 21-mj-583 BRT ("the seizure warrant"). A copy of the seizure warrant, together with the affidavit in support of the government's application, is submitted herewith as Exhibit "C" to the Turner Declaration.

The electronics sought to be forfeited are listed at subparagraphs (d) through (y) of ¶ 11 of the indictment, and include laptop computers, tablets, cellular telephones and electronic storage media. The search warrant receipt confirms that all of the electronics, including those for which the indictment does not specific the place or time of seizure, were in fact seized from the residence at that time. See Ex. "B". The government also seized a Google Pixel mobile phone from Mr. Lazzaro's person during the raid, but failed to include it in the search warrant receipt or the indictment. Mr. Lazzaro seeks the return of this item as well.

## PROCEDURAL HISTORY

The search warrant application reveals that the government expected to make a case for a crime that was not borne out by the evidence seized during the execution of the warrant. Two of the four alleged offenses for which the search warrant sought evidence were "Production and Attempted Production of Child Pornography" in violation of 18 U.S.C. § 2251 and "Distribution and Possession of Child Pornography" in violation of 18 U.S.C. § 2252(a). See Ex. B at p.3.

This was apparently the basis for the seizure of every electronic device found in Mr.

3

Lazzaro's apartment, including nearly two dozen laptops, tablets and cellular phones. Indeed, the search warrant receipt states that 4 'thumb drives' and 14 SD cards – small digital file storage media – were "previewed by BCA team" during the raid, presumably in hopes of finding a 'honey pot' of child pornography and expanding the search.

But the team found nothing to support a child pornography charge. That is confirmed by the absence of any such charge in the indictment that followed. And yet, despite that, the government has retained every computer, tablet, cellular phone and electronic seized during the raid.

The only charges alleged in the indictment are six counts of "sex trafficking of a minor," one count of attempted sex trafficking of a minor, and three counts of "sex trafficking – obstruction." These are, of course, serious charges. But even the minimal factual allegations in the indictment and the more detailed allegations in the search warrant affidavit make clear that Mr. Lazzaro is not alleged to have been *earning* money from sex. He is alleged to have *paid* money for sex.

The first six counts of the indictment allege that Mr. Lazzaro "knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized and solicited" six females under the age of 18. Notably, the age of consent in this State is 16, and the search warrant affidavit repeatedly makes clear that Mr. Lazzaro sought to ensure that each of the females was over 16. One must wonder, therefore, why these counts are charged at all.

In any event, the fact that Mr. Lazzaro is not alleged to have made money from sex has a substantial impact on what property can be alleged to be subject to forfeiture. As Mr. Lazzaro is not alleged to have received any money from the alleged sex acts that form the basis for the

4

criminal charges, none of his assets can be alleged to constitute the proceeds of criminal activity. That is a major limitation in the world of forfeiture.

The government has already recognized this significant limitation on its forfeiture case. It has returned much of Mr. Lazzaro's seized assets, including more than a million dollars in gold, silver and other precious metals as well as $6,247.96 in foreign currencies. See Letter from AUSA Hochhalter to Court, dated September 10, 2021, submitted herewith as Exhibit "D" to the Turner Declaration, and Second Stipulation to Extend Time for Commence Judicial Forfeiture Proceedings, submitted as Exhibit "E" to the Turner Declaration.

The only items not returned pursuant to the stipulations between the government and counsel for Mr. Lazzaro are the electronics items and $371,240 in United States currency, also seized from Mr. Lazzaro's apartment more than ten months ago during the December 15, 2020 raid. The indictment seeks the criminal forfeiture of this property.

The vehicle was seized in August 2021. The supporting affidavit alleges that the vehicle is subject to forfeiture because Mr. Lazzaro allegedly used it "to facilitate the offenses by transporting a minor victim to his home for the purpose of engaging in a commercial sex act" in or about May 2020. Thus, the government's claim against the vehicle is based upon a single alleged illegal use. The "commercial sex act," as with all of the trafficking claims, was alleged to be sex with Mr. Lazzaro, not with third parties. The commerce, as with all of the trafficking claims, was alleged to be given, not received, by Mr. Lazzaro.

It appears that the government initially intended to seek the civil forfeiture of the Ferrari, but recently decided to only seek to forfeit the vehicle in the criminal proceeding. See Ex. "E".

None of these properties – the electronics, the currency or the vehicle – have been shown

5

to be subject to forfeiture. Accordingly, they must all be released.

## LEGAL BASIS FOR THE MOTION

The Supreme Court has made clear that the government may not seize or otherwise restrain property pre-trial unless those seizures or restraints are supported by probable cause to believe that the property is tainted, and thereby will be forfeitable. *Luis v. United States*, 578 U.S. 5, 136 S. Ct. 1083, 1090-92 (2016); *Honeycutt v. United States*, 581 U.S. ___, 137 S. Ct. 1626, 1633 (2017); *Kaley v. United States*, 571 U.S. 320, 323-24 (2014).

The government must have probable cause to believe "(1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley*, 571 U.S. at 323–24. Probable cause determinations are subject to plenary review, and property that is not shown to be subject to forfeiture must be released. Whether or not the government is able to restrain defendants' assets pre-trial depends on the nature of the assets at issue. *Luis*, 136 S. Ct. at 1089-90.

The limitations on pretrial seizure and restraint of property reflect the limitations on criminal forfeiture. Only two types of property may be subject to criminal forfeiture:

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation [and]
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . ..

21 U.S.C. § 853(a)(1)-(2).

Unlike civil forfeiture, which is *in rem*, there can be no criminal forfeiture – which is *in personam* – without a criminal conviction. *See* U.S.C. § 853(a) ("Any person convicted of a

6

violation . . . shall forfeit" the property identified in subsections (1) and (2), above).  *See generally* S. Kessler, *Civil and Criminal Forfeiture: Federal and State Practice*, § 2A:1 (comparing jurisdictional and constitutional dimensions of criminal and civil forfeiture) (ThomsonReuters 2021).

As the United States Supreme Court has noted, "[t]hese provisions, by their terms, limit forfeiture under § 853 to tainted property; that is, property flowing from § 853(a)(1), or used in § 853(a)(2), the crime itself."  *Honeycutt*, 137 S. Ct. at 1633.

Section 853 sets forth the generally applicable standards and requirements for criminal forfeiture.  There are additional forfeiture provisions in the trafficking statutes that form the basis for the charges against Mr. Lazzaro.  These provisions mirror section 853 and similarly limit forfeiture to property that constitutes the "proceeds" of, or is "involved in," the criminal activity. 18 U.S.C. § 1594(d)-(e).

The requirements for pretrial restraint or seizure of property sought to be forfeited in a criminal case are also set forth in 21 U.S.C. § 853.  Subsection (e) applies to pretrial restraints and subsection (f) applies to pretrial seizures.  While there are some differences between the two sections – notably the higher standard for seizure – both sections are limited to property that "would, in the event of conviction, be subject to forfeiture . . . ."  21 U.S.C. § 853(e)(1)(A); (2) (restraint); *id.* § 853(f) (seizure).

Thus, untainted property may not be subjected to pretrial restraint.  This has been the law in the Eighth Circuit since 1995.  *See United States v. Field,* 62 F.3d 246 (8th Cir. 1995).  In fact, until 2017, all of the Circuits, except the Fourth, followed the statute.  It was only after the Supreme Court's decision in *Luis v. United States*, 578 U. S. ___, 136 S. Ct. 1083 (2016), that

the Court of Appeals for the Fourth Circuit acknowledged its error and expressly overruled a quarter century of decisions from that court. *See United States v. Chamberlain*, 868 F.3d 290, 297 (4th Cir. 2017) ("Section 853(e) does not by its terms permit pretrial restraint of substitute assets"). Notably, *Luis* addressed the release of untainted funds to pay a defendant's counsel of choice, but even the Fourth Circuit acknowledged that the Supreme Court's discussion of the issue was far broader, making it clear that Section 853(a) only permits pretrial restraint of tainted property.

The Supreme Court has made clear that where untainted funds are concerned, the government cannot impose any restraints pretrial absent a showing of probable cause. *Kaley*, 571 U.S. at 327; *see Luis*, 136 S. Ct. at 1092 (distinguishing its prior cases -- *United States v. Monsanto*, 491 U.S. 600 (1989) and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) – by emphasizing that in those cases the seizure of defendant's assets before trial was permitted only because the government had probable cause to believe the property was proceeds of, or traceable to, a crime).

Once the property has been seized or restrained, the property owner is entitled to plenary review to test whether the property in fact is tainted and "would, in the event of conviction, be subject to forfeiture . . . ." As the Supreme Court recognized 70 years ago, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . .." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170-172 (1951) (Frankfurter, J., concurring).

Thus, as the Supreme Court has held, prompt judicial review of property seizures in forfeiture cases is constitutionally required:

> The practice of *ex parte* seizure . . . creates an unacceptable risk of error. .

8

> .. In issuing a warrant of seizure, the magistrate judge need determine only that there is probable cause to believe that the real property was 'used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of,' a felony . . ..
>
> The purpose of an adversary hearing is to ensure the requisite neutrality that must inform all governmental decisionmaking. That protection is of particular importance here, where the Government has a direct pecuniary interest in the outcome of the proceeding.

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55-56 (1993) (citations omitted); *see Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 522 (9th Cir. 2018) ("Fourth Amendment concerns could arise if an owner were not afforded a prompt hearing at which to contest the validity of the temporary forfeiture . . ..") (citing *Krimstock v. Kelly*, 306 F.3d 40, 54 (2d Cir. 2002), *cert denied*, 539 U.S. 969 (2003)).

With prompt post-seizure or post-restraint review legally required, upon such review, property that is not shown to be subject to forfeiture must be released. The Supreme Court has strongly affirmed that these fundamental principles extend to all restrained property, whether held for potential criminal forfeiture or civil forfeiture and whether restrained pursuant to seizure orders, restraining orders or any other legal mechanism:

> Pretrial restraints on forfeitable property are permitted only when the Government proves, at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) 'the property at issue has the requisite connection to that crime.'

*Honeycutt*, 137 S. Ct. at 1633 (quoting *Kaley v. United States*, 571 U.S. 320, 324 (2014)).

As the Supreme Court explained, "whether property is 'forfeitable' or subject to pretrial restraint under Congress' scheme . . . depends on who has the superior interest in the property at issue. . .. The distinction [between tainted and untainted property] is the difference between

9

what is yours and what is mine. . .. If this were a bankruptcy case, the government would be at most an unsecured creditor" of untainted property. *Luis*, 136 S. Ct. at 1091-92.

There is no functional difference between the methods of pretrial restraint. All are equally reviewable, both in the District Courts and on appeal. *See*, *e.g.*, *United States v. Real Property Located at 1407 N. Collins St.*, 901 F.3d 268, 271-72 (5th Cir. 2018); *United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008) ("That which we call an injunction by any other name is reviewable on interlocutory appeal. We therefore join our fellow circuits and hold that the seizure warrant and restraining order are properly within our jurisdiction") (citing, *inter alia*, *United States v. Kirschenbaum*, 156 F.3d 784, 788 (7th Cir. 1998) (citing cases)).

Therefore, it is black letter law that pretrial restraints of property are subject to plenary review and, upon such review, any property found to be untainted must be released.

**The Allegations Here Are Insufficient to Support Pretrial Retention of the Subject Properties**

Neither the indictment nor the warrant affidavits demonstrate that any of the property sought to be released on this motion is subject to forfeiture. Accordingly, these properties may not be retained or restrained before trial and must be released.

**The Indictment**: The indictment notices the government's intention to seek forfeiture, but fails to set forth the factual basis for forfeiture of any of the properties sought to be forfeited, including, but not limited to, the currency, the vehicle and the electronics.

The indictment states:

> As a result of the offenses charged in Counts 1 through 10, the defendants shall forfeit the following property to the United States pursuant to Title 18,

10

> United States Code, Section 1594:
> (1) Any property, real or personal, involved in, used or intended to be used to commit or to facilitate the commission of the offenses, and any property traceable to such property; and
> (2) Any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses, or any property traceable to such property.

Indictment (Ex. "A"), at p. 7, ¶ 11.

This language merely parrots the statute. It sets forth no factual basis for the forfeiture of any property. It is no more than a reservation of rights to seek the forfeiture of any property that the government can prove, at trial, was the proceeds of or facilitated the criminal activity, *if* and only if the government secures a conviction. The rules governing criminal forfeiture clearly provide:

> [A]fter a verdict or finding of guilty . . . the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.

Fed. R. Crim. P. 32.2(b)(1)(A).

These procedures authorize a jury determination of the forfeiture phase of the proceeding and require the jury to complete a special verdict form that separately determines whether the government has satisfied its "nexus" burden with respect to each specific property sought to be forfeited.

The indictment here fails to allege a single fact establishing the "requisite nexus" between any property sought to be forfeited and the alleged criminal activity. Nor do the criminal counts of the indictment set forth any property-related allegations. The forfeiture allegations allege only that "[t]he property subject to forfeiture includes, but is not limited to,"

11

*inter alia*, the currency, the vehicle and the electronics, without any supporting facts. See Ex. "A", ¶ 11.

While a conclusory statement in the government's indictment alleges that the properties are subject to forfeiture, "the grand jury did not vote on the forfeiture allegations, which were simply notice provisions not subject to a grand jury vote." *United States v. Cosme*, 796 F.3d 226, 234-35 (2d Cir. 2015). See Ex. "A" (Indictment) at ¶ 11, pp. 7-9.

Accordingly, the indictment fails to set forth any basis for the pretrial retention of any property, including, but not limited to, the currency, vehicle and electronics that are the subject of this motion.

**The Warrant Applications**: The warrant applications similarly fail to justify the continued pretrial restraint of the currency, the vehicle or the electronics.

**The Currency**: The government's application for the initial search warrant (Ex. "C") did not set forth any basis for the forfeiture of any currency. The list of "Particular Things To Be Seized" in Attachment B to the warrant seeks "records that relate to the violations" alleged. Fifteen categories of items are identified, including "all U.S. currency, gold bars, and other financial instruments which could be used in exchange for sex . . .."

By its terms, however, the search warrant sought evidence of trafficking and child pornography. It does not explain why the property sought, if seized, would be subject to forfeiture. As established above, there is no allegation that Mr. Lazzaro *received* money from the trafficking charges, so there is no basis for restraining the money as proceeds of the crime. And the pornography charges were never filed because no evidence to support such charges exist. Thus, the cash cannot be subject to forfeiture as the alleged proceeds of trafficking. *See*,

12

*e.g.*, *United States v. Johnson*, 683 F. App'x 241 (4th Cir. Apr. 3, 2017); *United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141, 158 (3d Cir. 2003) ("under section 981, the government is required to trace the seized property directly to the offense giving rise to the forfeiture").

Proceeds "traceable to" means property where the acquisition is attributable to the alleged criminal activity rather than from money obtained from untainted sources. *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998). In other words, property that a person "would not have but for the criminal offense." *United States v. Grant*, No. S4 05 CR 1192, 2008 WL 4376365, at *2 n.1 (S.D.N.Y. Sept. 25, 2008).

The allegation that the currency, gold bars and other financial instruments found "could be used in exchange for sex" is similarly insufficient for seeking to restrain and forfeit more than $371,000 in currency. This was not a drug dealer's 'buy money.' The amounts of cash alleged to be involved in the trafficking charges in the warrant affidavit are vague, but even if the facts of the six alleged acts are liberally construed, a generous total would be less than $10,000 during the eight month period alleged in the indictment.

Further, if the funds allegedly used to commit the trafficking violations had been withdrawn from a bank account with a balance of nearly $400,000, the government would not allege that the entire account was tainted by a few small withdrawals made during an eight month period. Indeed, the warrant affidavit itself alleges that Mr. Lazzaro used a credit card to purchase a handbag for one of the alleged victims. Ex. "C" at ¶ 31. Yet, the government is not seeking to seize or forfeit the credit card or the accounts used to pay the credit card bills.

Further, the government has already returned, without condition, the gold bars, foreign

13

currency and other precious metals seized from Mr. Lazzaro's residence.  The government returned this valuable property because there is no basis to forfeit it or restrain it before trial. Yet, the indictment alleges that the gold bars, like the currency, "could be used in exchange for sex . . .."

The currency is not more 'forfeitable' than these other assets.  The difference is practical, not legal.  Currency is typically easier for the government to forfeit because it is fungible and stable and does not require the labor of sale or liquidation to be of value to the government.

Further, the currency is not subject to forfeiture as property "involved in" – or intended to be involved in – sex trafficking.  Property sought to be forfeited on a facilitation or "involved in" theory must have a "substantial connection" to the alleged criminal activity. *See*, *e.g.*, *von Hofe v. United States*, 492 F.3d 175, 186 (2d Cir. 2007) ("CAFRA now requires, as part of the government's case-in-chief, that it prove to the jury that there was a substantial connection between the property and the offense") (citations and internal quotations omitted); *United States v. Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn.*, 480 F.3d 841, 843 (8th Cir. 2007) (same).  There is no connection, much less a 'substantial connection,' between the untainted funds that were seized from Mr. Lazzaro's residence and the alleged criminal activity.

Because the currency has not been shown to be forfeitable under either a proceeds or facilitation theory, it cannot be retained or restrained before trial pursuant to 21 U.S.C. § 853(e)-(f).  There is nothing in the indictment or the government's submissions that permits the restraint of these funds before trial. Accordingly, the funds must be released.

**The Vehicle**: The vehicle was seized pursuant to a separate seizure warrant application filed nearly eight months after the execution of the initial search warrant.  Ex. "D".

Although an entire affidavit is devoted solely to the seizure of the vehicle, the government's application fails to establish that the vehicle is subject to forfeiture. Accordingly, the vehicle also must be released.

At the outset, it should be clear that the government does not challenge the fact that the vehicle was purchased with 100% untainted funds and thus is not even arguably subject to forfeiture as proceeds of the alleged criminal activity. Instead, the seizure warrant application alleged only that the vehicle was subject to forfeiture as property "involved in or facilitating violations" of the charged trafficking statutes. Ex. "D", ¶ 11.

The alleged facilitation, however, is based on *one single alleged use* of the vehicle in the "spring of 2020":

> Lazzaro drove the Ferrari to a park in the St. Michael/Albertville area where he picked up one of the minor victims. Lazzaro then drove the minor victim in the Ferrari from the park to his home in Minneapolis, Minnesota. At Lazzaro's home, the minor victim drank alcohol and got really drunk. After she and Lazzaro had sex, she went to sleep and stayed at his place for the night. (Ex. "D", ¶ 9).

Notably, the agent's affidavit does not allege that Mr. Lazzaro enticed the alleged victim to have sex with him with a promise of money in advance. It alleges only that Mr. Lazzaro asked her to come to his residence through a social media application and then "gave her about $400" the next morning. Ex. "D", ¶ 9. As the statute requires a "commercial sex act," it is questionable whether the facts underlying even this single alleged unlawful use of the vehicle constitute a violation of the law.

Further, and equally fundamental, the single alleged illegal use of the vehicle falls drastically short of the "substantial connection" required for the forfeiture and pretrial restraint or seizure of facilitating property. The forfeiture of a vehicle with a book value in the

15

neighborhood of $100,000 for a single possibly illegal use would violate the proportionality principle that underlies the "substantial connection" requirement.  *See*, *e.g.*, *United States v. Bajakajian*, 524 U.S. 321, 336-38 (1998).

The government's motivation for seeking the forfeiture of the vehicle on such a slender thread appears to be based solely on the fact that it is a famous, high-priced Italian designer sports car that gives the government positive optics for the unstated position that Mr. Lazzaro's wealth makes him an attractive target for a large forfeiture judgment.

If there remains any doubt that the seizure of the vehicle – eight months after the arrest and execution of the initial warrant – seeks to capitalize on appearances, not substance, the Court need look no further than the last sentence of the same paragraph of the agent's affidavit quoted above: "The next morning, Lazzaro gave her about $400 and took her back to another minor victim's house *using a different vehicle, a black Cadillac sedan*."  Ex. "D", ¶ 9 (emphasis added).

The government is not seeking to forfeit Mr. Lazzaro's Cadillac, which is alleged to have been used for the same unlawful purpose as his Ferrari.  The Cadillac, like the Ferrari, "could be easily moved, hidden, sold to someone else, or somehow otherwise made unavailable for forfeiture to the United States" (Ex. "D", ¶ 12) – the government's primary justification for claiming the need for a physical seizure of the vehicle pursuant to 21 U.S.C. § 853(f) rather than a restraining order under subsection (e).  The Cadillac, however, does not help the government frame its portrayal of Mr. Lazzaro as a worthy forfeiture target.

Further, it is notable that the initial search warrant, which sets forth the substance of the government's interviews with the alleged victims in some detail, made no reference to any

16

vehicles belonging to Mr. Lazzaro, let alone that any such vehicles had been used to transport the alleged victims.   In fact, the narrative summaries of the interviews with the alleged victims appear to imply that they arranged their own transportation to Mr. Lazzaro's residence.  See, e.g., Ex. "C", ¶ 12 ("V-1 and Medina went to Lazzaro's penthouse . . ."); *id.* ¶ 23 ("V-2 said that she drove to Lazzaro's apartment at the Hotel Ivy with V-3 and another friend . . .."); *id.*  ¶ 27 ("V-4 and V-5 met Lazzaro at his residence ...."). One transport was alleged to have been "an Uber arranged by Lazzaro." *Id.* ¶ 14.

In sum, a "substantial connection" between the Ferrari and the alleged criminal activity is completely absent.  Accordingly, the vehicle must be released because it has not been shown to be subject to forfeiture.

**The Electronics**: The government has seized and seeks to forfeit a total of 38 laptops, tablets, mobile phones and digital storage media.  The primary basis for the seizure of these items asserted in the search warrant application was to search for evidence to support child pornography charges.

> [T]he cellular telephone would include contact information, photographs, videos, text messages, and other communication between the trafficker and the victims and the trafficker and co-conspirators.  I also know that cellular telephones are used to take photographs and/or videos to advertise (via the Internet) victims for commercial sex acts, often wearing minimal to no clothing, some of which may constitute child pornography. They also may be used to record sex acts as part of the grooming or recruiting process. Moreover, through the use of GPS technology, cellular telephones are used to record locations or travel and communication.  Cellular telephones can also contain evidence that may be indicative of obstruction or the attempt to obstruct or in any way interfere with or prevent the enforcement of federal sex trafficking laws.  Cellular telephones can also contain evidence that may be indicative of the concealment and/or use of illicit proceeds from commercial sex to further promote the commercial sex or 'pimping' business through email, text messages, and online banking and online purchasing activities. (Ex. "C", ¶ 37).

17

No evidence of child pornography, recorded sex acts, or concealment or use of illicit proceeds or unlawful online banking activities was found in Mr. Lazzaro's electronics, and no charges or forfeiture claims related to child pornography, illicit proceeds or unlawful online banking have been filed.

It is unclear why the government continues to retain these electronics. If there are any digital files on these devices that the government intends to use as evidence, the government must make an affirmative showing in that regard with respect to each cellular phone, laptop computer and tablet that it seeks to retain pending trial. *See, e.g.*, *Ashanti v. City of Golden Valley*, 2011 WL 1114320, at *3 (D. Minn. Mar. 24, 2011) (prosecutor's decision to retain property as evidence subject to judicial review), *aff'd*, 666 F.3d 1148 (8th Cir. 2012) (citing *Krimstock v. Kelly*, 464 F.3d 246, 255 (2d Cir. 2006)).

Further, there is no claim that any of the electronics constitute or are traceable to the proceeds of the charged criminal activity. If the government seeks to retain any of the electronics for potential forfeiture as property "involved in" alleged criminal activity, it must establish a "substantial connection" between each electronic device and the filed charges. Nothing submitted to date by the government supports such retention or forfeiture.

Further, if the government's basis for retaining any of the electronics is that they contain digital evidence to support any of the charges, those files should be copied, the copies retained by the government for trial and the electronics returned to Mr. Lazzaro.

In sum, there has been no showing whatsoever of a "substantial connection" between any of the electronics and the alleged criminal activity. Therefore, none of the electronics have been shown to be subject to forfeiture. Accordingly, the electronics must be released.

**CONCLUSION**

The cash, vehicle and electronics seized and restrained by the government and discussed above have not been shown to be subject to forfeiture as proceeds of or property involved in the charged criminal activity pursuant to 18 U.S.C. § 1594 and/or 21 U.S.C. § 853. Accordingly, for all the foregoing reasons, movant Anton Lazzaro respectfully requests the release of (1) $371,240 in United States currency, (2) a 2010 Ferrari convertible, VIN ZFF65LJA9A0173846 and (3) the 38 laptop computers, tablets, cellular phones and digital storage media listed at paragraphs 11(d) through 11(y) of the Indictment, as well as the Google Pixel mobile phone that was seized from Mr. Lazzaro at the time of his arrest, but notably omitted from the search warrant receipt or the indictment.

Dated:  October 28, 2021			Respectfully submitted,

/s/ Catherine Turner

Catherine Turner
MN Attorney No. 0349057
P.O. Box 19607
Minneapolis, MN 55419
(612) 361-4895
(866) 663-4338 fax


Steven L. Kessler, *pro hoc vice*
LAW OFFICES OF STEVEN L. KESSLER
P.O. Box 100, Wykagyl Station
New Rochelle, New York 10804
212-661-1500

*Attorneys for Defendant Anton Lazzaro*