## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Case No. 21-CR-0173(1) (PJS/DTS)

                    Plaintiff,

v.                                                                    ORDER

ANTON JOSEPH LAZZARO,

                    Defendant.

Emily A. Polachek, Angela M. Munoz, and Laura M. Provinzino, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Zachary L. Newland, JEREMY GORDON P.L.L.C., for defendant.

This matter comes before the Court on defendant Anton Lazzaro's motion for review and revocation of Magistrate Judge Hildy Bowbeer's order detaining him pending trial. For the reasons that follow, the Court denies Lazzaro's motion.

## I. BACKGROUND

A grand jury indicted Lazzaro and codefendant Gisela Medina for several crimes related to the sex trafficking of minors and the obstruction of the government's investigation into that sex trafficking. ECF No. 1. On August 24, 2021, Judge Bowbeer held an evidentiary hearing on the government's detention motion and Lazzaro's motion for bond. Judge Bowbeer granted the government's motion and denied Lazzaro's, ordering that Lazzaro be detained pending trial. ECF No. 28. Lazzaro now

moves for review and revocation of Judge Bowbeer's order under 18 U.S.C. § 3145(b).

ECF No. 44.

## II.  ANALYSIS

### A.  Standard of Review

In considering a challenge to a pretrial-detention order under § 3145(b), a court must review de novo the order's findings of fact and conclusions of law.  *United States v. Maull*, 773 F.2d 1479, 1481–82 (8th Cir. 1985) (en banc).  A court must detain a defendant if the court finds either (a) that no set of conditions will reasonably assure the appearance of the defendant as required or (b) that no set of conditions will reasonably assure the safety of any other person and the community.  18 U.S.C. § 3142(e)(1).  In deciding whether a defendant should be detained, a court must consider the factors listed in 18 U.S.C. § 3142(g).  A defendant cannot be detained unless the government establishes by a preponderance of the evidence that no set of conditions will reasonably assure his presence or establishes by clear and convincing evidence that no set of conditions will assure the safety of others and the community.  *United States v. Orta*, 760 F.2d 887, 891 & n.20 (8th Cir. 1985) (en banc).[1]

---

[1] The government criticizes Lazzaro's proposed release plan, arguing that it would not reasonably assure his appearance and the safety of others and the community.  ECF No. 71 at 16.  But the government does not carry its burden simply by pointing out flaws in the defendant's proposed release plan; rather, the government must prove that no set of conditions will reasonably assure the defendant's appearance

(continued...)

If there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 1591 (the federal sex-trafficking statute) that involved a minor victim, the court must presume that no set of conditions will reasonably assure the defendant's appearance and the safety of the community.  18 U.S.C. § 3142(e)(3)(E).  The defendant "bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight."  *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).  But a defendant who meets his burden of production does not entirely dispel the presumption; the presumption "remains a factor to be considered among those weighed by the district court."  *Id.* (quoting *Mercedes*, 254 F.3d at 436).

### B.  The Statutory Presumption

The Court agrees with Judge Bowbeer that the rebuttable presumption of § 3142(e)(3)(E) applies.  Lazzaro's indictment, "by itself, establishes probable cause to believe that [he] committed the crime with which he is charged."  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *see also United States v. Bravo*, No. 8:13-CR-138, 2013 WL 3984608, at *2 n.1 (D. Neb. Aug. 2, 2013) (noting that the Eighth Circuit has not addressed this issue directly but collecting cases supporting the proposition from a

---

[1](...continued)
and the safety of others and the community.

majority of the circuits).  And among the crimes with which Lazzaro is charged is the sex trafficking of minors.

The Court also agrees with Judge Bowbeer that Lazzaro has carried the "limited burden of production" necessary to rebut the presumption.  *Abad*, 350 F.3d at 797. Lazzaro introduced evidence of his substantial community ties and absence of a criminal record, as well as evidence that he did not flee despite knowing that he was under federal investigation.  ECF No. 29 at 148.  Lazzaro also presented a detailed plan for ensuring that he follows all of the conditions of any pretrial release, including plans for extensive electronic monitoring of his home and person.  ECF No. 22.  Lazzaro's evidence is sufficient to rebut the § 3142(e)(3)(E) presumption.

### C.  *Reasonably Assuring the Defendant's Presence as Required*

The Court respectfully disagrees with Judge Bowbeer's finding that no set of release conditions would reasonably assure Lazzaro's appearance in court.  True, Lazzaro is facing serious charges that carry substantial penalties, which undoubtedly gives him an incentive to flee.  Moreover, the government appears to have substantial evidence of Lazzaro's guilt, although the Court recognizes, of course, that the government's evidence has not been tested at trial.  *See* 18 U.S.C. § 3142(g)(1)–(2). Finally, Lazzaro is a wealthy individual, and his wealth gives him the means to flee.  *See id.* § 3142(g)(3)(A).

-4-

Ultimately, however, the government has established little more than that Lazzaro is a wealthy man who is facing serious charges. Needless to say, those circumstances are not—in and of themselves—sufficient to justify the detention of Lazzaro under § 3142(e)(1). There is no evidence that (for example) Lazzaro owns a home abroad, or that he has family abroad, or that he has close ties to a particular foreign country,[2] or that he has made any plans or preparations to flee, or that he has ever evaded law-enforcement officers. To the contrary, Lazzaro has strong ties to Minnesota, *see* ECF No. 29 at 56–60, and he did not flee despite knowing for at least eight months that he was being investigated for significant crimes, *see id.* at 13, 23.[3]

The Court finds that the government has failed to establish by a preponderance of the evidence that no set of conditions will reasonably assure Lazzaro's appearance in court. Lazzaro can be ordered to surrender his passport and not to leave his home, which is on the nineteenth floor of a luxury hotel/condominium complex and has only

---

[2] Like many people, Lazzaro has traveled abroad, and like many rich people, Lazzaro has occasionally flown on chartered aircraft. ECF No. 29 at 33, 67. Those facts do little to establish a risk of flight.

[3] The Court also notes that the pretrial-risk-assessment tool used by this District placed Lazzaro in the lowest-risk category. ECF No. 9 at 3–4. The government argued at the detention hearing that the pretrial-risk-assessment tool "isn't applicable to those who commit sex offenses." ECF No. 29 at 145–46. But the pretrial-services report does not support such a sweeping assertion. Rather, the report states only that being charged with a sex offense is a "risk factor" whose impact is "unknown" and that this "risk factor" should be considered independently of the assessment tool. ECF No. 9 at 4.

one access point (the front door to the unit).  ECF No. 29 at 80.  Lazzaro can also be

ordered to pay for extensive electronic monitoring of his home and his person.  *See id.* at

81–82.  And given that Lazzaro's net worth appears to be in the neighborhood of

$2 million, ECF No. 9 at 2,[4] the Court can further deter him from fleeing by imposing a

high bond.  These conditions would reasonably assure Lazzaro's appearance in court.

### D.  Reasonably Assuring the Safety of Others and the Community

The Court nevertheless agrees with Judge Bowbeer that detention is warranted

because no set of release conditions will reasonably assure the safety of others and the

community.

As an initial matter, the Court does *not* find that the government has proven by

clear and convincing that no set of conditions will reasonably prevent Lazzaro from

having sexual contact with a minor.  The Court acknowledges Congress's determination

that defendants accused of violating § 1591 by engaging in the sex trafficking of minors

are more likely to be dangerous.  *See* 18 U.S.C. § 3142(e)(3)(E); *Stone*, 608 F.3d at 945–46;

*United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).  In this case, however,

Lazzaro has proposed—and agreed to pay for—extensive electronic surveillance of his

home and person.  *See* ECF No. 29 at 139–40.  In the Court's view, this surveillance

would reasonably assure that Lazzaro would not have sexual contact with any minor.

---

[4] This figure does not include any unreported cryptocurrency that Lazzaro may
control.  ECF No. 29 at 72.

That said, the threat contemplated by § 3142(e) "need not be of physical violence," but may include "non-physical harms." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021) (quoting *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)); *see also United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021); *United States v. Robertson*, 852 F. App'x 331, 340 (10th Cir. 2021). In the Court's view, the government has proven by clear and convincing evidence that no set of release conditions will reasonably assure the protection of others and the community from nonphysical harm.

First, Lazzaro has already attempted to obstruct the government's investigation. At the detention hearing, Minneapolis Police Officer Brandon Brugger testified that Lazzaro had tried to persuade "one of the victims and that victim's parent" to sign a nondisclosure and nondisparagement agreement in return for $1000. ECF No. 29 at 32; ECF No. 72-2. According to Officer Brugger, Lazzaro approached the victim about that agreement after learning that "that minor victim intended to go to the police." ECF No. 29 at 51–52.[5]

---

[5] Lazzaro's attorney elicited testimony from Officer Brugger that Lazzaro sent the agreement to the minor at the "same time that an alleged minor victim tried to extort Mr. Lazzaro and say that he needed to pay her money or she would go to the police." ECF No. 29 at 53. But that matters little. Even if the victim who went to the police had demanded money from Lazzaro beforehand—and it is not clear from Officer Brugger's testimony whether it was the same victim—Lazzaro nevertheless demonstrated his willingness to pay for silence.

More importantly, Officer Brugger also testified that, after Lazzaro's home had been searched by law enforcement, Lazzaro had sent another of the victims a message "basically saying, 'I didn't realize you were 15.  I'm sorry. . . . [P]lease don't say anything.'"  *Id.* at 21.  Officer Brugger further testified that Lazzaro enlisted Medina (his codefendant) and her boyfriend to contact that victim by going to her workplace and providing "a bottle of alcohol and cash" in exchange for her silence.  *Id.* at 21–22.

Second, Lazzaro's collecting personal information about law-enforcement officers and attempting to intimidate those officers are very troubling.  While being transported between facilities, Lazzaro commented to Officer Brugger that he knew where Officer Brugger lived.  *Id.* at 26.  He also commented that he had tried but failed to find personal information about an FBI agent involved in the investigation; specifically, Lazzaro told Officer Brugger that the FBI agent "was a ghost and that he couldn't find any information on him." *Id.*[6]  There is no legitimate reason—*none*—for Lazzaro to be collecting home addresses and other personal information about the law-enforcement officers involved in his case.  And Lazzaro's telling Officer Brugger that he knew where he lived was clearly an attempt to threaten and intimidate him.[7]

---

[6] Officer Brugger also said that Lazzaro "made reference" to the supervisor of the Minnesota Human Trafficking Investigators Task Force.  ECF No. 29 at 26.  It is not clear whether this "reference" was to personal information about the supervisor.

[7] Lazzaro later said during a jail call "that he is coming after [the FBI agent]'s
(continued...)

Third, after Lazzaro's arrest, he made an apparent threat against Laura Provinzino, one of the Assistant United States Attorneys assigned to his case, when he told Officer Brugger, "Laura is going to regret this." *Id.* at 24. Although it is not entirely clear why Lazzaro was saying that Provinzino would "regret" pursuing criminal charges against him, the Court can conceive of no legitimate reason for Lazzaro to make such a threatening remark to an arresting officer.[8]

The Court is unable to identify any set of conditions that will reasonably assure that Lazzaro will not continue in his efforts to influence his alleged victims and threaten and intimidate government officials. In the Court's experience, it is possible (albeit difficult and expensive) to monitor a defendant's physical location and physical contact with others. It is nearly impossible, however, to monitor all of a defendant's electronic communications, given the numerous ways that a defendant can communicate (directly and indirectly) with others. Only by detaining Lazzaro and monitoring all of his

---

[7](...continued)
badge." ECF No. 29 at 27. That comment appears to reflect Lazzaro's belief that the agent engaged in some kind of *professional* misconduct for which the agent could be disciplined. Such a comment is not nearly as troubling as Lazzaro's telling a law-enforcement officer that Lazzaro knows where he lives.

[8] Officer Brugger also appeared to testify that Lazzaro had done "research about the prosecutors," but that was in response to a compound question that included "using open-source sources." ECF No. 29 at 27. Subsequent testimony focused only on the use of OpenSecrets.org to look up political-donation information about the magistrate judge. *Id.* at 27–28. There was no specific testimony that Lazzaro had actually researched the personal information of government attorneys.

-9-

communications with the outside world (save, of course, for his privileged communications with counsel) can the Court be assured that Lazzaro will not continue to try to intimidate potential witnesses and government officials.

For these reasons, the Court finds that the government has established by clear and convincing evidence that no set of conditions will assure the safety of others and the community.

### E.  Sixth Amendment Challenge

Finally, Lazzaro argues that pretrial detention will deprive him of his Sixth Amendment right to counsel.  Specifically, Lazzaro alleges that the Sherburne County Jail's restrictions on in-person legal visits will unreasonably interfere with his ability to assist his attorneys.  Lazzaro's arguments are meritless.  The conditions faced by Lazzaro are identical to—and, in some respects, less onerous than—the conditions that have been faced by hundreds of federal defendants detained at the Sherburne County Jail since the onset of the pandemic.  At this point, Lazzaro only speculates that he will be unable to effectively assist his attorneys.  Even if that speculation turns out to be true, the Court will likely be able to fashion a remedy short of releasing Lazzaro.  That is a matter for another day.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the defendant's motion for review and revocation

[ECF No. 44] is DENIED.

Dated: November 2, 2021                    s/Patrick J. Schiltz
                                           Patrick J. Schiltz
                                           United States District Judge