United States District Court
District Of Minnesota
Criminal No. 21-173 (PJS/DTS)

| | |
|---|---|
| United States Of America,<br><br>   Plaintiff,<br><br> v.<br><br>Anton Joseph Lazzaro,<br><br>   Defendant. | **Defendant's Motion to Dismiss Counts Five, Six, and Seven of Indictment as Unconstitutionally Vague** |

"In our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323, 204 L. Ed. 2d 757 (2019) (Gorsuch, J.).

Defendant Anton Joseph Lazzaro seeks an order from the Court under Rule 12 of the Federal Rules of Criminal Procedure dismissing Counts 5, 6, and 7 of the Indictment. The Court should dismiss these counts because 18 U.S.C. § 1591 is unconstitutionally vague as applied in this case under the most charitable reading of the facts. Mr. Lazzaro vehemently asserts his innocence on all ten counts of the indictment and is eager to earn his freedom at trial on all of the charges. It is Counts 5, 6 and 7 that show exactly how the limitless breadth of this statute can be used to punish lawful, consensual conduct, in violation of the right to due process. The responsibility for defining criminal behavior under § 1591 should not be handed off to unelected prosecutors and leave citizens with "no sure way to know" if their conduct is lawful. *Davis*, 139 S. Ct. 2323. The Court should dismiss these counts as unconstitutionally vague.

## I.   Background

On December 15, 2020, Anton Lazzaro's world was turned upside down when federal agents arrived to execute a search warrant on his condominium in downtown Minneapolis. On December 14th, he was merely an up-and-coming real estate owner and entrepreneur, seeking to

invest in local businesses. As a 29-year-old young man with growing wealth and an interest in local politics, Mr. Lazzaro garnered both professional and personal attention. Mr. Lazzaro was sought out by many parties seeking his financial assistance, from political strategists to non-profit organizations,[1] friends, acquaintances, and many single women as he enjoyed personal financial success. Mr. Lazzaro enjoyed taking his dates and friends to lavish dinners and buying them gifts; he was always happy to help someone out if they needed it and enjoyed being generous. In fact, many in Mr. Lazzaro's circle told him that others were taking advantage of his generosity.

All of that ended, however, with a pre-dawn raid by the Government at Mr. Lazzaro's home in December 2020. Apparently the Government had opened an investigation into Mr. Lazzaro for "sex trafficking", twisting otherwise innocent, legal behavior into criminal conduct. Unbeknownst to Mr. Lazzaro, several of the young women he previously dated were approached by Government agents, who convinced them that they were not dates, but in effect, escorts engaged in prostitution. According to the Government, Mr. Lazzaro was not a generous date: he was a sex trafficker and *persona non grata*.  None of the complaining witnesses claimed Mr. Lazzaro used any coercion, threats, or force against them, only that he gave them gifts. They thought they would get more presents if they spent more time with him, and while they were with him, they hooked-up[2] with him. These young women specifically denied engaging in

---

[1] Mr. Lazzaro has been a generous benefactor for such organization as the Union Gospel Mission in St. Paul, MN; The Wounded Warrior Project; Long beach Rescue Mission in Los Angeles, CA; and the Carson Cats animal rescue, also in California, to name just a few.

[2] "Hook-up" is a slang term used to describe intimate relations between two people ranging from kissing to heavy-petting, to intercourse, and generally has the connotation of being a more casual encounter, outside an exclusive, emotional or traditional romantic relationship. *See* Merriam Webster online: https://www.merriam-webster.com/dictionary/hook%20up

**Defendant's Motion to Dismiss Counts Five, Six, and
Seven of Indictment as Unconstitutionally Vague**                                                      Page 2 of 17

prostitution, yet on August 12, 2021, Mr. Lazzaro was arrested and confronted with the instant charges. He intends to challenge all of the spurious allegations against him, starting with this motion for dismissal of Counts 5, 6, and 7, which should be dismissed for being unconstitutionally vague as applied.

## II.     Argument

**The statute is unconstitutionally vague as applied To Mr. Lazzaro and Counts 5, 6, and 7 should be dismissed by the Court.**

**A. The Conduct Charged in Counts Five, Six, and Seven is Legal in the State of Minnesota.**

The Fifth Amendment demands that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." The Supreme Court has long recognized that vagueness in criminal statutes violates not just "ordinary notions of fair play and the settled rules of law," but indeed "violates the first essential of due process." *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926). To satisfy the demands of due process, a criminal statute threatening a citizen with loss of liberty must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357–358 (1983) (citations omitted). Such challenges must be considered under the particular facts of the case. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

In the challenged counts, Mr. Lazzaro is charged with sex trafficking minors under the age of 18, in violation of 18 U.S.C. § 1591(a)(1). This section punishes anyone who knowingly "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," knowing or in reckless disregard of the fact that the person is

younger than 18 and knowing that the person "will be caused to engage in a commercial sex act" with a mandatory term of ten years or more in prison. *See* 18 U.S.C. § 1591(b)(2). The statute also punishes sex acts obtained through force, fraud, or coercion, but no such allegations have been made against Mr. Lazzaro.

The complaining witnesses in the counts challenged were all 16 years of age or older. There is, of course, no national age of consent. The age of consent is instead supplied by state law and varies from state to state. Under Minnesota law, Mr. Lazzaro could lawfully engage in sexual relations with any person 16 or older. *See* Minn. Stat. § 609.352 (prohibiting the solicitation of children, defined as those 15 or younger, to engage in sexual conduct); Minn. Stat. §§ 609.341–609.3451 (defining criminal sexual conduct); *see also State v. Holloway*, 916 N.W.2d 338, 345–46 (Minn. 2018) (discussing the history of "age of consent" laws in Minnesota). Put succinctly, the age of consent for sexual activity in Minnesota is 16. The complaining witnesses in Counts 5, 6, and 7 were all old enough to engage in consensual sexual activities with Mr. Lazzaro under Minnesota law.

**1. Minnesota state law prohibits prostitution and requires specific agreement**

Prostitution is unlawful under Minnesota law, regardless of age, but it is specifically defined as "hiring, offering to hire, or agreeing to hire another individual to engage in sexual penetration or sexual contact." Minn. Stat. § 609.321, subd. 9. The crime requires "a specific offer [or] a specific agreement to engage in sexual conduct" for money. *State v. Bourdeaux*, A13-0609 (Minn. Ct. App. 2013) (unpub.), slip op. at 5 (citing *State v. Kelly*, 379 N.W.2d 649, 652 (Minn. Ct. App. 1986) for the proposition that "a prostitution offense is not complete until there is an offer of sexual services for money").

In Counts 5, 6, and 7 of the indictment, the young women Mr. Lazzaro with whom he had intimate relations were of legal age of consent under Minnesota law, and not one of them has alleged that they were hired to engage in sexual conduct with him. In Count 7 in fact, no sexual relations even occurred. The state law clearly defines the age of consent as well as the definition of what is a commercial sex act: a specific agreement to have sex for money. That is not what happened between Mr. Lazzaro and these complaining witnesses, and he would not face criminal liability in State Court for his relations with them. The state law is clear: ordinary Minnesotans can understand what specific conduct is prohibited. That is not true for the federal statute.

**B.**     **"Anything of Value" is so broad it borders on absurdity and offends the Constitution**

Regrettably, the law before the Court is not so constrained as in the State of Minnesota. As applied to the facts of this case, the phrase "commercial sex act" in § 1591 is unconstitutionally vague because it does not give any reasonable notice of what is prohibited and can be employed in an arbitrary manner to criminalize lawful intimate relationships. The statute defines "commercial sex act" is "any sex act, on account of which **anything of value** is given to or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added). "The phrase 'anything of value' is extremely broad," and it is not limited to financial transactions. *United States v. Cook*, 782 F.3d 983, 988 (8th Cir. 2015).

**1.   Judicially constructed definition of "anything of value"**

"Anything of value" has evolved into a judicial term of art that "courts generally construe to envelop[] both tangibles and intangibles." *Id*. (quoting *United States v. Petrovic,* 701 F.3d 849, 858 (8th Cir.2012)). As summarized in *Petrovic*, the intangibles courts have deemed "things of value" under federal criminal law include:

- "sexual favors";

- - "the time and attention of a younger woman with whom defendant pursued a romantic relationship";
  - "anticipation of future sexual encounters"; and
  - "amusement."

701 F.3d at 858 (citations omitted); *see also Cook*, 782 F.3d at 989 (citing *Knutson v. Brewer*, 619 F.2d 747, 749–50 (8th Cir. 1980), explaining that "obtaining sexual gratification" could be a "thing of value"). *Cook* even went so far as to say that the sex act involved in an alleged violation of § 1591(a) was itself a "thing of value." *See* 782 F.3d at 988–89 (noting that "Cook clearly attached value to the sexual acts, photographs, and videos he received"). This is the legal definition which can transform ordinary consensual sexual activities into "commercial sex acts" and carries punishment for "sex trafficking." In construing a similar state law modeled on §1591, one federal district court described the breadth of such a standard as including "anything that can be traded on the free market- including a bottle of wine, a nice dinner, or a promise to do the dishes." *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281 (W.D. Wash. 2012) (describing Washington state law, but noting similarities to federal statute).

### a.  Subjective intent view for "thing of value" in *Cook*

It is important to note that the *Cook* implies one limitation on the meaning of "thing of value" that is not supported by the language of the statute. *Cook* suggests that value "is a subjective, rather than objective, concept" and that the focus is properly placed "on the value which **the defendant** subjectively attaches to what is sought to be received." *Id.* (emphasis added) (quoting *Petrovic*, 701 F.3d at 858, and *United States v. Gorman,* 807 F.2d 1299, 1305 (6th Cir.1986)). But the definition of "commercial sex act" specifies that "anything of value" may be "given to or received by **any person**." 18 U.S.C. § 1591(e)(3) (emphasis added). This may be the defendant, as in *Cook*, or it may be the alleged victim, as in *Noble v. Weinstein*, 335

F. Supp. 3d 504, 521 (S.D.N.Y. 2018), where the district court found the required value in "[t]he opportunity . . . for the actress to sit down with that producer in a private meeting to review her film reel and discuss a promised film role[.]" It could also be a third-party. *See United States v. Raniere*, 384 F. Supp. 3d 282, 319 (E.D.N.Y. 2019) (discussing a § 1591 prosecution predicated on allegedly receiving "status" in exchange for arranging sex acts for another). To recap, the "thing of value" can be: 1) something that the defendant subjectively places value on; 2) something that a complaining witness subjectively places value on; 3) something that a third party (not part of any sexual activity) subjectively places value on. Considering the plain language of the statutory definition of "commercial sex act" and the broad subjective nature acknowledged in the caselaw, it becomes hard to imagine what *does not* amount to a "thing of value" for a person in an intimate romantic relationship.

### 2. Any perceived value related to intimate relationships is now "sex trafficking"

Although Congress enacted § 1591 to fight sex trafficking, the statute they promulgated reaches a startling amount of legal conduct through its utter failure to provide any comprehensible limitation on what constitutes a "commercial sex act." The statute as written is not directed toward establishing a national age of consent, but in effect that is what it threatens to do if the conduct in Counts 5, 6, and 7 can be punished as "sex trafficking." Under Minnesota law, Mr. Lazzaro could legally have sex with anyone 16 or 17 years old, but under § 1591 he could be punished with no less than ten years in prison (and up to life in prison) if his partner perceived or derived any value in that sex. Mr. Lazzaro's partner could have sex with him for purposes of sexual gratification, to secure his time and attention, or simply for amusement, and that value his partner derived would transform a lawful, consensual encounter into a commercial sex act under Eighth Circuit precedent. *See Cook*, 782 F.3d at 988–89; *Petrovic*, 701 F.3d at 858.

### 3. No quid-pro-quo causal relationship between value and sex required

One would imagine that a statute ostensibly addressing "sex trafficking" and "commercial sex acts" would require some sort of explicit quid pro quo. *See*, *e.g.*, *Lopez v. Gonzalez*, 549 U.S. 47, 53 (2006) (noting that "ordinarily 'trafficking' means some sort of commercial dealing," and quoting Black's Law Dictionary defining "traffic" as "to 'trade or deal in (goods, esp. illicit drugs or other contraband)'") But the statute bears no such limitation.

All the statute requires is that to be "commercial," the sex act must occur "on account of" the "thing of value," however that may be defined. And "on account of" has been interpreted to mean only that there is some "causal relationship between the sex act and an exchange of an item of value." *United States v. Marcus,* 487 F. Supp. 2d 289, 306-07 (E.D.N.Y. 2007), *rev'd on other grounds,* 538 F.3d 97 (2d Cir. 2008); *accord Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013), at *16 (awarding summary judgment in a civil claim based on § 1591 because plaintiffs had offered "no evidence of a causal relationship between the sex acts and the payment of expenses").

This standard does not provide any reasonable notice of what is prohibited, and it permits arbitrary and discriminatory enforcement against lawful relationships that the Government does not like. When a statute does not provide fair warning about what the law demands of them the law must be treaty "as a nullity" and struck down as unconstitutionally vague. *Davis*, 139 S. Ct. 2323.

C. **The statute is so broad it encroaches on the right to privacy and the right to free association in intimate relationships.**

The statute's vagueness touches on other due process concerns as well, most notably the protected right to make personal choices about one's intimate relationships without interference by the government. *See Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (holding that "intimate

choices by unmarried as well as married persons" fall within the liberty protected by the Due Process Clause) (citation omitted). Although *Lawrence* specifically noted that it was not addressing cases involving "minors" or nonconsensual acts, *see id.*, those limitations do not apply here. Minnesota recognizes the ability of 16- and 17-year-olds to consent to sexual relationships, subject to certain limitations that don't apply here. Nor does Section 1591, on its face, directly prohibit these relationships, because where no force, fraud, or coercion are alleged, it purports to restrict only "commercial sex acts" with persons under age 18.

1. **Contrast § 1591 with the clear line drawing in child pornography laws**

This is in keeping with the principle that, while the intimate conduct itself may be lawful, it may become unlawful if it crosses a certain threshold. In *United States v. Bach*, 400 F.3d 622, 628 (8th Cir. 2005), the Eighth Circuit addressed a *Lawrence*-based challenge to the child-pornography laws where the minor was sixteen and thus the conduct documented was lawful. *Back* rejected the idea that the right to intimate choices, which it did not question, permits one also to take pictures and send them over the internet. *See id.* at 629. It noted that Congress had specifically changed the definition of "minor" in the child-pornography statutes to include all persons under 18, rather than 16, and the panel held this was rationally related to the interest in combatting child pornography. *See id.*

The child-pornography statutes establish a clear and easily comprehensible line between legal and illegal conduct. Persons under 18 may engage in sexual activity, at least under Minnesota law, but that activity may not be recorded or transmitted. Section 1591 provides no such comprehensible or definable line. There is no reasonable way of knowing when, in the course of a lawful sexual relationship, a "thing of value" (which may take the form of gratification, amusement, or any other form of tangible or intangible benefit) has been "given to

or received by any person." Congress has the power to pass laws to combat "sex trafficking," but in doing so it must provide reasonable protection against intrusions into one's lawful intimate choices, a sphere of liberty protected by substantive due process.

**D.    Sex trafficking with force, fraud, or coercion is unambiguously illegal. That is not at issue in this case.**

In § 1591 prosecutions involving sex procured by force, fraud, or coercion, there could be no plausible claim that the defendant was unaware that his conduct was criminal. When *Cook* rejected a vagueness argument to § 1591, the horrific violence involved in that case made it impossible to believe that the appellant didn't know in advance "that what he [was] about to do was probably or certainly criminal," whether or not he knew that his conduct would violate any particular statute. 782 F.3d at 989 (quoting *Knutson,* 619 F.2d at 750)). That rationale does not apply to Mr. Lazzaro, where the underlying lawful conduct—pursuing a sexual relationship with someone 16 or 17—becomes not just criminal but punishable by a ten-year mandatory-minimum sentence when a certain unknowable threshold has been crossed, when the 16- or 17-year-old "will be caused to engage in a commercial sex act."

It is easy to understand how force, fraud, or coercion might improperly "cause" someone to engage in sexual activity, but legally culpable causation in the criminal sense is not so easily understood in the context of consensual sexual encounters. *See United States v. Jungers*, 702 F.3d 1066, 1074 n.6 (8th Cir. 2013) ("The passive phrase 'will be caused,' . . . reflects 'agnosticism . . . about who' causes the child to engage in the commercial sex act[.]") (quoting *Watson v. United States,* 552 U.S. 74, 80 (2007)). The statute could have provided some clarity through its definition of "commercial sex act," but instead it gave that term a definition so vague as to be virtually meaningless when it is unmoored from any unlawful means (i.e., force, fraud, or coercion).

 **E.** **There was no *quid pro quo* with any complaining witness and certainly not for counts 5, 6, and 7.**

The complaining witnesses related to Count 5, 6, and 7 of the Indictment have not alleged any sort of *quid pro quo* agreement existed with Mr. Lazzaro to exchange money for sex. The dangers of vague laws can be seen in this prosecution. Mr. Lazzaro is a wealthy man who is well-known for giving gifts to a multitude of causes both in Minnesota, California, and to individuals.[3] Mr. Lazzaro was generous with plutonic friends and romantic partners alike. He has been fortunate, and he can afford to be generous beyond the abilities of most people. In normal times he would have been out and bout town, taking his friends to dinner, tipping his servers heavily, and enjoying the robust social scene offered by Minneapolis. Instead, due to the COVID-19 pandemic Mr. Lazzaro's downtown home became a social hub for his circle of friends and romantic partners alike.

 **1.** **Count 5: Female receives a purse and weeks later engages in intimate activities with Mr. Lazzaro without any agreement to pay for sex.**

Individual D, referred to in Count 5, received an expensive purse long before any alleged sexual activity. Mr. Lazzaro was undoubtedly interested in pursuing a romantic relationship with Individual D. That is why he purchased the purse in the first place. The Government's evidence shows that Mr. Lazzaro asked Individual D to come to his apartment at that time, but she declined his offer. Mr. Lazzaro of course accepted this fact and never objected to Individual D taking the purse with her. Why? Because Mr. Lazzaro was not conditioning the gift of the purse on any sort of sexual activity in return. Individual D could have never seen Mr. Lazzaro again,

---

[3] Mr. Lazzaro has donated several hundred thousand dollars in charitable and political donations, a small part of which is publicly documented on OpenSecrets.org, listing over 100 personal donations. *See* www.opensecrets.org/search?q=anton+lazzaro&type=donors (last visited Jan. 10, 2022).

**Defendant's Motion to Dismiss Counts Five, Six, and
Seven of Indictment as Unconstitutionally Vague**  Page 11 of 17

but instead she asked to see him in the following days because she was interested in getting more gifts from Mr. Lazzaro. It was only weeks later that Mr. Lazzaro met again with Individual D and engaged in consensual, lawful, intimate relations. There was no allegation of any *quid pro quo* agreement for either of these encounters. Mr. Lazzaro's generosity did not amount to any specific agreement whatsoever to have sex for money.

> 2. **Count 6: "Mutual" consensual sexual activities without any agreement to pay for sex.**

Individual E, referred to in Count 6, was nearby when Individual D received the expensive purse. According to her statement, Individual E had her hours cut at work and wanted money to buy things, and so she thought maybe if Mr. Lazzaro wanted to hang out with her, he would give her things, too. When she later went to Mr. Lazzaro's home, they were talking about how she needed a new phone, so he gave her one he had but didn't need. She said in her statement that she was the one who suggested getting into his bed, and the sex that began was, in her words, "a mutual thing," describing it as the casual hook-up that it was. Individual E did not report any agreement for Mr. Lazzaro to pay her for their romantic encounters and Mr. Lazzaro only provided gifts to her out of generosity. There was no sex trafficking of Individual E.

> 3. **Count 7: Unknown complaining witness makes no allegations of offer to provide thing of value on account of sexual acts**

Individual F, referred to in Count 7, is unknown to Mr. Lazzaro and has not alleged any sexual activity taking place, let alone any alleged compensation for it. The fact that the Government can even charge an attempt to violate the statute when the identity and age of the complaining witness are unknown, and Mr. Lazzaro never even met this person, let alone extended his generosity to her, only further illuminates the breadth of the vagueness established in the statute's definition. In none of these allegations is there any suggestion of a quid-pro-quo

exchange, or anything more than a lawful, consensual encounter. Mr. Lazzaro was a wealthy and generous man, and he was generous whenever the complaining witnesses were around him, whether sexual activity occurred or not.

F.  **Examples of limitless reach of § 1591 under the Government's theory of sex trafficking**

Expanding the § 1591 sex-trafficking law to pursue cases like this sets a dangerous legal precedent. As can be seen in the attached chart, the conduct charged in Counts 5, 6, and 7 lies well outside the heartland of traditional § 1591 prosecutions. (Exhibit 1). The vast majority of these prosecutions involved force, fraud, or coercion, and those without the "unlawful means" component involved explicit transactions where money was expressly exchanged for sex, and typically with very young girls well under the age of consent. Others involved the production of child pornography.

None of these cases bears any resemblance to the conduct that occurred here, which did not involve force, fraud, or coercion, which did not involve any type of quid-pro-quo transaction, and which was instead, even on the face of the government's allegations and evidence, completely lawful and consensual conduct.

In Count 5, Mr. Lazzaro is accused of taking a girl shopping at Mall of America and then, weeks later, engaging in lawful, consensual sexual activity. If that conduct can be punished under § 1591, it's difficult to see any meaningful limitations on its scope. Someone takes a 17-year-old out for sushi and pays, with hopes that sex will follow, either that night or sometime in the future. Was this a thing of value given on account of a sex act? Was it attempted sex trafficking?

Another person leaves a generous tip for their 16-year-old waitress, with the hopes of starting a relationship that will turn sexual. Or someone already involved with a 16-year-old

performs their favorite sex act as a favor because that 16-year-old did their homework for them. All of these examples, and many more that could be offered, involve situations where there is a "sex act, on account of which anything of value is given to or received by any person." *See* 18 U.S.C. § 1591(e)(3) (defining "commercial sex act"). Surely these things of value and these situations are something besides sex trafficking; but that is not what the statute says.

Given the nearly limitless breadth of "thing of value" described in *Petrovic*, 701 F.3d at 858, most laypeople would be shocked to discover that they themselves have engaged—probably many times, and likely including times when they or their partner were under the age of 18—in activities § 1591 would describe as commercial sex acts. Was a sex act on account of "amusement"? Or on account of "the time and attention of a younger woman"? Or even on account of "obtaining sexual gratification"? Where is the line drawn between normal dating rituals and "enticing" a partner into a potential sexual encounter into a commercial sex act "on account of" a "thing of value" prohibited under the statute? The following scenarios would seemingly qualify as a commercial sext act if one of the participants was 16 or 17 years old in Minnesota:

- Purchasing expensive concert tickets in hopes of intimate activities at the end of the night with a date who is one week shy of their 18th birthday;
- Arranging a weekend getaway with a 16-year-old boyfriend at a cabin up north with cross-country skiing that leads to sexual activity;
- Pumping gas for a 17-year-old girlfriend and picking them up from the airport with hopes of sexual gratification.

These ordinary and consensual activities meet the definition of "a thing of value" as defined by the caselaw. At least one party to each of the above scenarios could be charged with

either an attempted or completed commercial sex act under the Government's theory of prosecution. Surely that is offensive to the Constitution.

Mr. Lazzaro's kind of generosity and his political connections draw attention. Neither Mr. Lazarro nor anyone else should have to worry that mere generosity will transform his private relationships into "commerce" that the government can invade and punish with draconian prison sentences. The prohibition of vague criminal statutes inherent to Fifth Amendment due process protects Mr. Lazzaro from exactly this type of unbounded governmental overreach, and that is why it is so important to find that the definition of "commercial sex act" in § 1591 is unconstitutional.

### III.   Conclusion

Section 1591(a) is unconstitutionally vague as applied to Mr. Lazzaro in Counts 5, 6, and 7. It fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender,* 461 U.S. at 357–358. The term "commercial sex act," as defined by the statute and by Eighth Circuit, is so indeterminate that, here, it invades improperly into lawful intimate choices protected by the Constitution.

It is all the more essential that a statute imposing such draconian penalties provide adequate notice so that people can govern their behavior accordingly. *Cf. Johnson v. United States*, 576 U.S. 591, 602 (2015) ("Invoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process."). The failure to draw any meaningful line between lawful sexual conduct and a potential ten-year mandatory prison sentence means that § 1591 is unconstitutionally vague as applied to the facts of Counts 5, 6 and 7, and Mr. Lazzaro respectfully asks the Court to dismiss those counts.

Respectfully submitted,

/s/ Zachary Newland
Zachary L. Newland
Senior Litigation Counsel
**Jeremy Gordon P.L.L.C.**
P.O. Box 2275
Mansfield, Texas 76063
Tel: (972) 483-4865
Fax: (972) 584-9230
Email: zach@gordondefense.com
Texas Bar: 24088967
https://gordondefense.com


/s/Catherine Turner
Catherine L. Turner
MN Attorney ID #0349057
331 Second Avenue South
Suite 705
Minneapolis, MN 55401
Tel: (612) 361-4895
Fax: (866) 663-4338
E-mail: catherine@catherineturnerlaw.com

*Counsel for Anton Lazzaro*

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing this motion I conferred with Assistant U.S. Attorney Laura Provinzino by telephone on January 10, 2022, I was informed that the Government is opposed to the relief sought in this motion by Mr. Lazzaro.

/s/ Zachary L. Newland
Zachary L. Newland

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was duly filed and served upon counsel of record, via the Court's CM/ECF system, this 14th day of January 2022.

/s/ Zachary L. Newland
Zachary L. Newland