United States District Court
District Of Minnesota
Criminal No. 21-173 (PJS/DTS)

| | | |
|---|---|---|
| United States Of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Defendant's Motion to Dismiss** |
| | ) | **Indictment for Selective Prosecution** |
| Anton Joseph Lazzaro, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Anton Joseph Lazzaro respectfully submits this Motion to Dismiss Indictment for Selective Prosecution to the Court. Mr. Lazzaro seeks an order from the Court dismissing the Indictment under Rule 12 based on the Government unconstitutionally selectively prosecuting Mr. Lazzaro based on his socio-economic status and prominent public profile.

## I.  Background

On December 15, 2020, Anton Lazzaro's world was turned upside down when federal agents arrived to execute a search warrant on his condominium in downtown Minneapolis. Until that day, he was an up-and-coming real estate owner and entrepreneur, seeking to invest in local businesses. Being a young man with growing wealth, as well as an interest in local politics, garnered him both professional and personal attention. As his profile grew, he was sought out by many parties seeking his financial assistance, from political strategists to non-profit

organizations,[1] friends, acquaintances, and many single women. He enjoyed taking his dates and friends to lavish dinners and buying them gifts; he was always happy to help someone out if they needed it and enjoyed being generous.

All of that ended, however, with a pre-dawn raid by the Government at Mr. Lazzaro's home in December 2020. Apparently, the Government had opened an investigation into Mr. Lazzaro for "sex trafficking", twisting otherwise innocent, legal behavior into criminal conduct. Unbeknownst to Mr. Lazzaro, several of the young women he previously dated were approached by Government agents, who convinced them that they were not dates, but in effect, escorts engaged in prostitution.

According to the Government, Mr. Lazzaro was not a generous date: he was a sex trafficker and *persona non grata.* None of the complaining witnesses claimed Mr. Lazzaro used any coercion, threats, or force against them, only that he gave them gifts. They thought they would get more presents if they spent more time with him, and while they were with him, they hooked-up[2] with him. These young women specifically denied engaging in prostitution, yet on August 12, 2021, Mr. Lazzaro was arrested and confronted with the instant charges, which arose at the same time his star was rising in political and business circles. Immediately thereafter, the

---

[1] Mr. Lazzaro has been a generous benefactor for such organization as the Union Gospel Mission in St. Paul, MN; The Wounded Warrior Project; Long beach Rescue Mission in Los Angeles, CA; and the Carson Cats animal rescue, also in California, to name just a few.

[2] "Hook-up" is a slang term used to describe intimate relations between two people ranging from kissing to heavy-petting, to intercourse, and generally has the connotation of being a more casual encounter, outside an exclusive, emotional or traditional romantic relationship. *See* Merriam Webster online: https://www.merriam-webster.com/dictionary/hook%20up

**Defendant's Motion to Dismiss**
**Indictment for Selective Prosecution**

Government seized his assets, including cash and luxury vehicles. Mr. Lazzaro now asks the Court to review the Government's motives behind the indictment and conclude that the Government's focus on Mr. Lazzaro has been targeted in bad faith, and thus dismiss the above-captioned matter.

## II.     Argument

> "It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government"

*Patterson v. New York*, 432 U.S. 197, 201 (1977).

Selective prosecution claims are analyzed under the equal protection component of the Due Process Clause found in the Fifth Amendment. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). Equal protection requires that the decision on whether to bring federal criminal charges cannot be based on an unjustifiable standard such as race, religion, or other arbitrary classification. *See United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996). In order to prevail on a claim of selective prosecution, Mr. Lazzaro must show that: (1) he has been singled out for prosecution among other similarly situated; and (2) the decision to prosecute Mr. Lazzaro was motivated by an impermissible motive. *United States v. White*, 928 F.3d 734, 742-43 (8th Cir. 2019).

### A)  Mr. Lazzaro is only person to be prosecuted under this theory of legal liability for "sex trafficking" in the District of Minnesota

According to its own press releases, the Department of Justice for the District of Minnesota has charged ten indictments under §1591 in the last five years, including a double indictment of over thirty defendants connected to an

international trafficking ring out of Thailand.[3] Every other sex trafficking prosecution has involved defendants that have advertised young women and girls—most below the age of consent[4]—on the internet, such as backpage.com; produced related child pornography; or transported them across state lines for obvious prostitution.

    The run of the mill case pursued by the United States in this District under §1591 has involved force, fraud, threats, or coercion, and the *selling* of females in an exclusive, prearranged, cash-for-sex operation.[5] Never has the Government gone after a 29-year old engaging in consensual relationships with young women for sex trafficking based on the theory that giving gifts (admittedly expensive ones) to his dates amounted to a commercial sex act. The prosecution of Mr. Lazzaro is unprecedented in this sense and certainly a first in this district.

---

[3] No doubt this Court is aware of *United States v. Intarathong*, 16-CR-257(DWF/TNL); over 35 people were indicted and the greater DOJ investigation spanned from Thailand across the United States. The case involved fraudulently enticing women from Thailand into sexual bondage in the United States.

[4] Put succinctly, the age of consent in Minnesota is 16. *See* Minn. Stat. § 609.352 (prohibiting the solicitation of children, defined as those 15 or younger, to engage in sexual conduct); Minn. Stat. §§ 609.341–609.3451 (defining criminal sexual conduct); *see also State v. Holloway*, 916 N.W.2d 338, 345–46 (Minn. 2018) (discussing the history of "age of consent" laws in Minnesota).

[5] *See United States v. Lee Andrew Paul,* 15-CR-48 (ADM/SER)(defendant specifically sought sixth graders to use as prostitutes and raped them); *United States v. Mykel Harris,* 15-CR-273 (DWF/JSM)(defendant advertised teen on backpage.com); *United States v. Phillip Loyd* 15-CR-142 (JRT/SER)(defendant advertised girl on backpage.com); *United States v. Deuvontay Charles,* 16-CR-65 (JNE/FLN)(defendant recruited girls to prostitute themselves for him and perform in child pornography he disseminated); *United States v. Omar Taylor,* 18-CR-88 (DWF/SER)(defendant ran brothel out of massage parlor); *United States v. Charles Dexter,* 21-CR-40 (SRN/BRT)(defendant advertised girls on megapersonals.com); *United States v. Darnell Stennis,* 20-CR-19 (PJS/BRT)(defendant beat girl with broken towel rack when she refused to prostitute herself for him any longer); *United States v. Rengel-Torres,* 19-CR-319 (ECT/TNL)(defendants repeatedly prostituted girl to groups of out-of-town construction workers).

Meanwhile, state court calendars continue to swell with state prosecutions of child solicitation under Minn. Stat. § 609.352. That is due to the fact that these types of offenses fall classically within the ambit of crimes prosecuted by the states under their general police powers. The Minnesota Sentencing Guidelines Commission reports that the offense displaying the most growth in case volume over time is Soliciting Minors for Sexual Conduct, which saw a 645% increase in cases between 2009 and 2019.[6] State and local agencies do not have the resources to fund investigations equally or adequately across the state, yet it is state efforts that have convicted more purveyors of child prostitution[7] than the Federal Government, despite the nationwide initiative to "combat the growing epidemic of child sexual exploitation and abuse by the Department of Justice" with Project Safe Childhood.[8]

Unfortunately, efforts by the Government have done nothing to stem the tide of child solicitation online, as thousands of ads likely remain on websites like SkipTheGames.com, CityXGuide, Eros.com, EroticMonkey, and dozens of other adult classified websites for escort services in Minnesota. Non-profit organizations like The Women's Foundation of Minnesota have launched targeted campaigns to raise awareness of the problem; for example, in 2018 over $350,000 was pledged to local groups to 'prevent and disrupt' sex trafficking during the ten days of that

---

[6] *See Sex Offenses: Sex Practices for Offenses Sentenced in 2019*, Minnesota Sentencing Guidelines Commission Report, published November 17, 2021.

[7] *Id;* according to the Minnesota Sentencing Guidelines Commission, 112 cases were sentenced under Minn. Rev. Stat. 609.352 between 2009 and 2019.

[8] More information can be found about the Department of Justice Project Safe Childhood online: https://www.justice.gov/psc.

year's Superbowl when it was hosted in downtown Minneapolis.[9] Yet the Minnesota Department of Transportation that Minnesota is one of 13 U.S. cities with a particularly high incidence rate of child prostitution, and that human trafficking is a $150 billion industry worldwide.[10]

The Attorney General of Minnesota further cites a report by local prosecutors that found over 34,000 online classified advertisements for sex, of which an unknown but presumably large percentage involve children, within a 6-month period.[11] The Deliver Fund reports that between 10,000 and 50,000 victims are held as "sex slaves" in the United States every year,[12] yet prosecutions for trafficking are down for the third year in a row, according to a report by the United States Department of State.[13]

However, the Government elected only to federally prosecute Mr. Lazzaro for his alleged role as a "sex trafficker" without any violence, coercion, or fraud. Mr. Lazzaro alone in this district was indicted for "sex trafficking" without there being

---

[9] *See* February 12, 2018 press release from The Women's Foundation of Minnesota, found online at: https://www.wfmn.org/press/wfmn-and-partners-award-more-than-355000-to-expand-outreach-and-prevention-of-sex-trafficking-during-super-bowl-lii/.

[10] *See* Minnesota Department of Transportation Human Trafficking fact page, available online: https://www.dot.state.mn.us/humantraffickingawareness/

[11] *See* Minnesota Attorney General Keith Ellison Sex Trafficking awareness fact page, available online: https://www.ag.state.mn.us/Consumer/Publications/SexTrafficking.asp

[12] *See* The Deliver Fund sex trafficking awareness fact page, available online: https://deliverfund.org/the-human-trafficking-problem-in-america/human-trafficking-statistics-and-resources/

[13] Office to Monitor and Combat Trafficking in Persons "2021 Trafficking in Persons Report: United States," U.S. Department of State, available online: https://www.state.gov/reports/2021-trafficking-in-persons-report/united-states/.

**Defendant's Motion to Dismiss
Indictment for Selective Prosecution**  Page 6 of 13

an allegation of the type of egregious violence or non-consensual intimate relationships as discussed above in footnote 5. Mr.

Unquestionably, the trafficking of minors and other women continues unabated, and the Department of Justice has vast resources to commit to the investigation and prosecution of this abhorrent conduct within Minnesota, yet the only person charged within this district under §1591 absent any threats, fraud, force, or coercion, and without any explicit prostitution is Mr. Lazzaro, and under a provision not pursued by any other prosecutor in any other similar case. Mr. Lazzaro has been treated differently than similarly situated persons in the Government's charging decision. As discussed below, that distinction was made in part because of his wealth.

**B)    Mr. Lazzaro was selectively prosecuted because of his affluence.**

The decision whether to prosecute an individual may not be made based on any arbitrary classification such as race, religion, or affluence. *See United States v. Williams,* 684 Fed. Appx. 767, 777-778 (11th Cir. 2017). Indeed, the Supreme Court has long recognized that our justice system should not engage in line drawing based on the wealth of individuals. *See McDonald v. Bd. Of Election Comm'rs*, 394 U.S. 802, 807 (1969) ("[A] careful examination…is especially warranted where lines are drawn **on the basis of wealth or race**…two factors which would independently render a classification highly suspect and thereby demand a more exacting judicial scrutiny.") (emphasis added). That is why the Supreme Court said almost seventy

years ago that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin v. Illinois*, 351 U.S. 12, 19 (1956).

**1) Justice must be blind to wealth just like race, religion, and creed**

Here, the Government has acted with an impermissible motive and an "uneven hand" by selecting only Mr. Lazzaro for federal prosecution based on his providing gifts to intimate partners above the age of consent based upon Mr. Lazzaro's affluence, *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886), in violation of the equal protection guaranteed by the Due Process Clause. For example, the Supreme Court has long made clear that "[c]lass legislation," such as statutes that on their face "discriminat[e] against some and favor[] other, [are] prohibited," and violate the Equal Protection guaranteed by the Constitution. *Yick Wo,* 118 U.S. at 368. In the *Yick Wo* case, the Supreme Court also applied this Equal Protection evaluation to laws which appear "fair on [their] face, and impartial in appearance," if the "public administration which enforces" the law is discriminatory. *Id.* at 373-74.

**2) Government's statements regarding Mr. Lazzaro's wealth show discriminatory intent.**

In many instances, a defendant is left without any clear statements from the Government about their consideration of a defendant's socio-economic status. Thankfully, Mr. Lazzaro is not in that position. Take for example, the Government's many statements focusing on his wealth in their Motion for Detention:

> According to the bond report prepared by U.S. Probation and Pretrial Services, Lazzaro has a net worth of more than 2 million dollars, including money offshore. The Government notes that these calculations

> do not appear to include Lazzaro's extensive Bitcoin holdings, which are difficult to trace and readily accessible anywhere in the world. And at the time the search warrant was executed on his penthouse, Lazzaro was found to be in possession of multiple types of foreign currency, including Euros, Japanese yen, Arab dirham, and Hong Kong currency, as well as precious metals worth more than $500,000. Lazzaro's social media posts on Twitter and Instagram show him posing in his underwear with wads of cash, bragging about flying on private jets, and extensive international travel. Indeed, evidence at the detention hearing will reveal that Lazzaro has travelled at least 10 times internationally since 2017.

(Doc. 19 at 8). These statements were not made off the cuff in court. Instead, the Government went to great lengths to describe the types of Mr. Lazzaro's assets, the significant sums they had seized from his home,[14] and the fact that Mr. Lazzaro traveled internationally. This was not the only time that the Government tried to weaponize Mr. Lazzaro's wealth and public persona in their prosecution.

At Mr. Lazzaro's detention hearing, the Government repeatedly focused on Mr. Lazzaro's affluence as a reason he should not receive bond. For example, the Government stated:

> At the time that the search warrant was executed, he was found to be in possession of multiple types of foreign currencies, precious metals, and a significant amount of cash. As the evidence today shows, his social media posts on Twitter and Instagram have him posing in his underwear with lots of cash, bragging about flying on private jets, and his extensive international travel, with ten trips since May of 2017, including to the Ukraine. All of this evidence shows that Mr. Lazzaro has significant financial and social resources. He could easily flee the jurisdiction and avoid prosecution.

(Detention Hearing Tran., Doc. 19 at 124).

---

[14] Which turned out to be unlawfully held for approximately 9 months before the Government returned all of the seized currency and precious metals to Mr. Lazzaro.

**Defendant's Motion to Dismiss**
**Indictment for Selective Prosecution**

The Government questioned witnesses about the large amount of airline miles Mr. Lazzaro has earned. (Doc. 19 at 71). The Government focused on pictures of Mr. Lazzaro "flashing big wads of cash" on social media. (*Id.* at 71). The Government brought up Mr. Lazzaro's foreign currency holdings. (*Id.* at 72). The Government homed in on Mr. Lazzaro's history of non-commercial airline travel. (*Id.* at 70). They were obsessed with his lavish lifestyle:

> Q. You've also looked at his Instagram posts; is that correct?
> A. I think we're just friends or connected, but I don't use that social platform as much.
> Q. Okay. You know he has a Ferrari, correct?
> A. Correct.
> Q. And on Instagram he's posted pictures of himself skydiving?
> A. I don't know about that, but I'm assuming if –
> Q. Pictures of fancy bottles of champagne; is that correct?
> A. I don't know about that.
> Q. Topless on a horse?
> A. Yeah. I think it's a mule, to be specific.

(*Id.* at 67).

These were not passing references, but instead a central focus of the Government's presentation of sworn testimony. Of course, such testimony would be relevant in a prosecution for bank fraud or RICO conspiracy. But Mr. Lazzaro is not alleged to have profited in any way from his alleged "sex trafficking" activities. As a result, there is incredibly little relevance to this material. It is reasonable to infer that the Government's focus on Mr. Lazzaro's wealth thus shows a discriminatory motive for electing to prosecute him based on his affluence.

The Court in this case has already recognized that the Government's focus on Mr. Lazzaro's entirely lawful conduct such as skydiving or riding a mule was

improper. (Order, Doc. 76 at 5, n. 2) ("Like many people, Lazzaro has traveled abroad, and like many rich people, Lazzaro has occasionally flown on chartered aircraft."). The Government continued to focus on Mr. Lazzaro's affluence while defending the detention order on appeal. *See United States v. Anton Lazzaro*, No. 21-3634 (8th Cir. 2021) (Brief of Appellee at 15) (witness "confirmed various facts about Lazzaro's **extravagant lifestyle**."). For example, the Government again highlighted Mr. Lazzaro's "tremendous financial resources" in their briefing. (*Id.* at 18). The Government even faulted Judge Schiltz for:

> not fully address[ing] the concerns that Magistrate Judge Bowbeer expressed about Mr. Lazzaro's significant assets, including untraceable cryptocurrency and offshore assets…

(*Id.* at 21).

In short, the Government has taken every opportunity it can in this case to highlight and focus on Mr. Lazzaro's wealth as part of their prosecution. Mr. Lazzaro's prominent public profile from his political activities[15] certainly did not help to make the target on his back any smaller for the Government. Mr. Lazzaro's unsuccessful attempts to meet with the FBI and provide information about Representative Ilhan Omar in the days and weeks before his indictment likely only fanned the flames.[16]

---

[15] It has been well reported that Mr. Lazzaro was a significant donor to the Republican party in Minnesota. *See* https://www.washingtonpost.com/nation/2021/09/08/anton-lazzaro-lawsuit-sex-trafficking/ (last visited January 14, 2021).

[16] Mr. Lazzaro even launched a website https://IlhanOmarDNA.com detailing the information he wished to provide to law enforcement. (Last visited on January 14, 2021.)

The Court should take the Government at its word: Mr. Lazzaro's wealth mattered in this case both before and after he was indicted. That consideration, the financial resources of a citizen, is not constitutionally permissible when making charging decisions. *See, e.g., Williams*, 684 Fed. Appx. at 778 (recognizing potential selective prosecution claim based on affluence).

## Conclusion

The Government has discriminated against Anton Lazzaro in violation of the equal protection guaranteed by the Fifth Amendment Due Process Clause. Mr. Lazzaro was prosecuted federally relative to other similarly situated persons who would be charged in Minnesota state court due to his affluence and public profile. The Government's decision to charge Mr. Lazzaro as a "child sex trafficker" in federal court was based on the impermissible consideration of his socio-economic status. As a result, the Indictment against Mr. Lazzaro should be dismissed.

Respectfully submitted,

/s/ Zachary Newland
Zachary Lee Newland
Senior Litigation Counsel
**Jeremy Gordon P.L.L.C.**
P.O. Box 2275
Mansfield, Texas 76063
Tel: (972) 483-4865
Fax: (972) 584-9230
E-mail: zach@gordondefense.com
Texas Bar: 24088967
https://gordondefense.com

/s/ Catherine Turner
Catherine L. Turner
MN Attorney ID #0349057
331 Second Avenue South
Suite 705
Minneapolis, MN 55401
Tel: (612) 361-4895
Fax: (866) 663-4338
E-mail: catherine@catherineturnerlaw.com

*Attorneys for Anton Lazzaro*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was duly filed and served upon counsel of record, via the Court's CM/ECF system, this 14th day of January 2022.

/s/ Zachary L. Newland
Zachary L. Newland