UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-cr-173(1) (PJS/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

ANTON JOSEPH LAZZARO,
a/k/a Tony Lazzaro,
a/k/a Tony,

        Defendant.

**GOVERNMENT'S PRE-HEARING RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS**

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Angela Munoz, Emily Polachek, and Laura Provinzino, Assistant United States Attorneys, hereby submits its consolidated response to Defendant Lazzaro's pretrial motions.   In accordance with Local Rule 12.1(b), the parties had a meet-and-confer discussion on January 10, 2022.[1]

## BACKGROUND

From approximately May 2020 through December 2020, Defendant Anton Lazzaro conspired with co-defendant Gisela Castro Medina to recruit high school girls to engage in sexual acts with Defendant—who was twice the girls' age—in exchange for cash and other things of value such as cellular telephones, vaping pens, alcohol, and

---

[1] That meet-and-confer session did not, however, include any reference to or discussion of Defendant's Motion to Dismiss for Selective Prosecution ECF No. 133.

accommodations in the Hotel Ivy in Minneapolis, Minnesota.  On August 11, 2021, a grand jury returned a 10-count indictment against Lazzaro, with seven of those counts also naming Castro Medina as a co-defendant.  The indictment charges:  conspiracy to commit sex trafficking of minors (Count 1); sex trafficking of a minor (Counts 2–6); attempted sex trafficking (Count 7); and sex trafficking—obstruction (Counts 8–10).  All of these counts allege violations of the Trafficking Victims Protection Act, 18 U.S.C. § 1591.

The Government has set forth the basic facts of this case in previous briefing to the Court.  ECF No. 71.  Briefly stated, Defendant directed Castro Medina to identify young girls on social media to introduce to Defendant.  Castro Medina would recruit and entice the girls to meet and have sex with Defendant in his Minneapolis condominium in exchange for money and other items of value.  In exchange for her recruitment services, Defendant provided Castro Medina with cash, alcohol, accommodations, and opportunities for travel.  Upon learning that some of the named victims in this case were speaking with law enforcement, Defendant and Castro Medina engaged in actions intended to silence the victims, including presenting a minor victim with a nondisclosure agreement and offering another minor victim cash and alcohol in exchange for silence.

Defendant Lazzaro has filed seven pretrial discovery motions and three dispositive motions.  Castro Medina has not filed any pretrial motions.  The Government's omnibus response to Defendant Lazzaro's motions follows.

## RESPONSE TO NONDISPOSITIVE MOTIONS

## 1.     Defendant's Motion for Counsel to Participate in Voir Dire (ECF No. 122)

Defendant moves the Court for an order permitting the "Defendant's attorney to supplement the Court's voir dire examination by further inquiring into topics including, but not limited to, what information the prospective jurors have about this case, implicit bias, and the effect of any pretrial knowledge on the jurors' impartiality." ECF No. 122.   Defendant further requests that he receive "at least 10 minutes per prospective juror individually, and at least 90 minutes for inquiries to the whole panel." *Id.*

The Government objects to Defendant's motion as premature.  The timing and nature of voir dire is determined by the district judge who presides over trial.  The Government further objects to the amount of time requested by the Defendant. Defendant's request for "at least 10 minutes per prospective juror" is an excessive amount of time that is wholly inconsistent with the District of Minnesota's voir dire practices.  As counsel explained during the meet-and-confer process, counsel seeks to intentionally lengthen federal court voir dire practice to make it more akin to counsel's perceptions of voir dire in the Minnesota state criminal courts.

Since the COVID-19 pandemic began, the District of Minnesota has utilized a written juror questionnaire to solicit information from prospective jurors.  As explained on the District of Minnesota's website, the questionnaire "contains several questions that would normally be asked in person by the trial judge during the jury selection

process." *See* https://www.mnd.uscourts.gov/juror-questionnaire (last visited January 27, 2022). The purpose of the questionnaire is to "reduce the number of potential jurors that [are] asked to report to the courthouse." *Id.* The prospective jurors' answers are shared with both the trial judge and the attorneys on the case. *Id.* In addition to the information obtained from the questionnaire, the district judges are also conducting in-person voir dire. As part of this process, many district judges continue to solicit proposed questions from the attorneys on the case for use in voir dire. *See, e.g.*, *United States v. Stennis*, No. 20-cr-0019 (PJS/BRT), ECF No. 105 at 3 ("Trial briefs, *voir dire questions*, proposed jury instructions, and trial-related motions . . . must be submitted to Judge Schiltz's chambers by 4:00 p.m. on September 17, 2021." (Emphasis added.)).

For nearly two years, the District Court has utilized a combination of the written juror questionnaire, supplemental questions proposed by the attorneys in the case, and an in-person voir dire process led by the trial judge in a wide-variety of cases. Defendant has provided no factual or legal explanation as to why the District Court's standard practice is unacceptable for him. Defendant's motion to participate in voir dire should be denied without prejudice.

## 2. Defendant's Motion for Disclosure of Grand Jury Transcripts (ECF No. 123).

Defendant moves for an order permitting Defendant to inspect and copy "the entire transcript and minutes of the Grand Jury" related to all witnesses called before the grand jury, regardless of whether those witnesses will testify at the forthcoming

pretrial hearing. But it is a "well-established rule in this circuit that grand jury testimony is generally not discoverable on pretrial motion." *United States v. Pelton*, 578 F.2d 701, 709 (8th Cir. 1978). "While the Federal Rules of Criminal Procedure authorize disclosure of grand jury transcripts under certain circumstances, *see* Fed. R. Crim. P. 6(e)(3), parties seeking such disclosure must show a 'particularized need,' and the decision to permit disclosure lies within the sound discretion of the trial judge." *United States v. Wilkinson*, 124 F.3d 971, 977 (8th Cir. 1997) (cleaned up); *see also Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979) ("Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.").

Defendant has not and cannot establish a particularized need for disclosure of all grand jury transcripts and minutes. Defendant claims immediate disclosure of all materials is necessary to prepare cross-examination. ECF No. 123 at 1. But that assertion is belied by the fact that Defendant is seeking transcripts related to *all witnesses*, including those "whom the Government does not expect to call as witnesses at the trial of this case." *Id.*

Moreover, "[g]rand jury transcripts need only be released by the government insofar as required under the Jencks Act, 18 U.S.C. § 3500." *Wilkinson*, 124 F.3d at 977. Defendant's motion, then, is one seeking immediate, and therefore early, disclosure of

Jencks Act material.  The Government objects to court-ordered early disclosure of Jencks Act material.  It is well-established in this circuit and district that the Government may not be ordered to make pretrial disclosure of Jencks material.  *United States v. Finn*, 919 F. Supp. 1305, 1315 (D. Minn. 1995); *see also United States v. Ben M. Hogan Co.*, 769 F.2d 1293, 1300 (8th Cir. 1985); *United States v. White*, 750 F.2d 726 (8th Cir. 1984).  Nonetheless, the Government will voluntarily agree to provide any previously undisclosed Jencks material[2] —including the grand jury testimony of trial witnesses—to the defense no later than three business days before trial.  *See United States v. Eisenberg*, 469 F.2d 156, 160 (8th Cir. 1973).  The Government respectfully requests that Defendant extend the same courtesy.

### 3.   Defendant's Motion for Leave to File Additional Pretrial Motions (ECF No. 124)

Despite multiple requests for continuances and extensions of the deadline to file pretrial motions (ECF Nos. 57, 78, 119), Defendant brings a blanket motion for leave to file additional pretrial motions.  As Defendant appropriately notes, the Government has made extensive disclosures in this case.  In its first round of discovery, the Government made available for inspection the digital devices seized pursuant to search warrant in December 2020 and the Google Pixel seized upon arrest in August 2021.  It was not until late December 2021 that Defendant's legal team made a request to view

---

[2] Indeed, the Government has already disclosed a significant number of statements of victims and witnesses and other Jencks Act materials on an ongoing basis.

the digital evidence. The Government responded with two dates for inspection before Defendant's motions were due. Instead of an in-person review of the evidence, Defendant's team requested a copy of the evidence on digital devices. The Government responded with instructions to send a 1TB hard drive to both FBI and Minnesota Bureau of Criminal Apprehension to secure copies of the evidence. Those devices were just received this week.

As a result of the lack of diligence by Defendant and no outer bounds to the request, the Government opposes this motion. The Government is at a distinct disadvantage in responding as there are no parameters set forth as to the number or type of subsequent motions to be filed. Defendant's attorneys made clear during the January 10, 2022, meet and confer that they are not challenging the underlying warrants to obtain the digital devices but wanted to reserve a basis to challenge the scope and manner of execution of the warrants. The Government notes—not without some irony—that Defendant has retained his own "expert"—ECF No. 124 at 2 ("Mr. Lazzaro has retained an expert in this field who will be assisting counsel with the digestion of all this data.")—to review this evidence. Defendant's lack of diligence in timely inspecting the evidence may lead to additional delay. To the extent the Court is considering granting the blanket motion, parameters need to be set, such as limiting Defendant to two additional weeks, for the filing of any additional pre-trial motions relating to the digital devices.

**4.     Defendant's Motion to Compel Disclosure of Expert Materials (ECF No. 125)**

The Government understands its obligations under Rule 16 to provide written summaries of expert qualifications and opinions.  Fed. R. Crim. P. 16(a)(1)(G).  The issue before the Court in this motion is the appropriate timing for the reciprocal exchange of expert materials and date for the disclosure of rebuttal experts and reports. In the Government's motion filed August 13, 2021, it proposed the exchange of expert reports 30 days prior to trial and any rebuttal reports 10 days prior to trial.  ECF No. 8.[3]  This is standard practice in the District and common in human trafficking cases where typical experts include forensic examiners, sex trafficking experts, and child psychiatrists and psychologists.  Indeed, in the current criminal civil rights trial of *United States v. Tou Thao et al.,* 21-cr-108 (PAM/TNL), the parties had even less time.

It was not until the day that Defendant's pretrial motions were due that defense counsel asked about experts during the required meet and confer.  The Government noted that it had already filed its motion proposing a schedule for the disclosure of experts.  The parties subsequently exchanged email communication regarding expert

---

[3] Specifically, the Government respectfully requested that the Court order that expert disclosures for both parties, if any, be made 30 days before trial. Such a timing requirement allows the parties sufficient notice of the expected testimony and time to prepare a focused cross-examination of the expert. Such an order would also provide the opposing party ample time to obtain a rebuttal expert and prepare a rebuttal report in advance of trial. Accordingly, the Government also requests that any rebuttal experts be noticed, and any rebuttal expert disclosures be produced to the opposing party, no later than 10 days before trial.

disclosures, and Defendant now brings his motion to compel the Government's disclosure of experts and the exchange of expert materials 180 days before trial. The Government opposes this request as unnecessary, impractical, and contrary to local practice.

Rule 16—including Rule 16(a)(1)(G) and (b)(1)(C)—outlines continuing disclosure obligations. Consistent with the arraignment order, the Government has made several rounds of disclosures and continues to disclose and produce Rule 16 materials as they become available. The Local Rules in the District also support the ongoing nature of Rule 16 obligations and uses the phrase "to the extent practicable" regarding 16(a) and 16(b) disclosures.

The Government anticipates presenting expert testimony but has not finalized information about experts at this early stage in the proceedings and therefore has no expert disclosures to make at this time. The Government similarly assumes that defense counsel did not have expert witnesses to share by the September 7, 2021, deadline in the arraignment order. As this Court understands, the selection and presentation of expert witnesses will be determined, in part, by whether the case proceeds to trial, which parties and counts remain, what evidence is available depending on the ruling of any suppression or other motion, and what defenses are being offered. Expert testimony may also depend on whether there are stipulations.

Recognizing that the nature and scope of expert testimony takes shape as the parties near a trial date, the Government proposes a reciprocal deadline of expert

disclosures 30 days before trial for any experts that either party intends to call in their case-in-chief, and that any rebuttal experts be noticed 10 days before trial. A 30-day deadline is commonplace in the District because it closely aligns with other trial deadlines set by district judges, such as the deadline by which to exchange proposed witness lists with opposing counsel. Defendant's 180-day request is wholly impractical. It is almost certain that when the parties receive a trial date, it will be for a date less than 180 days in the future, making expert disclosures due immediately without providing any time to find someone who is available for the given date. Defendant's claim that 30 days is insufficient notice also rings false. In the recent sex trafficking case of *United States v. Stennis*, No. 20-cr-19 (PJS/BRT), expert disclosures were made 21 days before the scheduled trial date. And unlike the defendant in Stennis, Defendant has multiple attorneys and investigators who can respond to the Government's disclosures.

As such, the Government respectfully requests that the motion to compel be denied and the Court adopt its proposal of reciprocal expert disclosures 30 days before trial.

**5.     Defendant's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants or Unindicted Co-Conspirators (ECF No. 126)**

Defendant moves for an order compelling the Government to give notice, produce, and identify statements and confessions from Defendant's coconspirators, both indicted and unindicted, that the Government intends to introduce at trial. Defendant also moves for leave to file motions in response to such disclosures. The

Government is well aware of, has complied with, and will continue to comply with its ongoing discovery obligations for the disclosure of statements. The Government does not object to Defendant's motion to the extent that it requests disclosure of codefendant statements that could fall under *Bruton v. United States*, 391 U.S. 123 (1968). Indeed, the Government has no intention of offering a statement from a non-testifying Defendant that explicitly inculpates the other in violation of the *Bruton* Rule.

The Government does object to Defendant's motion insofar as it constitutes a request for early disclosure of Jencks Act materials. Specifically, the Government "is not required to disclose the statements of unindicted coconspirators" or testifying codefendants "prior to their trial testimony, as such statements are covered by the Jencks Act and beyond the scope of *Bruton*'s rule regarding the statements of non-testifying codefendants." *United States v. Perez*, No. 16-cr-154 (ADM/BRT), 2018 WL 3000336, at *2 (D. Minn. June 15, 2018). As previously noted, the Government will voluntarily provide such coconspirator statements to Defendant no less than three days before trial along with any other undisclosed Jencks Act material.

## 6. Defendant's Motion for Disclosure of Exculpatory Evidence and Impeaching Information (ECF No. 128)

Defendant seeks an order compelling disclosure of exculpatory evidence and materials that may be used to impeach witnesses called in the Government's case at trial. The Government is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. The Government

has complied, and will continue to comply, with the rules set out in that line of cases. The Government objects to Defendant's motion to the extent that it goes beyond the requirements of such case law.

Specifically, the Government objects to Defendant's request for witness statements outlined in Paragraphs 2, 3, and 8 to the extent Defendant is requesting early disclosure of Jencks Act materials.

Additionally, the Government objects to Paragraphs 5 and 9 to the extent Defendant is seeking disclosure of rough notes. Rough notes are not considered statements within the meaning of the Jencks Act. *United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence witness signed, adopted or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover Government agents' general notes from witness interviews); *United States v. Bernard*, 623 F.2d 551, 558 (9th Cir. 1979) (Jencks Act not intended to cover rough surveillance notes). Nor are agent rough notes generally discoverable as a "statement" of the agent. *See United States v. Simtob*, 901 F.2d 799, 808–09 (9th Cir. 1990) (defendant not entitled to discover testifying agents' destroyed rough notes of investigations); *United States v. Williams*, 875 F.2d 846, 853 (11th Cir. 1989) (defendant not entitled to discover agents' personal notes, contact sheets, witness lists, summaries of non-testifying witnesses' statements when bulk of material not relevant to subject matter of agents' testimony).

Finally, the Government will comply with its obligation to provide materials in the Government's possession that may be used to impeach its witnesses pursuant to Federal Rules of Evidence 608 and 609.  But the Government objects to Paragraphs 6, 7, and 9 to the extent Defendant requests materials that go beyond those rules of impeachment.  Defendant's request for witnesses' prior convictions is so broad that it is tantamount to a request for the entire investigatory file for any and all criminal proceedings involving Government witnesses.  Similarly, Defendant's request for "any and all records and information" of "prior misconduct or bad acts" is overly broad, requests irrelevant materials, and imposes a vague and burdensome obligation on the Government.

## 7.   Defendant's Motion to Compel the Disclosure of "Taint Team" Materials (ECF No. 129)

Defendant moves the Court for an order "compelling the disclosure of any evidence in possession of the Government or any of its agents regarding the privileged communications between Mr. Lazzaro and his defense team, both former and the undersigned."  ECF No. 129 at 2.  As part of Defendant's motion, Defendant identifies a number of specific items of "privileged content" that he claims the Government "possessed and accessed" and seeks an order compelling the production of these items. *Id.*  Finally, Defendant seeks an order compelling the Government to create a number of reports and other write-ups documenting the steps it used to ensure that the

prosecution team did not review any attorney-client privileged information. *Id.* The Government objects to this motion.

As an initial matter, the Government has complied and will continue to comply with its Rule 16 disclosure obligations. As outlined herein, the Government is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. The Government has complied, and will continue to comply, with the rules set out in that line of cases.

As part of its investigation and review of materials seized from Defendant, the Government utilized a taint team to identify any attorney-client privileged information on the devices. The taint team was comprised of individuals not part of the prosecution team (*i.e.*, the attorneys and law enforcement team handling the investigation and prosecution of Defendant's sex trafficking crimes). The Government utilized a taint team because it became aware early in the investigation that Defendant had worked with an attorney to draft a non-disclosure agreement in an effort to silence one of the minor victims. To protect the Defendant's right to a fair trial given concerns that attorney-client privileged materials may be on the digital devices seized, the U.S. Attorney's Office took steps to make sure that the prosecution team did not have access to that information.

Defendant's motion to compel essentially includes document requests for specific materials contained on the 21 devices seized from the Defendant's residence on December 15, 2020. ECF No. 129 at ¶ 1. Defendant's document requests are

wholly unnecessary.  This case is not a civil lawsuit wherein parties serve each other with requests for production of documents.  Pursuant to the Government's disclosure obligations in this criminal case, the Government made the 21 devices available for inspection on August 31, 2021.  Defendant was informed of the availability of these materials in the Government's initial Rule 16 disclosure letter to counsel Zachary Newland, Jeremy Gordon, and Hillary Parsons.  In lieu of an in-person inspection of the devices, Defendant elected to send blank hard drives to the BCA and FBI in order to obtain an imaged copy of the seized devices.  BCA and FBI received the Defendant's blank hard drives on January 25, 2022, and began the imaging process.  Defendant will receive duplicate images of the devices as they were seized from Defendant on December 15, 2020, which includes any privileged material, if any, that was contained on Defendant's devices.[4]

The additional materials that Defendant seeks in his motion is not discoverable information.  Rule 16 explicitly excludes from discoverable information the types of materials that the Defendant seeks in his motion.  "[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).

---

[4] Defendant was previously informed that the hard drives will not contain an image of the Defendant's Blackberry and Google Pixel phones because Defendant password-protected these devices and the Government's forensic work is ongoing.

Defendant provides no explanation as to why he is entitled to materials specifically excluded from Rule 16.  Further, Defendant provides no legal basis for requiring the Government to create what is essentially a log of materials akin to a privilege log in civil litigation.

Defendant is correct in so far as he seeks access to the electronic devices seized from him pursuant to the federal search warrant in this case.  The Government has made these devices available to him since its initial Rule 16 disclosures on August 31, 2021, and has taken the additional steps to provide him with an image of these devices. Defendant has access to what he is entitled to and therefore his motion should be denied as moot.

## RESPONSE TO DISPOSITIVE MOTIONS

### 8.  Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 127)

Defendant moves to suppress the Google Pixel cellular telephone seized incident to his arrest and searched pursuant to a federal search warrant obtained just days later. The facts below are intended to provide context for the Government's response to this motion and will be developed at the evidentiary hearing on these motions.

On August 12, 2021, the FBI executed an arrest warrant at Defendant's residence in the Hotel Ivy.  The arrest warrant was obtained the day before when a grand jury issued an indictment based on 10 separate counts of sex trafficking offenses. ECF No. 1.  As Special Agent Patrick Rielly will testify, the FBI knocked and announced their

presence at Defendant's condominium at Hotel Ivy a little after 6 a.m. After a short time, Defendant opened the front door. Defendant had a Google Pixel cell phone in the front pocket of his pants. While standing in the threshold of the front door, Defendant removed his cell phone and placed it on a box within his reach just inside the door. Defendant was arrested and taken into custody without incident. Defendant was moved away from the threshold of the door, which then closed. Defendant told FBI agents that his girlfriend was in the condominium.

Once Defendant was clear of the threshold, SA Rielly asked Defendant if the door was locked. Defendant replied that it was unlocked. Immediately, FBI agents opened the front door and seized the Google Pixel from the box where Defendant had just placed it. SA Rielly provided the phone to the case agent, SA Richard Waller, who was in the lobby of the Hotel Ivy to secure Defendant and transport him to the United States courthouse for his initial appearance. Neither SA Rielly nor SA Waller searched the phone, which was secured in evidence at the FBI that day.

Defendant had his initial appearance before the Honorable Hildy Bowbeer that Thursday afternoon of August 12, 2021. Defendant was detained. On Monday, August 16, 2021, SA Waller obtained a search warrant for Defendant's Google Pixel. *See* 21-mj-597 (HB) (filed under seal as Gov. Ex. 1).

SA Waller's affidavit explained that the Google Pixel was seized incident to arrest and subsequently transported to the FBI Field Office in Brooklyn Center, Minnesota, where it was secured pending a search warrant. SA Waller's affidavit detailed the arrest

of Defendant and facts surrounding the seizure of the Google Pixel.  SA Waller also explained that Defendant had told FBI agents that his girlfriend remained in the condominium, and he directed her to contact his lawyer. When Defendant was being processed, he said that he had researched members of the investigation and prosecution team, including where the law enforcement officers lived.  In addition to explaining these recent events, SA Waller attached to the August 2021 warrant application the search warrant and affidavit that he had obtained in December 2020.  *See* 20-mj-914 (KMM).  Upon execution of that December 2020 warrant, multiple digital devices had been taken from Defendant, including multiple cell phones.  SA Waller therefore believed that Defendant obtained the Google Pixel after the December 2020 search warrant and was using the Pixel in or about March 2021 to coordinate with co-defendant Castro Medina to obstruct the FBI's investigation, which was one of the counts of the indictment.  SA Waller also detailed facts to support continued communication between Defendant and Castro Medina up through their arrests.

After the warrant for the Google Pixel was obtained, FBI's Computer Analysis Response Team (CART) in Brooklyn Center attempted to search the phone.  CART's efforts to obtain a forensic extraction of the Pixel's data were unsuccessful.  The Google Pixel was then sent to FBI's main headquarters at Quantico, Virginia.  SA Waller obtained an additional search warrant in Eastern District of Virginia. *See* 1:21-SW-666 (TCB) (filed under seal as Gov. Ex. 2).  To date, the FBI has been unable to obtain data from the Google Pixel.

18

As a preliminary matter, Defendant is not challenging the lawfulness of his arrest. Nor is Defendant challenging the search warrants obtained for the Google Pixel here in District of Minnesota or Eastern District of Virginia. Defendant's challenge appears to be limited to his assertion that the "original seizure was not pursuant to a valid warrant to search his apartment, nor to an exception thereto." ECF No. 127 at 1. That is not a sufficient basis to support suppression of any evidence from the Google Pixel.

First, as will be established by SA Waller's affidavit and the testimony of SA Rielly, the Google Pixel was seized pursuant to arrest. The Government agrees that, with limited exceptions, when a cell phone is seized incident to an arrest, police must secure a warrant supported by probable cause to search it. *Riley v. California*, 573 U.S. 373, 403 (2014). That was done here.

Defendant seems to believe that the fact that he removed the phone from his pants pocket and placed it in his condominium somehow precludes law enforcement's ability to seize it incident to arrest. This is not the law. A full search of an arrestee and the area within an arrestee's immediate control for both weapons and evidence may be made during a search incident to arrest. *United States v. Jones,* 479 F.3d 975, 978 (8th Cir. 2007). That is because the concern is that items on the defendant's person and immediate control present risks—that defendant could gain control of a weapon or destructible evidence. And that rule applies even when a defendant has been detained. *See United States v. Mefford,* 658 F.2d 588, 591–93 (8th Cir.1981) (although police officer held arrestee's sack, the sack was still within arrestee's area of "immediate control").

Because Defendant was arrested pursuant to a court-issued warrant, law enforcement was entitled to conduct a search of his person and area within his control. Defendant's motion to suppress evidence should be denied.

Moreover, the phone was also seized pursuant to exigent circumstances, which is a recognized exception to the warrant requirement. Exigent circumstances exist when "law enforcement authorities have probable cause to believe" property "holds contraband or evidence of a crime" and "the exigencies of the circumstances demand" immediate seizure "pending issuance of a warrant to examine its contents." *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021) (citing *United States v. Place*, 462 U.S. 696, 701 (1983)). In other words, a warrantless search or seizure is not unreasonable under the Fourth Amendment if (1) law enforcement had probable cause to believe it contained contraband or evidence of a crime and (2) exigent circumstances demanded immediate seizure. *See id.*

"The existence of exigent circumstances is an objective analysis focusing on what a reasonable, experienced police officer would believe." *United States v. Williams*, 431 F.3d 1115, 1118 (8th Cir. 2005). As relevant here, exigent circumstances exist when, if the property is not seized immediately, there is a risk that the evidence contained therein would be lost, *see Garmon v. Foust*, 741 F.2d 1069, 1074–75 (8th Cir. 1984), or destroyed, *see Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004). With Defendant's girlfriend remaining in the condominium with instructions to call his lawyer, there was a good chance that the Government risked losing digital evidence on

the cell phone without immediate seizure, as it could have been removed or destroyed. As in *Mays*, law enforcement had an objectively reasonable belief that exigent circumstances demanded immediate seizure. 993 F.3d at 614 (citing *United States v. Clutter*, 674 F.3d 980, 983, 985 (8th Cir. 2012) (concluding that the risk that evidence of child-pornography offenses believed to be on defendant's computers would be removed or destroyed presented an exigent circumstance justifying the warrantless seizure of those computers, even though the defendant was in jail at the time of the warrantless seizure) *and Garmon*, 741 F.2d at 1074 (finding that exigent circumstances justified the warrantless seizure of a package due to the "risk of the package's disappearance before a warrant could be obtained," even though in hindsight it may have "appear[ed] that the risk of the package's disappearance was small")).

The case of *United States v. Pierson*, 219 F.3d 803 (8th Cir. 2000), is also on point. There, the Eighth Circuit rejected Pierson's claim that the officer's entry into his hotel room was unlawful after he was arrested without a warrant in the hotel hallway. *Id.* at 804. The officers' entry into the room was supported by exigent circumstances. *Id.* at 805. Pierson's girlfriend was still in the room with the drugs and aware of the arrest. *Id.* She could have destroyed evidence if the officers had decided to wait for a search warrant before entering the room. *Id.* at 805–06.

Additionally, even if the seizure of the phone violated the Fourth Amendment, suppression is not an appropriate remedy because any evidence obtained from the phone was done pursuant to a valid search warrant. Under the independent-source

21

doctrine, evidence is admissible if it "would have been acquired by lawful means had the [allegedly] unlawful search not occurred and in fact *was* acquired (or reacquired) by these lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). The doctrine stems from the principle that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." *Id.* (citation omitted). In other words, so long as "the evidence would have been acquired lawfully if the unlawful search had not occurred, admitting the evidence puts the government in the same position that it would have occupied if the unlawful search had not occurred." *Id.*

In short, probable cause and exigent circumstances also justified the warrantless seizure of Defendant's cell phone. Therefore, that seizure did not violate Defendant's Fourth Amendment rights. The suppression motion should be denied.

## 9.   Defendant's Motion to Dismiss Counts 5–7 as Unconstitutionally Vague (ECF No. 132)

Counts 5, 6, and 7 of the Indictment charge the Defendant with sex trafficking and attempted sex trafficking of three different minors in violation of 18 U.S.C. § 1591. Defendant seeks to dismiss Counts 5, 6, and 7 of the Indictment because he alleges that § 1591 is unconstitutionally vague "as applied" in these counts. ECF No. 1. The Government objects to Defendant's motion as premature because "as applied" constitutional challenges are issues to be dealt with at the conclusion of trial. Although the Government maintains that this motion is premature and should not be briefed at

this time, the Government provides the following prehearing response to outline the legal framework applicable to a constitutional challenge and its preliminary arguments in response to Defendant's challenges.  The Government specifically requests the right to submit supplemental briefing on Defendant's constitutional challenge at the conclusion of trial should Defendant persist in this challenge.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  One "essential" feature of the Fifth Amendment's due process guarantee is "[t]he prohibition of vagueness in criminal statutes," *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citation omitted).  A law is unconstitutionally vague if it: (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.").  A law is unconstitutionally vague due to a lack of fair notice when the law fails to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."  *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).  A law is unconstitutionally vague due to arbitrary enforcement concerns if it leaves judges, jurors, or law enforcement "free to decide, without any legally fixed standards, what is

prohibited and what is not in each particular case." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (citation omitted).

There are two types of challenges that a defendant may raise under the void-for-vagueness doctrine. First, a defendant may argue that a law is unconstitutionally vague on its face. This means that a law is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). Second, a defendant may make an as-applied challenge to argue that a law is unconstitutionally vague. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 258 (2012). In an as-applied challenge, the court may "leav[e] aside any concerns about facial invalidity," and ask only whether the law in question is impermissibly vague as to the conduct of the specific challenger. *Id.* at 254. This type of challenge asks (1) whether the law is sufficiently clear and definite to give notice to the specific defendant that his or her actions were prohibited and (2) whether vagueness in the law resulted in it being applied arbitrarily to the defendant. *Id.*

As outlined in his motion, Defendant's challenges to Counts 5, 6, and 7 are "as applied" challenges. ECF No. 132 at 1 ("The Court should dismiss these counts because 18 U.S.C. § 1591 is unconstitutionally vague as applied in this case . . . ."). The as-applied vagueness challenge to these three counts is not an issue that is properly before the Court at this stage of the proceedings. The Eighth Circuit has held that a district court must wait until the facts of a case are fully developed at trial before ruling

on an as-applied vagueness challenge.  *See United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016).  Therefore, the Court should neither entertain oral argument nor written submissions regarding the as-applied vagueness challenge at this time.  The challenge is premature and not ripe for ruling.

## 10.   Defendant's Motion to Dismiss for Selective Prosecution (ECF No. 133)

Defendant moves to dismiss the Indictment against him, alleging that the Government is selectively prosecuting Defendant based on his wealth and "prominent public profile."  ECF No. 133 at 1.  This claim has no basis in fact or law.  Discovery materials provided to Defendant make clear that this investigation began when victims reported Defendant's conduct to law enforcement, including human trafficking task force members.  And the grand jury did not indict Defendant because he is wealthy, but because he used his wealth to conspire with Castro Medina and repeatedly recruit, entice, harbor, transport, provide, obtain, maintain, patronize, and solicit girls under the age of 18 years to engage in commercial sex acts with him, and then attempted to intimidate and bribe those victims into silence.

Courts reviewing claims of selective or vindictive prosecution begin with a "presumption of regularity" wherein, "in the absence of clear evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted).  Indeed, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not

to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (citation omitted).  To establish a *prima facie* case of selective prosecution, Defendant bears the burden of presenting evidence that (1) others similarly situated to him were not prosecuted, and (2) Defendant was selected for prosecution "based on some impermissible ground such as race, religion, or the exercise of constitutional rights." *United States v. Aanerud*, 893 F.2d 956, 960 (8th Cir. 1990). Defendant cannot establish either factor.

As a preliminary matter, Defendant has not established that wealth and a "prominent public profile" are protected classes under the Equal Protection Clause such that they may form the basis for a claim of selective prosecution.  Neither wealth nor celebrity fall within the categories of "race, religion, or the exercise of constitutional rights." *See id.*  In fact, in a recent case, a defendant who unsuccessfully argued selective prosecution based on wealth was forced to acknowledge that "there does not (yet) appear to be a Federal case dismissing an indictment due to selective prosecution on the basis of a defendant's wealth." *United States v. Williams*, 684 F. App'x 767, 777–78 (11th Cir. 2017).[5]

---

[5] Defendant twice incorrectly asserts that the court in *Williams* held that "[t]he decision whether to prosecute an individual may not be made based on . . . affluence." ECF No. 133 at 7, 12.  In truth, the Eleventh Circuit agreed with the defendant's concession that no court had ever held as such, and proceeded to reject the defendant's argument while accepting his premise only *arguendo*.  *Williams*, 684 F. App'x at 777–78. Defendant goes too far in representing that the *Williams* court "recogniz[ed a] potential selective prosecution claim based on affluence."  ECF No. 133 at 12.  It did not.

Even if the Court did make the novel finding that affluence is a protected class under the Equal Protection Clause, Defendant's claim of selective prosecution would still fail as Defendant cannot establish either a discriminatory effect or intent.  First, Defendant attempts to show a discriminatory effect by pointing to cases wherein the Government relied on other portions of the TVPA to prosecute other forms of sex trafficking.  ECF No. 133 at 3–6.  According to Defendant, because the allegations against him do not involve the same kind of violent force and coercion as other cases recently prosecuted in the District, the Government must be discriminating against Defendant.  This argument is flawed for two reasons.  First, it does not account for the fact that the TVPA was amended in 2015 to encourage the investigation and prosecution of individuals who purchase commercial sex with minors.  *See* H.R. Rep. No. 114-7 at 3 (2015).   Second, Defendant makes no assertions about the socioeconomic status of these other defendants.  He merely speculates that offenders who engaged in similar conduct were prosecuted under state, rather than federal, law.[6] To correctly establish a discriminatory effect, Defendant would have to show that individuals of a different socioeconomic class who engaged in Defendant's same conduct of recruiting and enticing minors were not federally prosecuted.  *See Armstrong*, 517 U.S. at 465 ("To establish a discriminatory effect in a race case, the claimant must

---

[6] It is unsurprising that Defendant cannot identify similarly situated individuals because, as Congress noted when enacting the Justice for Victims of Trafficking Act, "[t]here is no uniform profile of a buyer of commercial sex with a minor, making buyers particularly difficult to identify."  H.R. Rep. No. 114-7, at 3–4 (2015).

show that similarly situated individuals of a different race were not prosecuted."). Absent this showing, there is no evidence of wealth discrimination.[7]  *See Williams*, 684 F. App'x at 778 (finding no selective prosecution where the defendant "provide[d] no concrete evidence as to the relative wealth or poverty" of similarly situated individuals).

Furthermore, Defendant has not presented evidence of discriminatory intent by the Government.  Defendant spends a significant portion of his brief reciting instances in which the Government noted Defendant's wealth.  ECF No. 133 at 8–11.  But every single one of these statements was made in relation to the Government's motion for detention.  As this Court is well aware, when detaining a defendant, the Court must consider risk of flight, which is informed by the defendant's available assets.  Under 18 U.S.C. § 3142, the Government bore the burden of proving that Defendant was a flight risk.  In presenting evidence of Defendant's wealth to the Court, the Government was doing its job, providing the Court with a full picture of the resources available to

---

[7] Undercutting Defendant's argument is the case of *United States v. Koech*, No. 18-cr-18(2) (DWF/LIB).  The defendant, Amos Koech, was charged with one count of conspiracy and one substantive count of sex trafficking in violation of 18 U.S.C. § 1591. *See* Government's Trial Brief, *United States v. Koech*, No. 18-cr-18(2) (DWF/LIB) (Jan. 11, 2019), ECF No. 146.  The codefendant in the case, Mathis, recruited and groomed a minor girl to perform commercial sex acts.  Koech then paid to have sex with the minor victim.  There were no allegations of force, threats of force, fraud, or coercion in that case.  *See* Jury Instructions, *United States v. Koech*, No. 18-cr-18(2) (DWF/LIB) (Jan. 22, 2019), ECF No. 160.  While Koech and Defendant participated in sex trafficking in similar ways, Koech's economic circumstances qualified him for representation by the Office of the Federal Defender.  This comparison demonstrates that the Government prosecutes sex traffickers based on their actions, not affluence.

Defendant (including assets that were not disclosed to U.S. Probation and Pretrial Services) should he be released and decide to flee the jurisdiction. Defendant's claim that these statements, made in the course of fulfilling a statutory obligation, show discriminatory animus is disingenuous.

Similarly unavailing are Defendant's insinuations that his political affiliation influenced the Government's prosecutorial decisions. ECF No. 133 at 11. It is public record that this investigation and prosecution of the case against Lazzaro and Castro Medina has straddled the administrations of two separate political parties. That is because investigating and prosecuting people who engage in human trafficking and child exploitation has been and remains a priority of the Department of Justice and the U.S. Attorney's Office for the District of Minnesota.

In sum, Defendant cannot meet the rigorous standard of rebutting the presumption of regularity. The Government's decision to prosecute Defendant was a proper exercise of prosecutorial discretion with no discriminatory animus. The Court should therefore deny Defendant's motion to dismiss the indictment for selective prosecution.

## CONCLUSION

The Government respectfully asks the Court to rule on Defendant's pretrial motions as set forth above.

Respectfully submitted,

Dated:  January 28, 2022

CHARLES J. KOVATS, JR.
Acting United States Attorney

*s/ Emily Polachek*
BY: EMILY A. POLACHEK
Attorney Reg. No. 0390973

ANGELA M. MUNOZ
Attorney Reg. No. 0389207

LAURA M. PROVINZINO
Attorney Reg. No. 0329691
Assistant United States Attorneys

30