UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-cr-173(PJS/DTS)

UNITED STATES OF AMERICA,

               Plaintiff,

    v.

ANTON JOSEPH LAZZARO et ano.,

               Defendants.

**REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT
OF MOTION TO VACATE
RESTRAINTS ON CERTAIN
SEIZED PROPERTY**

## <u>SUMMARY OF RESPONSE TO GOVERNMENT OPPOSITION</u>

The government's opposition struggles to avoid the consequence of the fundamental legal principle set forth in the first sentence of Mr. Lazzaro's motion to vacate restraints on his seized cash (now moot), vehicle and electronics: Untainted property may not be restrained before trial.

The arguments in its opposition range from legally wrong to utterly irrelevant. The worst of them avoid directly misrepresenting the law but, by playing games with terminology, suggest that there is some exception to the bar on pretrial restraint of untainted property. Among these is the apparent contention that this black-letter law

1

applies only to "substitute assets," which is built on the unstated suggestion that there is a difference between substitute assets and untainted property. There is no difference. Substitute assets are, by statute, untainted property.

A more expressly stated incorrect argument is that untainted property can be restrained so long as the defendant does not demonstrate that he needs it to pay his counsel of choice. That, too, is false. Similarly, the government 'sort of' argues that untainted property can be restrained if the defendant is currently unable to use it. That, too, is false. The test is not whether the defendant will use the property if it is released to him. It is his property and does not belong to the government. There is no exception for 'unneeded property.' Finally, as for the government's use of the so-called *Jones-Farmer* rule, to the extent it is not a government figment or has been invalidated by the Supreme Court's decisions in *Luis* and *Honeycutt*, even the government's papers concede that it has no arguable application here, where there has been no grand jury finding of probable cause that the property sought to be released is subject to forfeiture.

On the irrelevant side is the government's contention that Mr. Lazzaro's motion is 'really' a motion pursuant to Fed. R. Crim. P. 41(g), and that such motions are unavailable once an indictment has been filed. This is not a Rule 41(g) motion. Indeed,

the express language of Rule 41(g) has nothing to do with whether the property is untainted or subject to forfeiture.

The government's Rule 41(g) and *Jones-Farmer* arguments are attempts to bar a remedy even where, as here, a fundamental right has been violated. The Supreme Court, however, has made clear that there is both a right and a remedy, and that on a motion to release untainted property, it is the *government's* burden to demonstrate that the property is subject to forfeiture.

The government's opposition utterly fails to satisfy that burden. Specifically, the government still fails to allege which, if any, of the 38 computers, tablets, mobile phones and memory cards were allegedly involved in the charged criminal activity. Nor does the government even acknowledge, let alone attempt to satisfy, its burden of demonstrating which if any of these devices is needed as evidence in this case. Finally, although the government at least broadly alleges that it is 'obvious' that the Ferrari was involved in the alleged criminal activity, it is equally 'obvious' that this alleged involvement fails to satisfy the "substantial connection" requirement for "involved in" and facilitating property. The government does not address or acknowledge, let alone satisfy, this burden.

In sum, the government's reliance on a barrage of invalid procedural arguments only highlights the lack of factual support for the forfeiture or continued retention of the vehicle and the electronics. Accordingly, as more fully demonstrated below, this property must be released.

**ARGUMENT**

In his motion, Mr. Lazzaro conclusively demonstrated that the Supreme Court has in no uncertain terms repeatedly reaffirmed both the *right* of property owners to the pretrial release of their untainted property and the *remedy* necessary to secure that release:

> Pretrial restraints on forfeitable property are permitted only *when the Government proves*, at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) 'the property at issue has the requisite connection to that crime.'

*Honeycutt v. United States*, 581 U.S. ___, 137 S. Ct. 1626, 1633 (2017) (quoting *Kaley v. United States*, 571 U.S. 320, 324 (2014) (emphasis added)).

The Court's crystal-clear articulation of this fundamental legal principle further affirms that, on a motion for the release of property, the *government* bears the burden of proof. If the government fails to establish that the property is subject to forfeiture as

proceeds of, or involved in, the charged criminal activity, the property must be released.

It's that simple. There is no requirement of need by the defendant for the property's

release. As the Court has stated, the difference between tainted and untainted property

"is the difference between what is yours and what is mine." *Luis v. United States*, 578

U.S. 5, 136 S. Ct. 1083, 1091-92 (2016). The government has no right to control

untainted assets or dictate how they are used.

    <u>Substitute Property is Untainted Property</u>: The government appears to assert that

the vehicle and the electronics may be restrained before trial because the government has

not sought to forfeit them as substitute assets. This argument misrepresents the law.

Untainted property must be released regardless of the label placed upon it by the

government. And, contrary to the government's implicit contention, substitute assets by

definition are untainted.

    Notably omitted from the government's opposition is any reference to the

substitute asset *statute* – 21 U.SC. § 853(p). As that section provides, substitute property

is "any other property of the defendant" where the forfeitable property cannot be located

or brought within the court's jurisdiction due to some act of the defendant. 21 U.S.C. §

853(p)(2) (to the extent the forfeited property cannot be secured, "the court shall order

the forfeiture of any other property of the defendant, up to the value of any [such] property"). "Any other property" means property *other than* the property that the government has proven is subject to forfeiture – *i.e.*, *untainted* property.

The government appears to be trying to portray substitute property as some special type of property that is not synonymous with untainted property. This is false. The terms are used interchangeably. As the Supreme Court stated in *Honeycutt*, "Section 853(p) [is the] sole provision of § 853 that permits the Government to confiscate property untainted by the crime . . .. Permitting the Government to force other co-conspirators to turn over untainted substitute property would allow the Government to circumvent Congress' carefully constructed statutory scheme." 137 S. Ct. at 1633. *See also United States v. Johnso*n, 956 F.3d 510, 519 n.5 (8th Cir. 2020) ("to enforce a personal money judgment, the government must 'identif[y] untainted property that it believes may be used to satisfy a personal money judgment' and then 'return to the district court and establish that the requirements of § 853(p) have been met'") (quoting *United States v. Nejad*, 933 F.3d 1162, 1166 (9th Cir. 2019)).

The government's injection of the non-issue of substitute property appears to reflect a view of forfeiture law from the 1990's, decades before the Supreme Court

decided *Luis* and *Honeycutt*.  As Mr. Lazzaro's moving Memorandum demonstrated, the

bar on "pretrial restraint of substitute assets" has been recognized in the Eighth Circuit

since at least 1995.  *See*, *e.g.*, *United States v. Field*, 62 F.3d 246, 249 (8th Cir. 1995)

("Congress . . . specifically designed the statute to exclude pretrial restraint of substitute

assets").

　　　　The use of the statutory term 'substitute assets' to denote property of the defendant

unrelated to the offense was merely a term of art, shorthand for untainted property.  This

phraseology does not change the principle that the ban on pretrial restraint applies to all

untainted property, as *Luis*, *Honeycutt* and a host of Circuit Court decisions make clear.[1]

　　　　The government also misrepresents the law with the implicit contention that it may

avoid judicial review of a pretrial restraint merely by refusing to properly label untainted

property as a substitute asset.  If this were the case, the bar on pretrial restraint of

---

[1] In fact, older decisions like *Fields* – and the Eighth Circuit was far from alone in this –
initially misused the term 'substitute assets.'  A substitute asset cannot exist before trial
because property can only become a substitute asset *after* there has been a conviction and
an order of forfeiture.  As Fed. R. Crim. P. 32.2 and the quote above from *United States
v. Nejad* make clear, first the court must issue a preliminary order forfeiting the specific
property for which the government has established a "nexus" to the crime of conviction.
The government must then return to the court, affirm that it has been unable to locate
some or all of the forfeited property, and then obtain a preliminary order of forfeiture as
to substitute assets.  Only at that point does a statutorily defined 'substitute asset' exist.

untainted property would be meaningless. The government's label is at best irrelevant and at worst misleading. A challenge to the pretrial restraint of property is a challenge to the government's label that the property is tainted. As the Supreme Court made clear, if that label is challenged, the government must establish a nexus between the property and the offense. If it fails to do so, the property must be released.

Rule 41(g) Is Irrelevant and Misleading: In addition to attacking Mr. Lazzaro's right to challenge the pretrial restraint of his property by misrepresenting the law on substitute property, the government further attacks the *remedy* for making such challenges by misrepresenting the law on motions pursuant to Fed. R. Crim. P. 41(g). The government's argument disregards the plain language of the Rule.

Reduced to its core, this argument contends that Mr. Lazzaro's motion is 'really' a Rule 41(g) motion, and that such motions cannot be considered once an indictment is filed. Thus, the contention goes, Mr. Lazzaro no longer has a remedy for the wrongful pretrial restraint of his untainted property.

As with its substitute asset argument, the government omits the actual language of the provision on which its argument is based. The language of Rule 41(g), like its placement within a rule entitled "Search and Seizure," makes clear that it is limited in

scope to challenges to the execution of warrants prior to the commencement of criminal

proceedings against the property owner:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

There is nothing in this provision about property held for potential

forfeiture or whether the property is related to any alleged criminal activity.  The

procedural portions of the provision make clear that it is only applicable prior to

the filing of an indictment.  Further, while the provision can more broadly apply to

someone "aggrieved by . . . the deprivation of property," that language, together

with the provision for imposition of "reasonable conditions to protect access to

[released] property," makes clear that this is in the nature of a hardship release

provision, not a forfeiture-related challenge.

The fact is, the law is clear that, once criminal proceedings are commenced,

the continued pretrial retention of property is governed by the provisions of 21

U.S.C. § 853(e)-(f) relating to pretrial restraints and seizures. Both of those provisions limit pretrial restraint to "property subject to forfeiture," which means property that is shown to be *tainted* by its relationship to the charged criminal activity. The government fails to even address these critical statutory provisions discussed in Mr. Lazzaro's moving Memorandum. Lazzaro Mem. at 7.

Further, as Mr. Lazzaro already demonstrated, the bar on pretrial restraint of untainted property "extend[s] to all restrained property, whether held for potential criminal forfeiture or civil forfeiture and whether restrained pursuant to seizure orders, restraining orders or any other legal mechanism." Lazzaro Mem. at 9 (citing *Honeycutt*, 137 S. Ct. at 1633).

There is no exception to the bar on pretrial restraint of untainted property where the property was initially seized pursuant to a warrant, nor does the government cite any law to support such an exception.

In sum, Mr. Lazzaro has both the right to challenge the pretrial restraint of his property on the ground that it is not subject to forfeiture and is entitled to the remedy of the release of that property where, as here, the government cannot satisfy its burden of demonstrating that the property is tainted.

<u>Need Is Irrelevant to this Motion</u>: The government's arguments that it may retain untainted property before trial so long as the movant does not need the property to pay counsel fees or cannot physically use the property before trial are simply wrong.

The government's citation to the purported *Jones-Farmer* 'rule', like its Rule 41(g) argument, is standard government fare. It is also invalid. *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998) and *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001) predate *Luis* and *Honeycutt* by nearly two decades. In fact, they even predate the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), the statute that, despite its name, substantially revised both civil and criminal forfeiture to make the procedures fairer and less onerous for property owners.[2]

The government cites *Jones-Farmer* for the proposition that restrained property cannot be released – or indeed, that an owner cannot even be heard – unless he first demonstrates financial need. To the extent that these decisions place conditions before a property owner's right to seek and secure the release of untainted funds before trial, they have been invalidated by *Luis* and *Honeycutt*, as

---

[2] *Farmer* was decided under pre-CAFRA law.

well as Circuit Court decisions cited in Mr. Lazzaro's moving memorandum but ignored or avoided in the government's opposition. *See*, *e.g.*, *United States v. Real Property Located at 1407 N. Collins St.*, 901 F.3d 268, 271-72 (5th Cir. 2018); *United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008) (seizures and restraining orders are reviewable at any time in the district court and on appeal); *United States v. Kirschenbaum*, 156 F.3d 784, 788 (7th Cir. 1998).

There is no need to further address this larger issue, however, because even the government's papers concede that, on its own terms, *Jones-Farmer* does not apply. The government acknowledges that the *Jones-Farmer* demonstration of need applies only where "'the grand jury . . . *determin[ed]* that the restrained assets' would be subject to forfeiture if the defendant were convicted." Gov. Opp.at 8 (emphasis added) (quoting *Jones*, 160 F.3d at 647 citing *Farmer*, 274 F.3d at 804-806).

Here, as Mr. Lazzaro already demonstrated, the grand jury made no 'determination' regarding the forfeitability of any of the property in issue. See Lazzaro Mem. at 11-12 ("the grand jury did not vote on the forfeiture allegations, which were simply notice provisions not subject to a grand jury vote") (quoting

*United States v. Cosme*, 796 F.3d 226, 234-35 (2d Cir. 2015)).

The government's opposition ignores this showing and the supporting law. Instead, as with its vision of substitute assets, the government appears to be living in some rose-colored 1990s version of forfeiture law, before the unpleasant reality of *Luis* and *Honeycutt* became the law of the land.

Recently, Circuit decisions like *Cosme* make the important distinction between an indictment that, like the one here, merely contains 'notice' provisions regarding property sought to be forfeited and an indictment where the grand jury was asked to, and made, findings of probable cause that specific property is subject to forfeiture. Notice forfeiture provisions in an indictment, while procedurally required, do not aid the government in satisfying its burden of demonstrating that the property is subject to forfeiture that is required to justify its continued pretrial restraint. In sum, *Jones-Farmer* is irrelevant, invalid and misleading.[3]

---

[3] The government complains that Mr. Lazzaro is unjustifiably criticizing the indictment for failing to set forth any facts supporting forfeiture of the vehicle or any other property. The government is barking up the wrong tree. This is not a motion to dismiss the indictment. The relevant point here is that there are no facts alleged in the indictment to support the pretrial restraint of any property sought to be forfeited.

Apparently, even the government does not believe that merely including property in an indictment insulates it from pretrial release. As the Court is aware, after the filing of this motion, the government agreed to return all of Mr. Lazzaro's currency, even though those funds are specifically alleged in the indictment to be subject to forfeiture. See Indictment, p.11, ¶ 11(c).

Finally, the government argues that because Mr. Lazzaro is incarcerated pending trial, it should be entitled to continue to restrain his vehicle and electronics because he cannot currently use them. Unsurprisingly, the government does not cite any support for this contention. That is because the government is making this up. Untainted property may not be restrained before trial whether the defendant needs it or not and whether he can use it or not. As the Supreme Court said, it is "the difference between what is yours and what is mine." *Luis*, *supra*.

The Ferrari Must Be Released: The government's opposition confirms that it cannot satisfy its burden of demonstrating that Mr. Lazzaro's Ferrari is subject to forfeiture. The vehicle must therefore be released.

The government contends that it has satisfied its burden because 'it is obvious' that the Ferrari was 'involved in' the alleged criminal activity because it

was used once in the "spring of 2020" to drive one of the alleged victims to Mr. Lazzaro's home.

But demonstrating that the property was involved in the alleged criminal activity is only the beginning of the government's burden. The government fails to even acknowledge, let alone attempt to satisfy, its further and far more significant burden of establishing a "substantial connection" between the property and the offense. The government disregards this critical showing required for property sought to be forfeited on the ground that it was alleged to be "involved in" the charged criminal activity, even though it was clearly set forth in Mr. Lazzaro's moving Memorandum. Lazzaro Mem. at 14 (citing, *inter alia*, *United States v. Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn.*, 480 F.3d 841, 843 (8th Cir. 2007)).

The government's avoidance of the "substantial connection" requirement concedes that it has failed to satisfy its burden of demonstrating that the Ferrari is subject to forfeiture. Indeed, the Ferrari is the very definition of property lacking a substantial connection to the offense. Accordingly, the government's response

confirms Mr. Lazzaro's showing that the vehicle must be released.[4]

The Electronics Must Be Released:  The government has also failed to satisfy its

burden that the electronics are either subject to forfeiture or needed as evidence.

Accordingly, this property must be released as well.

Mr. Lazzaro's motion demonstrated that there are no facts in the indictment or the

search warrant application demonstrating that any of the 38 seized computers, tablets,

---

[4] The government also wrongly contends that 21 U.S.C. § 853(a)(2), which subjects to forfeiture "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation," is inapplicable because the trafficking statute adds the phrase "involved in" to this terminology. *Compare* 18 U.S.C. § 1594(e)(1)(A) ("Any property, real or personal, involved in, used, or intended to be used to commit or to facilitate the commission of any violation of this chapter, and any property traceable to such property").  However, as the Eighth Circuit has recognized, the terms "involved in" and "facilitate" are used interchangeably.  *See United States v. Beltramea*, 849 F.3d 753, 758 (8th Cir. 2017) ("On appeal, Beltramea argues that the government has waived any argument that this is an 'involved in' case. We disagree and find that, in fact, forfeiture is warranted in this case because Castlerock was utilized to facilitate the laundering offenses; that it was 'involved in' Counts 4 and 7"); *see also United States v. Huber*, 404 F.3d 1047, 1061 (8th Cir. 2005) ("facilitation under section 982(a)(1)'s 'involved in' clause is geared at the forfeitability of instrumentalities . . . that facilitate (or promote) the . . . transactions").  Further, any arguable distinction is irrelevant here because the "substantial connection" requirement applies to *both* "involved in" *and* facilitating property.  *See*, *e.g.*, 18 U.S.C. § 983(c)(3) ("if the Government's theory of forfeiture is that the property was *used to commit or facilitate* the commission of a criminal offense, *or was involved in* the commission of a criminal offense, the Government shall establish that there was a *substantial connection* between the property and the offense") (emphasis added).

phones and memory cards were involved in or facilitated any of the charged criminal activity. Yet, it is the government's burden not only to affirmatively make that showing with respect to *each* of these items, but also to demonstrate a substantial connection between each item and the crimes charged in the indictment.

The government's opposition fails to even acknowledge this burden, let alone attempt to satisfy it. Worse, the government has failed to acknowledge or respond to a significant point in Mr. Lazzaro's motion – the disconnect between the basis for the issuance of the warrant and the actual charges in the indictment. As demonstrated, the government sought and obtained the warrant primarily on the expectation that it would result in the seizure of evidence of child pornography. The absence of such charges in the indictment confirms that no such evidence was found.

Therefore, to defeat this motion, the government was required to demonstrate how each seized electronic item was 'substantially connected' to the *charged* criminal activity. The government has failed to make any showing, let alone the required substantial connection showing, how any of the electronic items was involved in the charged crimes.

The government has further failed to even acknowledge, let alone satisfy, its burden of demonstrating which, if any, of the seized electronic items are needed as

evidence.  As with its forfeiture claim, the government must at least allege, with respect to each item, how and why it is needed as evidence regarding a specific charged criminal activity.  As demonstrated in Mr. Lazzaro's moving Memorandum, a vague, blanket claim of 'we need it' is insufficient to satisfy the government's burden.  See Lazzaro Mem. at 18 (citing *Ashanti v. City of Golden Valley*, 2011 WL 1114320, at *3 (D. Minn. Mar. 24, 2011), *aff'd*, 666 F.3d 1148 (8th Cir. 2012).

Remarkably, the government's opposition still fails to even allege, let alone demonstrate, that any of the electronic items is needed as evidence with respect to any of the charges in the indictment.  Further, the government has failed to explain why imaging the data and returning the items themselves would not sufficiently enable the government to prepare for trial. While the government has agreed, in response to requests by criminal defense counsel, to provide the defense with images of the data in the seized electronics items, this has no effect the government's duty to release and return the items themselves. Mr. Lazzaro is independently entitled to that data to enable him to prepare for trial.  The government still must return the items themselves where, as here, it has failed to satisfy its burden of demonstrating that the items are either subject to forfeiture or needed as evidence.

Accordingly, all of the electronics items must be released and returned to Mr. Lazzaro.

## **CONCLUSION**

Accordingly, for the reasons set forth above and in his previously filed supporting Memorandum of Law, Declaration and Exhibits, movant Anton Lazzaro respectfully requests the release of (1) a 2010 Ferrari convertible, VIN ZFF65LJA9A0173846 and (2) the 38 laptop computers, tablets, cellular phones and digital storage media listed at paragraphs 11(d) through 11(y) of the Indictment, as well as the Google Pixel mobile phone that was seized from Mr. Lazzaro at the time of his arrest.

Dated: February 4, 2022          Respectfully submitted,

*/s/ Charles S. Clas, Jr.*

—————————————————

Charles S. Clas, Jr.
MN Attorney No. 396427
201 6th Street SE, Suite 210
Minneapolis, MN 55414
(612) 760-4048

Steven L. Kessler, *pro hac vice*
LAW OFFICES OF STEVEN L. KESSLER
P.O. Box 100, Wykagyl Station
New Rochelle, New York 10804
(212) 661-1500

*Attorneys for Defendant Anton Lazzaro*

## CERTIFICATE OF COMPLIANCE WITH LR 7.1

I hereby affirm that this Reply Memorandum of Law complies with the limits in LR 7.1(f) and with the type-size limit of LR 7.1(h).  This Reply Memorandum of Law (4,039 words), together with Movant's Supporting Memorandum of Law (5,481 words), cumulatively contain a total of 9,520 words in a proportional-spaced font of Times New Roman, 13-point.  This word count is based upon the word-count function of the most recent online version of Microsoft Word, the word-processing software used to prepare Movant's Memoranda.  The word-counting function was applied specifically to include all text, including headings, footnotes and quotations.

/s/ *Steven L. Kessler*
Steven L. Kessler