UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-173(1) (PJS/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ANTON JOSEPH LAZZARO,
a/k/a Tony Lazzaro,
a/k/a Tony,

        Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Angela Munoz, Emily Polachek, and Laura Provinzino, Assistant United States Attorneys, hereby submits this response in opposition to Defendant Lazzaro's motion to suppress, ECF No. 127, and supplemental brief in support of his motion to suppress, ECF No. 185.

## BACKGROUND

Defendant persists in his motion to suppress the Google Pixel cellular telephone seized incident to his arrest and searched pursuant to a federal search warrant obtained just days later. Special Agent Patrick Rielly's testimony, ECF No. 183, and the search warrants obtained by Special Agent Richard Waller, ECF Nos. 139-1 and 139-2, conclusively demonstrate that nothing should be suppressed.

On August 12, 2021, the FBI executed an arrest warrant at Defendant's residence in the Hotel Ivy. The arrest warrant was obtained the day before when a grand jury

issued an indictment based on 10 separate counts of sex trafficking offenses. ECF No. 1. Those offenses spanned from summer 2020 through spring 2021.

SA Rielly led the SWAT team to execute the arrest warrant for Lazzaro a little after 6 a.m. SA Rielly had previously been to Lazzaro's residence at Hotel Ivy to execute search warrants in December 2020. ECF No. 183 (Mtn. Hr'g Tr.) at 59. At that time, SA Rielly observed a long hallway outside the front door, dark lighting, cameras, and an AR-15 pistol and another firearm. *Id.* at 59, 60. With the cameras, SA Rielly identified that law enforcement could be identified at the door before any announcement or breach. *Id.* at 61. SA Rielly put together the operational plan and did the briefing. *Id.* at 58. As a result, he was aware of the general allegations involved in the juvenile sex-trafficking investigation. *Id.* SA Rielly knew that the charges involved conduct that both pre-dated the December 2020 search warrants where Lazzaro's cellphones and other devices had been seized and post-dated it. *Id.* at 77. SA Rielly believed that Lazzaro would be in his residence and his girlfriend might be there too. The SWAT team was instructed by the case agent to seize any cell phone on Lazzaro because it "would likely be something that might have some fruits of the crime on it." *Id.* at 65.

SA Rielly knocked on Lazzaro's door three times and announced: "FBI. Come to the door." *Id.* at 66. After three separate knocks, Lazzaro opened the front door. SA Rielly was approximately six people back in the stack and called on the radio to agents staged in the lobby to let them know that they had made contact with Lazzaro. *Id.* at 67. When Lazzaro came out of his condominium, "he had his hands up. He had a phone

in one of his hands, and then he took that phone and placed it in his pocket." *Id.* At the time of arrest, Lazzaro was subject to a search. During the high-risk search, SA Rielly asked the agent who restrained Lazzaro if he had seized the phone. It was then that SA Rielly learned the phone was in Lazzaro's condominium "on the ledge by the door." *Id.* at 68. At that time, Lazzaro was no further than four to six feet from the door. *Id.* at 78. SA Rielly turned to Lazzaro to ask if the door was unlocked. Lazzaro said "yes," so SA Rielly retrieved the phone from the condominium. *Id.* at 69. Lazzaro said nothing. When asked about who was in the condominium, Lazzaro told SA Rielly that his girlfriend was inside. *Id.* Lazzaro later directed his girlfriend to contact his lawyer. ECF No. 139-1 at 6. SA Rielly took the cellphone into his possession and turned it over to the case agent. ECF No. 183 at 69

SA Rielly testified that he could not secure the phone from outside the condominium when another person was inside. That led to the decision to retrieve the phone. "I couldn't tell, you know, what could happen to the phone. I couldn't just sit there with the door closed and, you know, not know that no one has tampered with it or destroyed it." *Id.* SA Rielly testified that he had previous experiences where evidence like cell phones "get thrown in the water, thrown out windows, destroyed, hidden, kept, and they disappear." *Id.* at 71.

SA Rielly provided the phone to SA Waller, who was in the lobby of the Hotel Ivy and prepared to transport Lazzaro to the United States courthouse for his initial appearance. There, right after arrest, Lazzaro told SA Waller that he had researched the

3

members of the investigation and prosecution teams, including details such as where law enforcement officers lived. ECF No. 139-1 at 7. Lazzaro also stated that the AUSA "will regret doing this." *Id.* Neither SA Rielly nor SA Waller searched the phone, which was secured in evidence at the FBI that day. *Id.*

SA Waller obtained a federal search warrant for the Google Pixel the following Monday, August 16, 2021 (21-mj-597 (HB)). SA Waller's warrant was clear: it was for the search of the Google Pixel listed in Attachment A to seize evidence listed in Attachment B. In his affidavit, SA Waller explained his belief that Lazzaro obtained the Google Pixel after the December 2020 search warrant and was using the Pixel in or about March 2021 to coordinate with co-defendant Castro Medina to obstruct the FBI's investigation, which was one of the counts of the indictment. *Id.* at 7. SA Waller also detailed facts to support continued communication between Lazzaro and Castro Medina up through their arrests. *Id.* at 7–8. This also included Venmo payments to Castro Medina from Lazzaro.

After the warrant for the Google Pixel was obtained, FBI's Computer Analysis Response Team (CART) in Brooklyn Center attempted to search the phone. CART's efforts to obtain a forensic extraction of the Pixel's data were unsuccessful. The Google Pixel was then sent to FBI's main headquarters at Quantico, Virginia. SA Waller obtained an additional search warrant in Eastern District of Virginia. *See* ECF No. 139-2 (1:21-SW-666 (TCB)). To date, the FBI has been unable to obtain data from the Google Pixel.

**LEGAL ARGUMENT**

As a preliminary matter, Lazzaro is not challenging the lawfulness of his arrest. Nor is he challenging the search warrants obtained for the Google Pixel here in District of Minnesota or Eastern District of Virginia. Defendant's challenge appears to be limited to his assertion that the "original seizure was not pursuant to a valid warrant to search his apartment, nor to an exception thereto." ECF No. 127 at 1; *see also* ECF No. 185 at 3 (arguing that the seizure was conducted absent a warrant or an applicable exception to the warrant requirement). No evidence should be suppressed. The government's seizure and later search of the phone meets several specific, well-delineated exceptions to the warrant requirement. The government obtained the Google Pixel pursuant to arrest and obtained an unchallenged search warrant for it. In addition, the government appropriately seized the phone because of exigency, inevitability, and an independent source. Moreover, the government acted with good faith.

### I.   The Phone Was Lawfully Seized Incident To Arrest

The Google Pixel was seized pursuant to arrest. The FBI knocked and announced outside Lazzaro's residence multiple time. He emerged into the hallway with the phone visible in his hands. It was seized seconds later from inside Lazzaro's unlocked front door. The Government agrees that, with limited exceptions, when a cell phone is seized incident to an arrest, police must secure a warrant supported by

probable cause to search it. *Riley v. California*, 573 U.S. 373, 403 (2014). That was done here. ECF No. 139-1.

Defendant seems to believe that the fact that the phone—initially visible and later placed in his pocket—is shielded from seizure incident to arrest because he managed to place it in his condominium. This is not the law. A full search of an arrestee and the area within an arrestee's immediate control for both weapons and evidence may be made during a search incident to arrest. *United States v. Jones,* 479 F.3d 975, 978 (8th Cir. 2007). That is because the concern is that items on the defendant's person and immediate control present risks—that defendant could gain control of a weapon or destructible evidence. And that rule applies even when a defendant has been detained. *See United States v. Mefford,* 658 F.2d 588, 591–93 (8th Cir. 1981) (although police officer held arrestee's sack, the sack was still within arrestee's area of "immediate control"). The case law in this District allows seizure of a phone upon arrest. *See United States v. Haynes*, 2020 WL 3420869, at *5 (D. Minn. Apr. 27, 2020) (WMW/ECW). Because Defendant was arrested pursuant to a court-issued warrant, law enforcement was entitled to conduct a search of his person and area within his control. During a search incident to arrest, an officer is entitled to seize any "fruits, instrumentalities, or contraband probative of criminal conduct." *United States v. Robinson*, 414 U.S. 218, 236 (1973). As here, such a search appropriately yielded Lazzaro's phone. *See United States v. Faller*, 681 F. Supp. 2d 1028, 1046 (E.D. Mo. 2010).

The key is that the phone was seen and taken incident to and contemporaneous with arrest. Lazzaro came out into the hallway after SA Rielly knocked and announced FBI multiple times. The phone was in his hands and in his pockets. The fact that a few seconds later, Lazzaro placed it inside his locked door is without moment. Law enforcement often recovers drugs or guns or other evidence discarded by defendants upon arrest. For example, in *United States v. Lewis*, 892 F.2d 735, 737 (8th Cir. 1989), law enforcement observed Lewis throw a vial into a car, which was searched incident to valid arrest. Here, law enforcement had an arrest warrant. They saw the phone on Lazzaro. They did not use the arrest warrant as pretext to enter the residence and sniff around. They knew exactly where the phone was. They did not search and seize anything else. Thus, there is no basis to suppress the phone seized pursuant to arrest.

**II.    The Phone Was Lawfully Seized Pursuant To Exigent Circumstances**

Even though law enforcement had an arrest warrant for Lazzaro and seized the phone pursuant to that basis, they also took the phone to prevent destruction of the phone or its contents. This is a recognized exception to the warrant requirement. SA Rielly opened the unlocked door and took the cell phone from inside the door. He had just seen the phone in Lazzaro's hands and on his person. SA Rielly understood the facts of the investigation—having participated in an earlier search and been briefed by the case agent pre-arrest—and believed there could be additional evidence of crimes on

the phone.[1] SA Rielly immediately provided the phone to the case agent without reviewing it in any way. SA Rielly testified that Lazzaro's girlfriend was still inside the condominium and could have easily damaged the phone or gotten rid of evidence in any way. SA Rielly testified that there was no way to secure the phone other than to take it.  Even waiting outside the residence while a search warrant was obtained (here it could have been within a matter of hours not four days as Lazzaro speculates) would not have assured that the property—a cell phone believed to be used in juvenile sex trafficking and to obstruct such an investigation—would be available and intact.[2]

As such, there is no basis to suppress the Google Pixel (and any evidence that may be subsequently extracted from it). That is because the Google Pixel was seized pursuant to exigent circumstances, and a search warrant was obtained for it just two business days later.

As the Eighth Circuit has recognized, when evidence of crimes against children may be present, seizure of an item is permitted to allow the officer to obtain a warrant to examine its contents. *See United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012). As

---

[1] To the extent Lazzaro is attempting to claim that SA Rielly had insufficient probable cause to seize his cell phone, this Circuit  uses the "collective knowledge" theory to impute the knowledge of one officer to other officers to uphold an otherwise invalid search or seizure. *See United States v. Gonzalez*, 220 F.3d 922, 925 (8th Cir. 2000). Of course, both SA Rielly, who had been briefed and participated in an earlier warrant on the case, and the case agent had independent evidence sufficient for probable cause for the seizure.

[2] As this Court knows, SA Waller obtained a seizure warrant for Lazzaro's vehicle on Friday, August 13, 2021. ECF No. 188 at 2 (referencing Dkt. No. 75-3). The search warrant for the phone was obtained the next business day on Monday, August 16, 2021. ECF No. 139-1.

explained in *Clutter*, where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Fourth Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present. *Id.* (citing *United States v. Place,* 462 U.S. 696, 701; *United States v. Jacobsen,* 466 U.S. 109, 121–22 (1984)).

The seizure of a cell phone pursuant to exigent circumstances is a recognized exception to the warrant requirement. *See United States v. Rasmussen*, 2013 WL 63288460, at *7–8 (D. Minn. Dec. 6, 20134) (Crim. No. 130134 (DSD/TNL)). In other words, a warrantless search or seizure is not unreasonable under the Fourth Amendment if (1) law enforcement had probable cause to believe it contained contraband or evidence of a crime and (2) exigent circumstances demanded immediate seizure. *See United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021). Here, SA Rielly testified about his belief that the phone contained fruits of the crimes and that he needed to act immediately. Specifically, the exigent circumstances beyond law enforcement's control in this instance was the risk that evidence was about to be destroyed. *Rogers v. Carter*, 133 F.3d 1114, 1119 (8th Cir. 1998). This was not merely because Lazzaro's girlfriend remained in the room as Defendant contends. She was also directed to call his attorney. In addition, the destruction of a cellphone rarely leads to a toilet flushing or a garbage disposal activating. A cell phone easily can be reset or wiped without a sound. SA Rielly

9

also articulated the looming threat of danger in a later reapproach to the residence with a warrant in hand given its geography, cameras alerting others to law enforcement, and the presence of firearms.

"The existence of exigent circumstances is an objective analysis focusing on what a reasonable, experienced police officer would believe." *United States v. Williams*, 431 F.3d 1115, 1118 (8th Cir. 2005). As relevant here, exigent circumstances exist when, if the property is not seized immediately, there is a risk that the evidence contained therein would be lost, *see Garmon v. Foust*, 741 F.2d 1069, 1074–75 (8th Cir. 1984), or destroyed, *see Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004). With Lazzaro's girlfriend remaining in the condominium with instructions to call his lawyer, there was a good chance that the Government risked losing digital evidence on the cell phone without immediate seizure, as it could have been removed or destroyed. As in *Mays*, law enforcement had an objectively reasonable belief that exigent circumstances demanded immediate seizure. 993 F.3d at 614 (citing *United States v. Clutter*, 674 F.3d 980, 983, 985 (8th Cir. 2012) (concluding that the risk that evidence of child-pornography offenses believed to be on defendant's computers would be removed or destroyed presented an exigent circumstance justifying the warrantless seizure of those computers, even though the defendant was in jail at the time of the warrantless seizure). Even when in hindsight it may appear that the risk of an item's disappearance is small, exigent circumstances nonetheless justify the warrantless seizure of the item because of the risk of its disappearance before a warrant could be obtained. *See Garmon*, 741 F.2d at 1074.

The case of *United States v. Pierson*, 219 F.3d 803 (8th Cir. 2000), is also on point. There, the Eighth Circuit rejected Pierson's claim that the officer's entry into his hotel room was unlawful after he was arrested without a warrant in the hotel hallway. *Id.* at 804. The officers' entry into the room was supported by exigent circumstances. *Id.* at 805. Pierson's girlfriend was still in the room with the drugs and aware of the arrest. *Id.* She could have destroyed evidence if the officers had decided to wait for a search warrant before entering the room. *Id.* at 805–06.

Given Lazzaro's behavior, the nature and seriousness of the investigation into trafficking of minors and obstruction, and a girlfriend left behind with instructions to call a lawyer, SA Rielly's decision to seize the phone pursuant to these exigencies was reasonable. The phone should not be suppressed.

### III. Crediting Lazzaro's Arguments, the Google Pixel Would Have Been Inevitably Discovered

If, by a preponderance of the evidence, the Google Pixel ultimately or inevitably would have been discovered by lawful means, this is a recognized exception to the exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 444 (1984). While SA Rielly articulated valid concerns about the evidence getting destroyed before a search warrant could be obtained, Lazzaro seems to suggest the phone would have been there where he set it. No efforts were taken or would have been taken by Lazzaro's girlfriend to damage or destroy the phone and the evidence it contained. If so, the Google Pixel would have

11

been inevitably discovered had SA Waller obtained a search warrant later that day on August 12—as he could have done—and returned to the residence to execute.

Inevitable discovery is a recognized exception to the warrant requirement. The government contends that it has met its burden that the phone would have been inevitably discovered. In such cases, evidence is purged of any taint and should not be suppressed if the prosecution "can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (citing *Nix*, 467 U.S. at 444). The inevitable discovery exception applies when the government proves by a preponderance of the evidence (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation. *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997). Lazzaro's own statements to SA Waller about his research into the prosecution team provided another basis for the search warrant.

The evidence would have been discovered by lawful means, *i.e.*, a later obtained search warrant. The authority to secure a scene to maintain the status quo while obtaining a warrant has long existed *See Segura v. United States*, 468 U.S. 796, 798 (1984) ("[W]here officers, having probable cause, enter premises, and with probable cause, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's

12

proscription against unreasonable seizures."). *See also, e.g.*, *United States v. Ruiz-Estrada*, 312 F.3d 398, 404 (8th Cir. 2002) (securing an apartment to prevent the destruction of suspected narcotics supply while awaiting search warrant for 19 hours comports with the Fourth Amendment); *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997) (citing *United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir. 1978)) ("The officers entered, but took no investigative steps; they merely preserved the space and checked to assure their own safety. There was full compliance with the mandate of the Fourth Amendment."); *United States v. Burrell*, No. 06-81 (JNE/RLE), 2006 WL 1715608, at *21 (D. Minn. June 19, 2006) ("[W]e find that the 'freezing,' or seizure, of Brown's residence, until the issuance of a Search Warrant, was reasonable."). While these cases generally relate to securing the scene of a dwelling, the principle is equally applicable in the context of securing a cell phone. Because the discovery would have been inevitable had law enforcement staked out Lazzaro's residence in the Hotel Ivy or secured the phone, the phone should not be suppressed.

### IV. The Phone Was Searched Pursuant to a Valid Search Warrant Consistent with the Independent Source Doctrine

Upon arrest, law enforcement learned that Lazzaro had obtained a new cell phone since the time of the earlier search warrant. SA Waller knew that Lazzaro and Gisela Castro Medina had attempted to intimidate 15-year-old Victim C and to obstruct law enforcement's investigation into their trafficking of her. SA Waller knew from a review of Castro Medina's social media accounts that Castro Medina and Lazzaro had

continued communication, including payment from Lazzaro through Venmo, which was used in the first instance to recruit Victim A. Further, at the time of arrest, SA Waller learned of Lazzaro's investigation into and threats against the prosecution team. The phone was an item of significant evidentiary interest to SA Waller who had provided pre-arrest briefing to the SWAT team about the scope of the investigation and requested the phone be seized upon Lazzaro's arrest. SA Waller then sought out a search warrant within days for the Google Pixel cellphone.

Any evidence from the phone is admissible pursuant to the independent source doctrine. That doctrine provides that evidence initially discovered during an unlawful search or seizure, but later obtained independently through activities untainted by the illegality, may be admitted into evidence. *Murray v. United States*, 487 U.S. 533, 537 (1988). The rule is rooted in the view that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred." *Nix*, 467 U.S. at 443.

Guided by *Murray*, the Eighth Circuit set forth a two-part test under the independent source doctrine: (1) would the police have applied for the warrant had they not acquired the tainted information, and (2) do the applicable affidavits support probable cause after the tainted information has been redacted from them? *United States v. Swope*, 542 F.3d 609, 613–14 (8th Cir. 2008). Here, the Defendant must concede that

14

the government has met both prongs of *Swope*. SA Waller's instructions were to seize the phone. He would then get a warrant. SA Waller previously had obtained warrants in December 2020 and did so again just days after the Lazzaro's arrest. The subsequent federal search warrant obtained by SA Waller was free of any potential taint. The phone was merely seized. No one had looked at the contents before SA Waller applied for the search warrant.[3] The phone was expected to be a key source of evidence of the Defendant's charged crimes. The SWAT team was told to seize it upon Lazzaro's arrest. SA Waller had previously obtained a search warrant for Lazzaro's residence where multiple digital devices were seized and later searched—the very warrant that he incorporated into the one for the Google Pixel.

Moreover, the temporary seizure of Lazzaro's Google Pixel while SA Waller applied for a search warrant did not meaningfully interfere with Lazzaro's possessory interests. At the time, Lazzaro was detained as he remains today. *See United States v. Clutter*, 674 F.3d 980, 984–85 (8th Cir. 2012).

Additionally, even if the seizure of the phone violated the Fourth Amendment, suppression is not an appropriate remedy because any evidence obtained from the

---

[3] Indeed, the Eighth Circuit has found an independent source and denied suppression when the government had not only seized but searched a cell phone without a warrant. In *United States v. Brooks*, 715 F.3d 1069, 1075–76 (8th Cir. 2013), the Eighth Circuit held that a subsequent warrant was an independent source for the evidence initially located during a warrantless search of a cell phone. Similarly, this Court found that the independent source doctrine applied in *United States v. McQuillan*, 2015 WL 9590637 at *8–9 (D. Minn. Nov. 23, 2015).

phone was done pursuant to a valid search warrant. Under the independent-source doctrine, such evidence is admissible if it "would have been acquired by lawful means had the [allegedly] unlawful search not occurred and in fact *was* acquired (or reacquired) by these lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). While the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. *Id.* (citation omitted). The government is not placed in a better position, as Lazzaro argues, if his motion is denied. In other words, so long as "the evidence would have been acquired lawfully if the unlawful search had not occurred, admitting the evidence puts the government in the same position that it would have occupied if the unlawful search had not occurred." *Id.* There was an independent basis to get the warrant. The search and seizure is valid, and the phone should not be suppressed.

## V. Law Enforcement Acted in Good Faith

If there is any doubt, and if this Court were to find the seizure of the cell phone and subsequent search warrant in some way deficient, the *Leon* good faith exception to the exclusionary rule would unquestionably apply. *See United States v. Leon*, 468 U.S. 897 (1984). *Leon* applies even if "the search warrant application cites information gathered in violation of the Fourth Amendment." *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013); *United States v. McClain*, 444 F.3d 556, 565–66 (6th Cir. 2005) (applying the *Leon* good faith exception despite an earlier Fourth Amendment violation). The touchstone is "whether the officers had an objectively reasonable basis to believe they

16

were complying with [applicable law] and the Fourth Amendment." *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997). Here, SA Rielly testified to the regularity of the arrest process and seizure of the phone, and SA Waller's affidavit explained the facts and new and independent information he had learned to justify a search warrant. The government then relied on the federal search warrant and acted within its scope. It is precisely this type of conduct that is encompassed by the good faith exception. The phone should not be suppressed.

## CONCLUSION

The Government respectfully asks the Court to deny the Defendant's motion to suppress.

Respectfully submitted,

Dated:  April 29, 2022

ANDREW M. LUGER
United States Attorney

*s/Laura M. Provinzino*

BY: ANGELA M. MUNOZ
Attorney Reg. No. 0389207
EMILY A. POLACHEK
Attorney Reg. No. 0390973
LAURA M. PROVINZINO
Attorney Reg. No. 0329691
Assistant United States Attorneys

United States Attorney's Office
300 South Fourth Street, Ste. 600
Minneapolis, MN  55415
612-664-5600