## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,

        Plaintiff,

v.

Anton Joseph Lazzaro (1),
*also known as* Tony Lazzaro,
*also known as* Tony,

        Defendant.

Case No. 21-cr-173 (PJS/DTS)

**REPORT AND RECOMMENDATION**

---

### INTRODUCTION

Defendant Anton Joseph Lazzaro is charged with ten counts regarding sex trafficking of minors. Lazzaro moves to Suppress Evidence Obtained from Electronic Device [Dkt. No. 127] and to Dismiss Counts Five, Six, and Seven of Indictment as Unconstitutionally Vague [Dkt. No. 132].[1] For the reasons stated below, the Court recommends Lazzaro's motions be denied.

### FINDINGS OF FACT

In August 2021, a grand jury indicted Lazzaro for conspiracy to commit sex trafficking of minors, five counts of sex trafficking of a minor, attempted sex trafficking of a minor, and three counts of sex trafficking-obstruction. Indictment, Dkt. No. 1. Special Agent Patrick M. Rielly of the Federal Bureau of Investigation (FBI) was part of a Special Weapons and Tactics (SWAT) team tasked with arresting Lazzaro pursuant to an arrest warrant. Tr. 53-58, Dkt. No. 183. He had been in Lazzaro's apartment previously to execute a search warrant and knew that there was a long hallway, dark lighting, and

---

[1] Lazzaro, through his attorneys, has withdrawn his Motion to Dismiss for Selective Prosecution. *See* Dkt. Nos. 133, 187.

cameras outside the apartment's front door and that there were two firearms inside the apartment. Tr. 59-60. The FBI decided to use a SWAT team in part because of these factors. *Id.*

At the pre-arrest briefing, the case agent told Agent Rielly, "if there's a phone, [the case agent] would like that." Tr. 65. At the motions hearing, Agent Rielly opined the case agent wanted to seize the phone because it "would likely be something that might have some fruits of the crime on it," but did not know why the case agent had not obtained a warrant for the phone. Tr. 65, 73.

On August 12, 2021, the SWAT team executed the arrest warrant. Dkt. No. 17. Agent Rielly knocked on Lazzaro's apartment door and announced the FBI's presence. Tr. 66-67. Lazzaro voluntarily opened the door, stepped outside of his apartment door with his hands up, and held a phone[2] in one of his hands. Tr. 66-67, 74. The door of the apartment closed. Tr. 68, 74. Lazzaro then placed the phone in his pocket and agents put handcuffs on him. Tr. 67-68. While agents cuffed Lazzaro, he told them his girlfriend was in the apartment. Tr. 64, 69-70.

Lazzaro was moved about four to six feet away from the apartment door and an agent conducted a protective search of him. Tr. 68, 74. Agent Rielly asked that agent whether he had Lazzaro's phone. Tr. 68. The agent stated Lazzaro did not have the phone as it was inside the apartment, on a ledge near the door. Tr. 68. Agent Rielly does not know when or how the phone was placed inside the apartment, testifying "It was in his hand and then in his pocket, and then at some point in the doorway he placed it inside the door." Tr. 78. Agent Rielly also testified that the phone was outside of Lazzaro's ability

---

[2] A black Google Pixel 11 Android cellular telephone in a black case. Govt. Ex. 43, Dkt. No. 139-1.

to reach it and that, with eleven FBI agents surrounding a handcuffed Lazzaro, he would not have been able to "run back" "to destroy the phone." Tr. 74-75.

Agent Rielly then asked Lazzaro whether his apartment door was unlocked and Lazzaro said "yes." Tr. 69. Although Agent Rielly "thought about asking [Lazzaro] for consent" to enter the apartment, he did not do so because "it wouldn't have changed [his] decision to go in and get the phone." *Id.* Agent Rielly testified that "whether the answer would have been yes or no, [he] still had to go and secure the phone." Tr. 72-73. He opened the apartment door, reached into the apartment, and retrieved the phone. Tr. 69.

Agent Rielly testified that he knew there was no search warrant to enter the apartment or to seize the cell phone but retrieved it anyway because he could not secure the phone as the apartment door had closed and Lazzaro's girlfriend was in the apartment. Tr. 68, 70, 72. Agent Rielly had not heard any sounds coming from the apartment. Tr. 75. He specifically did not hear a "garbage disposal, water running, toilets flushing, windows being open, [or] sledgehammers smashing phones." Tr. 75. Agent Rielly conceded he did not have "any evidence" that the phone contained evidence of a crime or that Lazzaro's girlfriend "was going to destroy anything. [He] just knew [he] couldn't control what happened on the other side of the door with the phone." Tr. 76-77.

Agent Rielly had decided to enter Lazzaro's apartment and retrieve the phone because he was "under time constraints only because as the day goes on, [the girlfriend] could get up and find the phone, wreck the phone." Tr. 70. He testified he could not wait to get a search warrant for the phone because he "couldn't tell, you know, what could happen to the phone. I couldn't just sit there with the door closed and, you know, not know that no one has tampered with it or destroyed it." *Id.* Agent Rielly testified that, in his

experience, cell phones "get thrown in the water, thrown out windows, destroyed, hidden, kept, and they disappear." Tr. 71.

After Lazzaro was secured, Agent Rielly brought the phone to the case agent. Tr. 69. Later that day, a United States Magistrate Judge presided over Lazzaro's initial appearance. Dkt. No. 7. The government did not seek a search or seizure warrant for the phone in conjunction with the initial appearance or the following day when it applied for a seizure warrant for Lazzaro's vehicle. Dkt. Nos. 7, 75-3.

Four days after Lazzaro's arrest, Agent Waller applied for a warrant for the phone. Govt. Exs. 1, Dkt. No. 139-1. In the application's accompanying affidavit, Agent Waller sought a "search warrant authorizing the seizure of" the phone and "to search and seize information contained" on the phone, stating the "warrant would authorize the seizure and forensic examination of the Device for the purpose of identifying and seizing electronically stored data and other evidentiary items." Govt. Exs. 2. Agent Waller represented that the phone had been secured "incident to the arrest of Lazzaro." *Id.* at 3. He also explained his belief that Lazzaro used the phone to coordinate with another to obstruct the FBI's investigation of him. *Id.* at 7. A United States Magistrate Judge issued a search and seizure warrant for the phone. *Id.* at 47. The phone remains in FBI custody as efforts to extract data from it have been unsuccessful. Govt. Supp. 4, Dkt. No. 199; Govt. Resp. 18, Dkt. No. 138.

## CONCLUSIONS OF LAW

### I.    Motion to Suppress

Lazzaro argues that any evidence obtained from his phone should be suppressed because the government searched his home and seized his phone absent a warrant and

no exception to the warrant requirement applies here. Mot., Dkt. No. 127; Def. 1st Supp. 3-16, Dkt. No. 185.

### A.    Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A warrantless search or seizure is "per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *United States v. Leon*, 468 U.S. 897, 906 (1984); *United States v. Ramirez*, 676 F.3d 755, 759 (8th Cir. 2012). "The government bears the burden of proving that an exception to the warrant requirement exists." *United States v. Guzman*, 507 F.3d 681, 687 (8th Cir. 2007). A search "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005) (quotation omitted). "A seizure occurs when there is some meaningful interference with an individual's possessory interests in that property." *Robbins v. City of Des Moines*, 984 F.3d 673, 680 (8th Cir. 2021) (quotations omitted).

Here, Lazzaro had a reasonable expectation of privacy in his apartment after the front door was closed. V*a Lerie*, 424 F.3d at 701. "The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Gerling v. Cty. of Hermann, Mo.*, 2 F.4th 737, 742 (8th Cir. 2021) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)). To seize Lazzaro's phone, Agent Rielly opened the front door without a warrant or Lazzaro's consent, infringing on Lazzaro's reasonable expectation of privacy. Thus, Agent Rielly's conduct constitutes a warrantless search. Likewise, Agent Rielly's conduct constitutes a warrantless seizure because he meaningfully interfered with Lazzaro's possessory interest in the phone by removing it from the apartment and delivering it to the case agent.

Therefore, the search of the apartment and seizure of the phone "must fall within one of a few specifically established and well-delineated exceptions to the general rule that searches must be judicially approved." *United States v. Blake*, 484 F.2d 50, 53 (8th Cir. 1973).

The government does not dispute there was no search warrant for Lazzaro's apartment, and no seizure warrant for his phone. Instead, it argues the phone was seized "incident to arrest and searched pursuant to a federal search warrant obtained just days later." Govt. Resp. 16, 19; Govt. Supp. 5. It also contends there were exigent circumstances, the government would have inevitably obtained Lazzaro's phone, any data extracted from the phone is pursuant to an independent source, and the good faith exception applies. Govt. Supp. 5-17.

### 1. Incident to arrest

The government first argues the phone was seized incident to Lazzaro's arrest because it was within Lazzaro's immediate control.[3] Govt. Resp. 19-20; Govt. Supp. 5-7. A search incident to an arrest is an exception to the warrant requirement and "lawfully extends to the arrestee's person and the area within his immediate control, which means the area from within which an arrestee might reach in order to grab a weapon or

---

[3] The government also argues the phone was in Lazzaro's "hands and in his pockets. The fact that a few seconds later, Lazzaro placed it inside his locked door is without moment. Law enforcement often recovers drugs or guns or other evidence discarded by defendants upon arrest," citing *United States v. Lewis*, 892 F.2d 735, 737 (8th Cir. 1989). Govt. Supp. 7. "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009). In *Lewis*, the arrest occurred in the vehicle context, the arresting officer saw the defendant throw a brown vial believed to hold cocaine into a vehicle, and the officer recovered the vial after a search of the vehicle incident to arrest. *Id. Lewis* is inapposite here because Agent Rielly searched Lazzaro's home for a phone. Nor does the evidence establish Lazzaro discarded or relinquished his control over the phone; indeed, the evidence clearly established the opposite.

evidentiary items." *United States v. Allen*, 713 F.3d 382, 386 (8th Cir. 2013) (quotations omitted). "A search may be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Vale v. Louisiana*, 399 U.S. 30, 34 (1970) (quotation omitted). "If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house, not somewhere outside—whether two blocks away, twenty feet away, or on the sidewalk near the front steps. *Id.* (citations omitted). "Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant." *Id.*

Lazzaro's arrest did not occur inside the apartment, but rather four to six feet from the closed apartment door. Tr. 68, 74. The Court finds the phone was not within Lazzaro's "immediate control" because, at the time of the arrest, the phone was outside Lazzaro's reach and he could not have accessed the apartment because he was handcuffed and surrounded by eleven FBI agents. Tr. 74-75; *see United States v. Hill*, 730 F.2d 1163, 1168 (8th Cir. 1984) (holding defendant did not have "immediate control" of suitcase when defendant was four or five feet away). Though Agent Rielly had a well-founded belief that the article sought—the phone—was concealed on the other side of the apartment's closed door, there was no justification for Agent Rielly's warrantless search and seizure because the arrest occurred outside the apartment. *Vale*, 399 U.S. at 34. Thus, the search of the apartment (even though brief) and the seizure of the phone were not incident to arrest.

## 2.   Exigency

The government next argues there was probable cause to believe the phone contained evidence of sex trafficking of minors and obstruction of the investigation, and

that the phone was seized pursuant to exigent circumstances "to prevent destruction of the phone or its contents."[4] Govt. Supp. 7-11; Govt. Resp. 18, 20-21. The exigent circumstances exception "justifies immediate police action without obtaining a warrant if . . . evidence is about to be destroyed." *Ramirez,* 676 F.3d at 759 (quotation omitted). Nevertheless, the "exception is narrowly drawn," *United States v. Francis*, 327 F.3d 729, 735 (8th Cir. 2003) (citation omitted), and "police bear a heavy burden when attempting to demonstrate an urgent need." *Ramirez,* 676 F.3d at 760 (quotation omitted). The government must establish there was "probable cause to believe property holds contraband or evidence of a crime and the exigencies of the circumstances demand immediate seizure pending issuance of a warrant to examine its contents." *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021). "Probable cause exists when, viewing the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotations omitted).

---

[4] The government also asserts "seizure of an item is permitted" "when evidence of crimes against children may be present," citing *United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012). Govt. Supp. 8. In *Clutter*, officers lawfully seized computer discs from the defendant's residence and lawfully searched them. *Id.* at 982. Officers discovered child pornography and returned to the defendant's residence to inform the home's owner of the discovery. *Id.* at 983. The owner "said that he owned the home, *invited* the officers in, gave them *permission* to search, signed consent forms for three computers" found in common areas of the house and in an area controlled by the owner, and "urged the officers to take the computers." *Id.* (emphases added). The *Clutter* court concluded that there was third-party consent to seize the computers and that the seizure did not "meaningfully interfere" with the defendant's possessory interest because the owner was in actual possession of the computers. *Id.* at 983-84. These issues are not present here, therefore *Clutter* is inapposite.

The government also cites *United States v. Rasmussen*, No. 13-cr-134 (D. Minn. Dec. 6, 2013). In *Rasmussen*, the defendant challenged his phone's seizure, and the court determined the phone had been provided to law enforcement by a "private party" and that the plain view exception applied. *Id.* at 7-8. Neither issue arises here. Like *Clutter*, *Rasmussen* is inapposite.

Although the government offers little analysis of whether there was probable cause to search the apartment and seize the phone, the Court finds probable cause existed. First, Agent Rielly had probable cause to believe the phone was inside the apartment because another officer who apparently saw Lazzaro place the phone on the ledge informed him of such. Tr. 68. Second, after Lazzaro's arrest the government obtained a search and seizure warrant for the phone based on Agent Waller's affidavit alleging Lazzaro used the phone to obstruct the FBI investigation. Govt. Exs. 5-9. The warrant-application affidavit described facts from before the phone's seizure and the Magistrate Judge determined probable cause existed. *Id.* at 5-14, 47. Nothing in the record establishes that information obtained during or after the arrest provided Agent Rielly with probable cause and Lazzaro does not challenge the Magistrate Judge's determination. Therefore, this Court finds that probable cause that the phone was inside the apartment and contained evidence of a crime existed when the phone was seized from Lazzaro's apartment.

The inquiry does not end there, however. The Court must evaluate "whether a warrantless entry was justified by exigent circumstances . . . that confronted the police at the time of the entry." *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010) (quotation omitted). Courts must analyze whether "a reasonable, experienced police officer would believe" evidence was in danger of being lost or destroyed.[5] *Mays*, 993 F.3d at 616. "When the exigency at issue is destruction of evidence, police officers

---

[5] The government cites *Garmon v. Foust*, 741 F.2d 1069, 1074 (8th Cir. 1984) in support of its contention that Agent Rielly had an objectively reasonable belief that exigent circumstances existed. Govt. Supp. 21. The *Garmon* decision addresses qualified immunity against a claim under 42 U.S.C. § 1983 alleging a police officer unlawfully seized a package from a private university's mailroom employees and was decided under caselaw specific to mail seizures. 741 F.2d at 1070-74. Therefore, *Garmon* is inapposite here.

must demonstrate a sufficient basis for an officer to believe that somebody in the residence . . . will imminently destroy evidence." *Ramirez*, 676 F.3d at 760. "Exigency . . . does not exist by mere supposition" or the mere presence of someone in a residence. *Id.* at 761-65.

To begin, the government cannot rely on exigent circumstances if the exigency is "police-created." *Ramirez*, 676 F.3d at 761 n.3. Here, Agent Rielly knew before the arrest that the government sought seizure of Lazzaro's phone because the case agent stated that "if there's a phone, he would like that." Tr. 65. Moreover, there was sufficient probable cause to obtain a warrant prior to the arrest as is evidenced by the fact that the FBI was able to obtain a post-arrest seizure warrant for the phone based on pre-arrest information. Govt. Exs. 5-14. To the extent exigency existed to justify the phone's seizure, it was created by the government's failure to obtain a warrant for the phone ahead of time.

The government argues that because Lazzaro's girlfriend was inside the apartment, exigent circumstances existed to justify its warrantless search and seizure. In support of this argument, the government relies on the fact that in connection with his arrest, Lazzaro allegedly directed his girlfriend to contact his lawyer. But the government does not unambiguously state *when* Lazzaro gave this instruction, stating merely that, *e.g.*, "[Lazzaro] told FBI agents that his girlfriend remained in the condominium, and he directed her to contact his lawyer"; "With Defendant's girlfriend remaining in the condominium with instructions to call his lawyer, there was a good chance that the Government risked losing digital evidence"; and "risk that evidence was about to be destroyed . . . was not merely because Lazzaro's girlfriend remained in the room as Defendant contends. She was also directed to call his attorney." Govt. Supp. 3, 9-11; Govt. Resp. 18. In short, the government has implied that Lazzaro instructed his girlfriend

to contact his attorney *prior* to Agent Rielly entering the apartment and seizing the phone and that this instruction prompted the decision to seize the phone.

The record before this Court does not support such a finding. Despite the government's pre- and post-hearing briefing that asserts Lazzaro's alleged instruction to his girlfriend is sufficient to establish exigent circumstances, there is no evidence that Lazzaro's alleged instruction occurred prior to Agent Rielly's entrance and seizure. The government's own briefing cites to Agent Waller's affidavit which states Lazzaro told agents his girlfriend was in the apartment and "Lazzaro *later* directed [her] to contact his lawyer." Govt. Supp. 3; Govt. Ex. 6 (emphasis added). Moreover, Agent Rielly did *not* testify that Lazzaro told his girlfriend to contact his attorney prior to the phone's seizure. Tr. 69, 76-77. The fact that Agent Rielly's testimony was silent regarding whether Lazzaro turned back and yelled to his girlfriend to call his attorney while being handcuffed—prior to Agent Rielly's search and seizure—is telling. The Court finds there are no facts in the record to support the government's veiled assertion that Lazzaro alerted his girlfriend to the situation *before* Agent Rielly opened the door and seized the phone.

Second, even if Lazzaro had turned back before the apartment door closed and directed his girlfriend to contact his attorney, he had the right to do so. *See Texas v. Cobb*, 532 U.S. 162, 167 (2001) ("the accused shall enjoy the right . . . to have the Assistance of Counsel"); *see also Hawkins v. Mitchell*, 756 F.3d 983, 994 (7th Cir. 2014) (concluding no exigent circumstances existed when drunken defendant called attorney during encounter). "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Faretta v. Cal.*, 422 U.S. 806, 834 (1975). If Lazzaro directed his girlfriend to contact his lawyer prior to the

apartment search and phone seizure, he did so prudently and his instruction did not create exigent circumstances to justify a warrantless search and seizure.

Moreover, the girlfriend's presence in the apartment does not transform the situation into an exigency. At the time of Agent Rielly's entry to the apartment and seizure of the phone, the agents knew only that Lazzaro's girlfriend was inside the apartment. Tr. 76-77. Agent Rielly heard no sounds coming from the apartment and had no indication whatsoever that there was any activity in the apartment, let alone activity that might lead him to believe the girlfriend might imminently destroy evidence. *Id.* at 75-77; *Ramirez*, 676 F.3d at 763, 765. Except for Agent Rielly's "mere supposition," there are no facts in the record to support a finding that the girlfriend would "imminently destroy" the phone. *Ramirez*, 676 F.3d at 760-61. Mere supposition does not establish the existence of exigent circumstances to justify Agent Reilly's warrantless search of the apartment and seizure of the phone.

Even if the entry was lawful based on exigent circumstances, the phone's warrantless seizure was unjustified because "[s]uch an entry must be limit in scope to the minimum intrusion necessary to prevent the destruction of evidence." *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000). Here, the government concedes it could have "obtained a search warrant later that day on August 12 . . . and returned to the residence to execute." Govt. Supp. 12-13 (stating "authority to secure a scene to maintain the status quo while obtaining a warrant has long existed"). Therefore, the SWAT team could have opened the door to maintain a visual on the phone while a seizure warrant was sought. The government implies such action could have endangered the officers; however, it points to no evidence in the record to support an inference that Lazzaro or his girlfriend would engage in violent behavior. The government alludes to the fact that firearms had

previously been inside the apartment, but a private citizen lawfully possessing firearms in his residence is insufficient to make a finding that "the minimum intrusion necessary to prevent destruction of evidence" was seizure of the phone. *Pierson*, 219 F.3d at 806.

Because Agent Rielly searched the apartment and seized the phone absent a warrant, and because that search and seizure was not incident to arrest or based on exigent circumstances, this Court concludes the search and seizure were unreasonable and violated Lazzaro's Fourth Amendment rights.

### B.   Admissibility

The government asserts that even if the phone's initial seizure violated the Fourth Amendment, the phone and its data are admissible under the inevitable-discovery and independent-source doctrines. Govt. Supp. 11-16; Govt. Resp. 21-22. Evidence "acquired during, or as a consequence of, a search that violates the Fourth Amendment" is generally inadmissible at trial but may be admitted under the inevitable-discovery or independent-source doctrines. *United States v. Baez*, 983 F.3d 1029, 1036-37 (8th Cir. 2020) (citing *Utah v. Strieff*, 579 U.S. 232 (2016)). "The independent-source doctrine applies if the evidence both would have been acquired by lawful means had the unlawful search not occurred and in fact *was* acquired (or reacquired) by these lawful means." *Id.* at 1037. "The inevitable-discovery doctrine, on the other hand, applies if the evidence would have been acquired by lawful means had the unlawful search not occurred but in fact *was not* acquired (or reacquired) by these lawful means." *Id.* "Although the distinction between the [two] doctrines is not sharp, where exactly one draws the line . . . is unimportant" because "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." *Id.* (quotation omitted). "Provided that the evidence would have been acquired lawfully if the

unlawful search had not occurred, admitting the evidence puts the government in the same position that it would have occupied if the unlawful search had not occurred . . . whether the evidence in fact *was* (re)acquired lawfully." *Id.*

Lazzaro argues the government must show it did obtain or would have obtained a search warrant for his apartment, not the phone, to succeed on its independent-source and inevitable-discovery arguments because it was the initial unlawful search of his apartment that led to the seizure of the phone. Def. 1st Supp. 13-15. This Court disagrees. Because Lazzaro seeks to suppress evidence obtained *from the phone*, the Court must determine whether the evidence—data from the phone—would have been acquired lawfully if the unlawful search had not occurred.

A valid search warrant is one way "for police to acquire evidence lawfully." *Baez*, 983 F.3d at 1037. Evidence within the scope of a valid warrant would have been acquired had a prior unlawful search not occurred if "(1) law enforcement would have sought a warrant even if the [unlawful] search had not occurred, and (2) the warrant was supported by probable cause even without information gained from the [unlawful] search." *Id.* (alterations in original).

The government argues law enforcement may seize a phone to maintain the status quo while obtaining a warrant and points this Court to five decisions regarding securing the scene of a dwelling. Govt. Supp. 12-13. It states the principle from those decisions "is equally applicable in the context of securing a cell phone" but fails to provide any analysis on the issue or to cite any decision in which a court has applied that principle to a phone's seizure. *Id.* at 13. Nonetheless, the Court must decide whether (1) law enforcement would have sought a warrant even if the [unlawful] search had not occurred, and (2) the warrant

was supported by probable cause even without information gained from the [unlawful] search. *Baez*, 983 F.3d at 1037.

The Court finds law enforcement would have sought a warrant for the phone's information even if the unlawful search had not occurred. To make such a finding, the Court relies on the fact that the case agent told Agent Rielly before the arrest that he would like Lazzaro's phone, that FBI agents saw Lazzaro holding the phone before placing it on the ledge inside the apartment, and that a significant amount of evidence the government relies on to prosecute Lazzaro relates to communications via text message or mobile application.

The Court also finds the valid search and seizure warrant for the phone's data obtained four days after the unlawful seizure was supported by probable cause even without information gained from the unlawful search. Govt. Exs. 47. That warrant was based on pre-arrest factual allegations. *Id.* 5-14. Even with the warrant application's affidavit redacted to remove any information obtained during or after the unlawful search or seizure, the warrant was supported by probable cause. *Id.* It included allegations that Lazzaro communicated with an alleged victim through a mobile application to discourage her from cooperating with the FBI's investigation and that Agent Waller believed Lazzaro used the phone to coordinate with the co-defendant to obstruct the investigation. *Id.* at 5-6. Lazzaro does not challenge the Magistrate Judge's probable cause determination.[6]

Because law enforcement would have sought a warrant even if the unlawful search had not occurred, and the warrant data from the phone was supported by probable cause

---

[6] Lazzaro asserts the Magistrate Judge's decision may have relied on Agent Waller's representation that the phone was lawfully seized. The Court does not construe this to be a challenge to the underlying probable cause determination, but even if it were such a challenge, the Court finds probable cause existed because Agent Waller's affidavit outlines the facts and circumstances of Agent Rielly's search and seizure. Govt. Exs. 6.

even without information gained from the unlawful search, evidence extracted from the phone "*was* acquired"[7] by lawful means and may be admissible at trial under the independent-source doctrine. Thus, the Court recommends that Lazzaro's motion to suppress be denied.[8]

## II.    Motion to Dismiss

Lazzaro moves to Dismiss Counts Five, Six, and Seven of the Indictment as Unconstitutionally Vague. Mot. Dismiss, Dkt. No. 132. "A statute is void for vagueness under the Fifth Amendment's guaranteed right to due process if it: (1) fails to provide a person of ordinary intelligence fair notice of what is prohibited, or (2) is so standardless that it authorizes or encourages seriously discriminatory enforcement." *U.S. v. Cook*, 782 F.3d 983, 987 (8th Cir. 2015) (quotations omitted).

The government has alleged Lazzaro aided and abetted in violating or conspiring to violate 18 U.S.C. § 1591(a)(1). Dismiss Resp. 2, Dkt. No. 198. In Lazzaro's initial motion, he stated he was challenging § 1591, "as applied in this case," but also included arguments as to the statute's facial validity. Mot. Dismiss 1. Section 1591 states in relevant part:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits . . . a person; . . . knowing, or . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . .

---

[7] Even though the government has yet to extract evidence from the phone, this decision assumes the government will eventually obtain data from the phone.

[8] The Court need not address the government's contention that the good-faith exception applies. Govt. Supp. 16-17

A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

### A.   As-applied challenge

Lazzaro argues the phrase "commercial sex act" is unconstitutionally vague as applied to him because it does not provide reasonable notice of the prohibited conduct and could be employed in an arbitrary manner. Mot. Dismiss 5-8. In response, the government asserted that "district courts *must* wait until the facts of a case are fully developed at trial before ruling on an as-applied vagueness challenge." Resp. 24, Dkt. No. 138 (emphasis added). In support of that statement, the government merely provides a "*see*" cite to *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016), with no parenthetical, no legal argument, and no explanation as to how *Turner* applies to this case. *Id.* at 25. The government simply concludes, "Therefore, the Court should neither entertain oral argument nor written submissions regarding the as-applied vagueness challenge at this time. The challenge is premature and not ripe for ruling." *Id.* That is, the government asserted a conclusion but chose not to provide the Court with helpful analysis. *See* Return Prop. Order 2-4, Dkt. No. 188 (addressing government's failure to adequately analyze various decisions, rules, and arguments).

In *Turner*, the Eighth Circuit did *not* hold that all pretrial as-applied challenges are premature, as the government asserts. *Id.* 842 F.3d at 605. The *Turner* defendant was charged with possession of a firearm by an unlawful user of a controlled substance. *Id.* at 604. He filed a pretrial motion to dismiss the indictment, alleging the statute was "unconstitutionally vague as applied." *Id.* The district court denied the pretrial motion, "concluding that the indictment alleged sufficient facts." *Id.* The defendant entered a guilty plea then appealed. *Id.*

On appeal, the Eighth Circuit stated a district court must rule on a motion capable of pretrial determination "unless there is good cause to defer a ruling and deferral will not adversely affect a party's right to appeal." *Id.* 604-05 (quotation omitted) (citing Fed. R. Crim. P. 12). "A motion is capable of pretrial determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the motion." *Id.* at 604-05 (quotation omitted). The Eighth Circuit concluded "a trial on the merits was needed to decide the defendant's pretrial motion to dismiss" because the parties disputed what evidence the district court could consider in making its ruling and because the court had to determine whether the defendant engaged in "regular drug use" at the time he possessed a firearm. *Id.* at 605. The Eighth Circuit held "facts surrounding the commission of the alleged offense" would assist with that determination, and the contested defense therefore could not be ruled upon without a "trial on the merits." *Id.* It held "[g]ood cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact." *Id.* The Eighth Circuit also held that the district court's "premature ruling prejudiced the defendant's ability to obtain appellate review of his constitutional challenge, for he conditionally pled guilty under his mistaken assumption that he could have an appellate court review an adverse determination of his motion to dismiss." *Id.* (quotations and alteration omitted).

In 2021, approximately five years after the *Turner* decision, the Eighth Circuit addressed a constitutional vagueness challenge to § 1591. *United States v. Koech*, 992 F.3d 686 (8th Cir. 2021). In *Koech*, the defendant filed a pretrial motion to dismiss his charges, arguing the statutory language "reasonable opportunity to observe" in § 1591(c)

was void for vagueness as applied to the defendant's charges. *Id.* at 688.[9] The magistrate judge recommended the motion be denied and the district judge adopted the recommendation "because 'reasonable opportunity to observe' would 'provide a person of ordinary intelligence fair notice of what is prohibited,' is subject to common understanding, and is typical of standards that juries are asked to consider." *Id.* The case proceeded to a jury trial and the defendant was found guilty. *Id.* at 687. On appeal, the Eighth Circuit considered the vagueness challenge by reviewing the evidence at trial. *Id.* at 689. It concluded that evidence demonstrated the defendant had a "reasonable opportunity to observe" the victim and therefore "engaged in conduct that is clearly proscribed and cannot complain of the vagueness of the law." *Id.* at 690 (quotation omitted). The Eighth Circuit did not cite *Turner* and did not indicate the magistrate judge or district judge had erred by denying the motion to dismiss for vagueness absent factual findings from a trial. Thus, whether a pretrial as-applied vagueness challenge is premature depends on the arguments of the parties and the facts of the case.

Under *Turner*, the Court would need to decide (1) whether Lazzaro's motion regarding vagueness is capable of pretrial determination, (2) whether there is good cause to defer a ruling, and (3) whether deferral would adversely affect Lazzaro's right to appeal. *Id.* at 604-05. The government has provided this Court with no argument or analysis addressing any of these issues. Resp. 22-25. Moreover, the Eighth Circuit's *Koech* decision demonstrates the government's assertion that "district courts *must* wait until the facts of a case are fully developed at trial before ruling on an as-applied vagueness challenge" is incorrect. *Id.* at 24 (emphasis added). The government did not address or

---

[9] The defendant argued the statute "as charged in the indictment here" was unconstitutionally void for vagueness. Def. Mem. 5, No. 18-cr-18(2), Dkt. No. 90.

even cite to *Koech*, despite it being a 2021 Eighth Circuit decision regarding a vagueness challenge to the very statute at issue in this case. Nonetheless, Lazzaro's counsel agreed at the hearing with the government's contention that an as-applied challenge is premature. Tr. 15-16. Therefore, the Court recommends that Lazzaro's motion to dismiss for as-applied vagueness be denied without prejudice.

### B.    Facial challenge

The Court allowed the parties to submit post-hearing briefing regarding Lazzaro's facial challenge. *Id.* at 17. Lazzaro argues the statute's language is unconstitutionally vague because it "inadvertently criminalize[s] all sex acts with someone under 18 years of age using all-encompassing language that defined commercial sex acts as those involving the receipt of *something of value* . . . ." Def. 2d Supp. 2, Dkt. No. 186. Lazzaro contends the phrases "commercial sex act" and "anything of value" are facially unconstitutional because the phrases are so ambiguous that a person of ordinary intelligence would not know whether his conduct is illegal. *Id.* 3-8.

When reviewing for vagueness, a court must "first determine if a statute is vague as applied to the defendant's conduct, and only if it is[,] will we consider whether a statute is facially unconstitutional." *United States v. KT Burgee*, 988 F.3d 1054, 1060 (8th Cir. 2021). This is because there is a "well-established principle" that someone asserting a facial challenge to a statute, "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Koech*, 992 F.3d at 688-89 (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010)); *see also U.S. v. Mazurie*, 419 U.S. 544, 550 (1975) (stating vagueness challenge that "does not involve First Amendment freedoms must be examined in light of the facts of the case at hand"). "Thus, if the statute gave adequate warning, under the defendant's

specific set of facts, that the defendant's behavior was a criminal offense, then the statute is not vague." *KT Burgee*, 988 F.3d at 1060 (quotation and alteration omitted). Therefore, the question this Court must consider is whether §§ 1591(a)(1) and (e)(3) are vague as applied to the facts of this case. *Koech*, 992 F.3d at 689.

The government again relies on *Turner* to assert "district courts within the Eighth Circuit *must* deny without prejudice pretrial Fifth Amendment vagueness challenges (both as-applied and facial) as premature until the factual record is developed at trial." Dismiss Resp. 4-5 (emphasis added). Without analysis or explanation, the government supports this assertion with a "*see*" citation to various unpublished decisions. *Id.* at 5. It then states, "Following this established precedent, Defendant's motion to dismiss Counts 5-7 as unconstitutionally vague—both as-applied and on the fact [sic] of the statute—are premature." *Id.* (footnote omitted). As discussed above, this Court is not persuaded *Turner* controls here. Even if it does, the Court would need to decide (1) whether Lazzaro's motion regarding vagueness is capable of pretrial determination, (2) whether there is good cause to defer a ruling, and (3) whether deferral would adversely affect Lazzaro's right to appeal. *Id.* at 604-05. Again, the government offers no argument or analysis on these issues. Dismiss Resp. 4-5.

Eighth Circuit decisions require a defendant asserting a facial challenge to a criminal statute first establish the statute is unconstitutional as applied to the defendant. *KT Burgee*, 988 F.3d at 1060; *Koech*, 992 F.3d at 688-89. Both parties now contend a decision on whether § 1591 is unconstitutionally vague as applied to Lazzaro is premature. *Id.*; Tr. 15-16. The Court agrees. The government alleges Lazzaro used his co-defendant to identify girls for whom he could act as a "sugar daddy," engaged in sexual acts with the girls, and "paid" them with "alcohol, cash, cellular telephones, vaping pens,

and accommodations in the Hotel Ivy." Dkt. No. 71 at 2-3. Lazzaro contends he had romantic relationships with the Count Five and Six alleged victims, who could legally consent to sexual acts under Minnesota law. Mot. Dismiss 11-12. He asserts he never met the alleged victim in Count Seven. *Id.* at 12. Lazzaro argues the government is using § 1951 to criminalize consensual sexual activity and romantic relationships because he provided generous gifts to the women he dated. Given the subtleties and nuance of the parties' arguments, factual findings on things such as the timing of communications among Lazzaro, his co-defendant, and the alleged victims; the amount, scope, or quantity of the "thing of value" given as part of an alleged commercial sex act; and the subjective understanding of those involved would assist the Court. Therefore, there is good cause to defer a ruling and the Court recommends Lazzaro's motion to dismiss for facial vagueness be denied without prejudice.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1.      Lazzaro's Motion to Suppress Evidence Obtained from Electronic Device [Dkt. No. 127] be **DENIED**;

2.      Lazzaro's Motion to Dismiss Counts Five, Six, and Seven of Indictment as Unconstitutionally Vague [Dkt. No. 132] be **DENIED WITHOUT PREJUDICE**.

Dated: May 27, 2022                        _____s/David T. Schultz_____
                                           DAVID T. SCHULTZ
                                           U.S. Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).