UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | ) |
| | ) DEFENDANT ANTON JOSEPH |
| Plaintiff, | ) LAZZARO'S MOTION FOR SANCTIONS |
| | ) FOR THE GOVERNMENT'S BREACH |
| vs. | ) OF PRIVILEGED COMMUNICATIONS |
| | ) BETWEEN DEFENDANT AND HIS |
| Anton Joseph Lazzaro, | ) ATTORNEYS |
| | ) |
| Defendant. | ) Crim. No. 21-173 (PJS/DTS) |

\* \* \*

## MOTION

Defendant Anton Joseph Lazzaro, through his counsel, Daniel L. Gerdts, Esq., respectfully moves the Court to dismiss the indictment, or to impose other appropriate sanctions, including the preclusion of any further involvement of any agent, prosecutor, or support staff who has knowledge of the content of privileged attorney-client communications that have been intercepted and reviewed by Government agents in this case.

## ARGUMENT

Mr. Lazzaro has been incarcerated at the Sherburne County Jail pending trial. All phone calls placed by Mr. Lazzaro at the jail are subject to monitoring except, of course, his privileged calls to his attorneys. Records obtained from the company that provides and manages the inmate telephone system at the jail show that many of Mr.

Lazzaro's calls to his attorneys have been recorded. Worse, the data also confirm that agents of the FBI and the BCA have accessed and *listened to* privileged calls with his attorneys. The governmental interception and review of privileged attorney-client communications violates Defendant's Fifth Amendment right to a fair proceeding and his Sixth Amendment right to the effective assistance of counsel. The Court should impose sanctions, up to and including dismissal of the indictment, for this governmental misconduct.

The Constitution guarantees that an accused shall enjoy the right of assistance of counsel in all criminal prosecutions. U.S. Const. amend. VI. "It is clear that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him." *Mastrian v. McManus*, 554 F.2d 813, 821 (8th Cir. 1977) (cleaned up); *accord*, *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014). It is therefore well established that the attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client." *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012). The privilege is retained by any accused defendant notwithstanding that he may be detained awaiting trial. *United States v. Defonte*, 441 F.3d 92, 94 (2nd Cir. 2006). Indeed, an inmate's right to privileged communication with his counsel "is one of the fundamental rights guaranteed by the

American criminal law – a right that no Legislature or court can ignore or violate." *Coplon v. United States*, 191 F.2d 749, 758 (D.C. Cir. 1951).

The appropriate sanction for a government breach of the attorney-client privilege rests upon the nature and degree of the intrusion. Dismissal of the indictment is appropriate when the government's blatant and intentional interference with the attorney-client relationship deprives the defendant of his right to Due Process under the Fifth Amendment. Other circuits have adopted a three-pronged test for establishing a due process violation pertaining to governmental intrusion into the attorney-client relationship: (1) the government's objective awareness of an attorney-client relationship; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice. *See United States v. Williams*, 720 F.3d 674, 686 (8th Cir. 2013) (*citing United States v. Voigt,* 89 F.3d 1050, 1067 (3d Cir.1996)).

Intrusions that do not rise to the level of a due process violation will nonetheless violate a defendant's Sixth Amendment right to counsel when the government knowingly intrudes into the attorney-client relationship and the intrusion either demonstrably prejudices the defendant or creates a substantial threat of prejudice. *United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1986). "[W]here there is gross misconduct on the part of the government no prejudice need be shown." *United States v. Davis*, 646 F.2d 1298, 1303 n.8 (8th Cir. 1981). "[T]he

3

appropriate course when faced with a sixth amendment violation is to tailor a remedy to the injury suffered." *Singer*, at 234.

NCIC Inmate Communications, Inc. (NCIC), is the company that provides and manages the inmate telephone system for the Sherburne County jail. Calls to attorneys – once their number is designated as such in the system – are not recorded, but a record of the call's date and time, the number called, and the inmate making the call, is preserved. If a call is placed to a number not recognized as an attorney phone number, the call will be recorded. Jail staff can enter attorney numbers into the system so that they are recognized as such and will not be recorded. Inmates may request that their lawyer's telephone numbers be identified as attorney numbers in the system if they are not already so identified. *See* Sherburne County Jail Inmate Handbook (Revised September 2021), at 25 ("provide your attorney's telephone number to the jail sergeant via a kite to request that the number be placed into our telephone system as a free and private call"). Mr. Lazzaro made the appropriate request regarding his attorneys' numbers immediately after he was booked into the jail.

NCIC also provides easy access to the inmate telephone records to approved law enforcement officials once they have set up an account with NCIC. The system provides remote access for these officials to review, listen to, and download the recorded calls. The system preserves a record of every time a recorded call is

accessed and listened to by these officials. These records establish that many of Mr. Lazzaro's calls to his attorneys have been recorded. Calls with attorneys Charles Clas, Zachary Newland, and Steven Kessler not only have been recorded, the records also show that the recordings have been listened to by Government agents. The call logs provided by NCIC indicate that at least 7 privileged calls were accessed and listened to by law enforcement agents, including specifically by Mary Cunningham and Susan Webb.[1]

Although NCIC staff have been helpful in providing data related to the phone records at issue, their data cannot provide a complete accounting of who has listened to the privileged conversations. As the Court no doubt is aware, it is common practice in this district for Government agents to download recorded inmate telephone calls for later review, and for use as evidence during trials and evidentiary hearings. Once downloaded, there is no effective way to ascertain which agents and prosecutors have listened to the calls or otherwise become privy to the privileged content of those communications. In this case, for example, Officer Brandon Brugger testified at Mr. Lazzaro's detention hearing that he had listened to *non-privileged* jail calls. Detention Hrg. Tr. at 26-28. According to the data provided by

---

[1] The logs indicate that law enforcement agents listened to sixteen calls placed to Mr. Lazzaro's lawyers, but after listening to the recordings of each of those calls, undersigned counsel can affirm that nine of them did not result in any attorney-client communication. *See* Exhibit A.

NCIC, however, Officer Brugger does not have a law enforcement access account to the NCIC phone call system. It is presumed therefore – assuming he testified truthfully – that he listened to the calls after the recordings were downloaded by other agents.

This same issue has been the subject of this Court's review and ruling as recently as December 2019, in the matter of *United States v. Lewis,* No. 18-CR-194 (ADM/DTS), 2019 WL 8370777 (D. Minn. Dec. 16, 2019), report and recommendation adopted as modified, No. CR 18-194 ADM/DTS, 2020 WL 526035 (D. Minn. Feb. 3, 2020). In *Lewis*, the defendant was housed at the Anoka County jail, and the lead investigator on the case intercepted calls to his attorney and copied his legal mail. The matter came to light when the investigator sent a copy of the legal mail to the Assistant United States Attorney, who immediately disclosed the breach to Lewis's attorney. After a hearing to ascertain the significance of the breach, this Court concluded:

> It is clear that [the investigator] engaged in a pattern of deliberate and egregious intrusion into Lewis's attorney-client relationship by reading Lewis's February 7 letter, forwarding it to the federal prosecutor, and listening to portions of phone calls with his attorney (about which she lied at the September 11 hearing).

*Id*. at *10. The remedy in that case required that the investigator be excluded from any further involvement of any kind in the case. It also restricted the witnesses who could be called by the Government at trial, and required the Government to make an

6

inquiry of all of its witnesses before they took the stand regarding their contacts with the investigator and their exposure to privileged communications. *Id*. at *11. The district court added the additional safeguard of permitting defense counsel to question any witness outside the presence of the jury if they were found to have had substantive conversations with the investigator. 2020 WL 526035, at *4.

The district court in *Lewis* was "greatly troubled by the misconduct" of the investigator. *Id*. at *3. The Court here should be especially troubled that this sort of misconduct is happening again, and so quickly. When these attorney jail calls were made, both attorneys Zachary Newland and Steven Kessler were known to the United States Attorney's Office as representing Mr. Lazzaro. Charles Clas later filed his notice of appearance on 13 October 2021, after which agents accessed several calls to his number. Even assuming the most innocent explanation – an agent listened to a call without knowing it was with an attorney, and immediately stopped when the nature of the call became apparent – there is no possible innocent explanation for why the agents deliberately listened to a *second* call to the same number.

The intrusion here resulted in actual prejudice. Once Mr. Lazzaro and his attorneys became aware that their calls were not private, it immediately inhibited the effectiveness of their telephonic communications. The chilling effect in this case substantially inhibited effective attorney-client communications because in-person visits at the jail have not been permitted during the pandemic, leaving telephone calls

7

as the primary method of attorney-client communications. The substance of the communications at issue included discussion of defense strategy and preparation that, in retrospect, has prejudiced trial preparation.

In this case the government knowingly intruded into the attorney-client relationship. Court filings and previous communications between government agents and counsel put the Government on notice regarding the attorney-client relationship between Defendant and all three attorneys at issue. The intrusion has had a debilitating effect on Mr. Lazzaro's communications with his lawyers, and the Government has listened to conversations that touch on strategy and trial preparation.

## CONCLUSION

Communications between Mr. Lazzaro and his attorneys were accessed and listened to despite governmental knowledge of the privileged nature of the communications. Mr. Lazzaro respectfully requests that the Court dismiss the Indictment, or at the very least, preclude the continued involvement of all law enforcement and prosecution team members who have been exposed to the privileged content of the communications. Mr. Lazzaro also requests an evidentiary hearing to determine the extent of the violations, and the number of individuals who may have been compromised by the privileged communications.

Dated: 20 June 2022							Respectfully submitted,

							DANIEL L. GERDTS, LAWYER

							*s/ Daniel L. Gerdts*

							Daniel L. Gerdts (#207329)
							331 Second Avenue South, Suite 705
							Minneapolis, MN 55401
							612.800.5086