UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-0173(1) (PJS/DTS) |
| Plaintiff, | |
| v. | ORDER |
| ANTON JOSEPH LAZZARO, | |
| Defendant. | |

---

Emily A. Polacheck, Angela M. Munoz, and Laura M. Provinzino, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Daniel L. Gerdts, for defendant.

Defendant Anton Lazzaro is charged with ten offenses relating to sex trafficking of minors under 18 U.S.C. § 1591. This matter is before the Court on Lazzaro's objection to Magistrate Judge David T. Schultz's May 27, 2022, Report and Recommendation ("R&R"). Judge Schultz recommends (1) denying Lazzaro's motion to suppress any evidence that may be obtained from a smart phone that law enforcement seized from Lazzaro's apartment on August 12, 2021, and (2) denying as premature Lazzaro's motion to dismiss Counts 5, 6, and 7 of the indictment.

The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Based on that review, the Court overrules Lazzaro's objection, adopts

the R&R to the extent that it is consistent with the analysis below, and denies Lazzaro's motions.[1]

I. BACKGROUND

As described more fully in the R&R, a Special Weapons and Tactics ("SWAT") team was assembled to arrest Lazzaro pursuant to a warrant that was issued after he was indicted. Hr'g Tr. [ECF No. 183] at 60. The SWAT team executed the arrest warrant on the morning of August 12, 2021. Hr'g Tr. 63; ECF No. 17. A team of approximately 20 agents was present. Hr'g Tr. 63.

FBI Special Agent Patrick Rielly knocked on Lazzaro's apartment door and announced the FBI's presence. Hr'g Tr. 66. Lazzaro opened the door and put his hands in the air. Hr'g Tr. 67. Rielly could see that Lazzaro was holding a phone and that Lazzaro then put the phone in his pocket. Hr'g Tr. 67. The officers arrested Lazzaro and passed him down the hall. Hr'g Tr. 73–74. A subsequent search revealed that

---

[1]Lazzaro also moves for permission to file a reply to the government's response to his objection. Lazzaro does not identify any reason why the Court should grant his request other than his belief that the Local Rules are ambiguous concerning whether a reply brief is authorized in this situation. To clarify, Local Rule 72.2 does not authorize a reply to a response to an objection, and as Lazzaro does not provide any other reason why the Court should grant him permission to file a reply, his motion is denied. The Court also advises counsel that he should not file a brief that is not authorized by the Local Rules unless and until he first gets permission to do so. *Cf. Randall v. Lady of Am. Franchise Corp.*, No. 04-3394 (PJS/RLE), 2006 WL 6924259, at *1 (D. Minn. Sept. 13, 2006) ("This is akin to lighting a cigar and then asking, 'Is it okay if I smoke?' It betrays a lack of respect for the rules of this Court and for the client who is required to pay for a brief that the Court has not yet agreed to permit.").

Lazzaro no longer had the phone; at some point while he was standing in the doorway, Lazzaro had transferred the phone from his pocket to a ledge near the door inside his apartment. Hr'g Tr. 67–68, 78.

At the pre-arrest briefing, the case agent had told Rielly that "if there's a phone, he would like that." Hr'g Tr. 65. Rielly was aware that a phone "would likely be something that might have some fruits of the crime on it." Hr'g Tr. 65. After learning that the phone remained in the apartment, Rielly opened the apartment door and retrieved the phone. Hr'g Tr. 68–69. Rielly testified that he could not wait for a search warrant because he could not secure the phone, as the door was closed, and as he knew that Lazzaro's girlfriend was in the apartment. Hr'g Tr. 70, 73. He also testified that he did not ask for consent because he would have retrieved the phone whether or not he received consent to do so. Hr'g Tr. 73.

Rielly turned the phone over to the case agent without attempting to open it or otherwise obtain information from it. Hr'g Tr. 69–70. Four days after Lazzaro's arrest, FBI Special Agent Richard Waller applied for and received a warrant to search the phone. Gov't Ex. 1 [ECF No. 139-1]. So far as the Court is aware, the FBI's efforts to extract data from the phone have been unsuccessful. *See* ECF No. 199 at 4 (government's brief stating that "[t]o date, the FBI has been unable to obtain data from the Google Pixel").

II.  ANALYSIS

*A. Standard of Review*

Under 28 U.S.C. § 636(b)(1)(B), a magistrate judge may conduct evidentiary hearings and submit proposed findings of fact and recommended dispositions on (among other things) motions to suppress evidence and motions to dismiss an indictment.  A district judge must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  This includes proposed factual findings.  *United States v. Lothridge*, 324 F.3d 599, 600–01 (8th Cir. 2003) (remanding where district court failed to make a de novo determination of disputed factual findings).

While a district judge must make a de novo determination as to any portion of the R&R to which a party has objected, a party's failure to object does not obligate the district judge to accept the proposed findings or recommendation.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard"); *United States*

*v. Raddatz*, 447 U.S. 667, 681 (1980) ("Congress made clear that the district court has plenary discretion whether to authorize a magistrate to hold an evidentiary hearing and that the magistrate acts subsidiary to and only in aid of the district court. Thereafter, the entire process takes place under the district court's total control and jurisdiction.").

### B. Motion to Suppress

Lazzaro moves to suppress any evidence that may be obtained from the phone on the ground that the warrantless search of his apartment and seizure of the phone violated the Fourth Amendment. Judge Schultz agreed that the search and seizure violated the Fourth Amendment, but recommends denying Lazzaro's motion to suppress under the independent-source doctrine.

Under the independent-source doctrine, evidence is admissible despite a constitutional violation "if the evidence both would have been acquired by lawful means had the unlawful search not occurred and in fact *was* acquired (or reacquired) by these lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2744 (2021). Judge Schultz found that this doctrine applies because, following the phone's seizure, the agents obtained a valid warrant to search the phone without relying on any improperly obtained information.[2] *See id.* ("To determine

---

[2]The application requested a warrant authorizing both the seizure and the search of the phone. *See* Gov't Ex. 1 at 16108. The warrant application did *not* seek authorization for entry into Lazzaro's apartment, however. Instead, it recites that the
(continued...)

whether evidence within the scope of a valid warrant would have been acquired had a prior unlawful search not occurred, we ask whether (1) law enforcement would have sought a warrant even if the unlawful search had not occurred, and (2) the warrant was supported by probable cause even without information gained from the unlawful search." (cleaned up)).  Judge Schultz declined to determine whether the agents would have obtained a search warrant for Lazzaro's apartment, however, finding such an inquiry to be unnecessary.  R&R at 14.

Lazzaro objects to the R&R, arguing that the warrant to search the *phone* did not retroactively validate the search of his *apartment*.  The Court agrees.  Neither the independent-source doctrine (nor its cousin, the inevitable-discovery doctrine) applies "unless the evidence would have been acquired by lawful means had the unlawful search not occurred."  *Baez*, 938 F.3d at 1036–37.  In this case, if "the unlawful search [had] not occurred," law enforcement would not have possession of the phone and would not be able to search it.  It is therefore impossible to conclude that evidence from the phone would have been (or, in this case, could be) obtained by lawful means without first determining whether the agents would have obtained a search warrant for Lazzaro's apartment.

---

²(...continued)
phone was seized during a search incident to Lazzaro's arrest.  *Id.* at 16109.

The government disagrees, contending that *Baez* controls the outcome of this case. In *Baez*, the officers obtained consent to search the front room of a hotel suite, but exceeded the scope of the lawful search by entering a back room, where they discovered two large bags of methamphetamine. *Id.* at 1035. The officers then obtained a warrant to search the entire suite. *Id.* The defendant moved to suppress the bags of methamphetamine (as well as other evidence found during the execution of the search warrant). *Id.* at 1036, 1038. The Eighth Circuit affirmed the denial of the motion, finding that the warrant was supported by probable cause even without information gained from the unlawful search and that the officers would have pursued a search warrant. *Id.* at 1037–40.

*Baez* is a fairly straightforward application of the independent-source doctrine. The defendant argued that the search of the back room was unlawful. But a later-acquired, valid warrant that authorized a search of the back room—that is, the very search alleged to be unlawful—demonstrated that the officers would have acquired the evidence by lawful means even without the unlawful search.

Here, unlike in *Baez*, there is no later-acquired warrant that authorized a search of Lazzaro's *apartment*. Instead, the later-acquired warrant authorized a search of Lazzaro's *phone*. This is as if the officers in *Baez* had later obtained, not a warrant to search the hotel suite, but a warrant to search the bags containing the

methamphetamine. As the Eighth Circuit noted, the search warrant for the hotel suite authorized the search of any containers in the suite. *Baez*, 983 F.3d at 1038. That is because "a lawful search includes all areas where the items listed in the warrant might be found." *United States v. Romo-Corrales*, 592 F.3d 915, 920 (8th Cir. 2010). The reverse is not true, however; a warrant authorizing the search of a container does not give officers authority to search for the container in any location they choose. Where, as here, the "container" (that is, the phone) was obtained through an unlawful search of a residence, the fact that agents later secured a valid warrant to search the container does not fully answer the question whether the evidence would have been lawfully obtained even without the unlawful search. In order to answer that question, it is necessary to determine whether the agents would have obtained a valid warrant to search Lazzaro's apartment and seize the phone.

Having reviewed the record de novo, the Court finds it more likely than not that the agents would have obtained such a warrant.[3] As noted, at the pre-arrest briefing, the case agent told Rielly that, "if there's a phone, he would like that." Hr'g Tr. 65.

---

[3] The Court notes that, although the government's response to Lazzaro's objection does not raise this issue, the government did argue before Judge Schultz that the phone "would have been inevitably discovered had SA Waller obtained a search warrant later that day on August 12—as he could have done—and returned to the residence to execute." ECF No. 199 at 11–12. And as noted above, despite the government's puzzling failure to raise this issue in its response to Lazzaro's objection, the Court is not bound by any conclusions in the R&R and may review those conclusions *sua sponte*.

During the course of the arrest, Rielly lawfully learned that Lazzaro had a phone in the apartment because Rielly saw the phone in Lazzaro's hand when Lazzaro first opened the door and saw that Lazzaro no longer had the phone after his arrest. Hr'g Tr. 67–68. In other words, there was ample, lawfully obtained probable cause to believe that the phone could be found in Lazzaro's apartment. And as explained in the R&R—and as outlined in the search warrant for the phone—there was unquestionably probable cause to believe that the phone contained evidence of and was used to commit crimes. *See* Gov't Ex. 1. Finally, the warrant to search the phone was supported by probable cause even setting aside any information that the agents may have obtained through the illegal search. Indeed, so far as the Court can tell, the agents did not obtain any information from the illegal search; they only obtained physical custody of the phone, which they already knew was in the apartment. The Court therefore finds that, had Rielly understood that he could not lawfully open the door to Lazzaro's apartment, he (or one of his colleagues) would have quickly secured a warrant to search the apartment for the phone.

True, Rielly testified that he could not get a warrant, but that was in the context of explaining that he was concerned that something might happen to the phone while he was seeking a warrant. Hr'g Tr. 70. It is likewise true that, so far as the record reveals, the case agent had no plan, prior to Lazzaro's arrest, to obtain a warrant to

search the apartment for a phone. Hr'g Tr. 73. But the testimony suggests that the case agent anticipated that Lazzaro would have his phone with him at the time of his arrest, *see* Hr'g Tr. 65; the case agent could not have predicted that the arrest would play out in such a manner that the agents would see Lazzaro in possession of his phone but be unable to lawfully retrieve that phone during his arrest. Following the arrest, however, the agents lawfully knew both that Lazzaro had a phone and that the phone was in Lazzaro's apartment. Under these circumstances, and given the obvious importance of the phone to the investigation (which is why the case agent asked Rielly to give him any phone that Lazzaro possessed at the time of his arrest), the Court is persuaded that the agents would have obtained a warrant to search Lazzaro's apartment for the phone had Rielly known that such a warrant was necessary. As a result, any evidence obtained from the phone is admissible under the independent-discovery doctrine (or, alternatively, the inevitable-source doctrine).[4] *See Baez*, 983 F.3d at 1036–37.

---

[4] As *Baez* explains, the inevitable-discovery doctrine applies when the evidence was obtained through unlawful means but would have inevitably been discovered through lawful means, whereas the independent-source doctrine applies when the government in fact acquired the evidence through lawful means despite some other illegality. *Baez*, 983 F.3d at 1036–37. "[T]he distinction between the independent-source and inevitable-discovery doctrines is not sharp" and "where exactly one draws the line between the two doctrines is unimportant." *Id.* at 1037.

### C. Motion to Dismiss

Lazzaro moved to dismiss Counts 5, 6, and 7 of the indictment, which charge him with sex trafficking or attempted sex trafficking of three different minors in violation of 18 U.S.C. § 1591(a)(1). Lazzaro argues that § 1591(a)(1) is unconstitutionally vague as applied to the conduct underlying those counts. ECF No. 132. Both Lazzaro and the government agree that Lazzaro's as-applied challenge requires the development of a factual record and is therefore not capable of resolution at this time. *See* Hr'g Tr. 15–17.

At the hearing before Judge Schultz, however, Lazzaro's counsel made clear that Lazzaro is also raising a facial challenge to § 1591(a)(1). Hr'g Tr. 15–16. As Judge Schultz explained in the R&R, this facial challenge is also premature, as a defendant must prevail on an as-applied challenge before raising a facial challenge. *United States v. Burgee*, 988 F.3d 1054, 1060 (8th Cir.) ("When reviewing for vagueness, we first determine if a statute is vague as applied to the defendant's conduct, and only if it is will we consider whether a statute is facially unconstitutional."), *cert. denied*, 142 S. Ct. 473 (2021); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) ("We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" (quoting *Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982)).

Lazzaro contends that this rule has been undermined by *Johnson v. United States*, 576 U.S. 591, 602 (2015) ("although statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp"), and *Chicago v. Morales*, 527 U.S. 41, 55 (1999) (plurality opinion) ("When vagueness permeates the text of such a law, it is subject to facial attack.").

Following *Johnson*, however, the Eighth Circuit has clarified that, while *Johnson* held that a defendant can prevail on a facial challenge without proving that a statute is vague in *all* of its applications, "our case law still requires him to show that the statute is vague as applied to *his* particular conduct." *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (per curiam) (emphasis added) (rejecting defendant's facial challenge because the statute was constitutional as applied to him); *see also United States v. Koech*, 992 F.3d 686, 688–89 (8th Cir.) (explaining that, before addressing the defendant's facial challenge, it must first consider whether the statute is unconstitutionally vague as applied), *cert. denied*, 142 S. Ct. 371 (2021).  The Court therefore overrules Lazzaro's objection and denies his motion without prejudice as premature.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES defendant's objection [ECF No. 211] and ADOPTS the R&R

[ECF No. 204] to the extent that it is consistent with the Court's analysis.  IT IS HEREBY ORDERED THAT:

1. Defendant's motion to suppress [ECF No. 127] is DENIED.

2. Defendant's motion to dismiss Counts Five, Six, and Seven as unconstitutionally vague [ECF No. 132] is DENIED WITHOUT PREJUDICE as premature.

3. Defendant's motion for leave to file a reply [ECF No. 222] is DENIED.

Dated:  August 5, 2022

Patrick J. Schiltz, Chief Judge
United States District Court