UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                   Case No. 21-CR-0173 (PJS/DTS)

                    Plaintiff,

v.                                                          ORDER

ANTON JOSEPH LAZZARO,

                    Defendant.

Emily A. Polachek, Angela M. Munoz, and Laura M. Provinzino, UNITED
STATES ATTORNEY'S OFFICE, for plaintiff.

Daniel L. Gerdts, for defendant.

This matter is before the Court on defendant Anton Joseph Lazzaro's objection to

the October 12, 2022 Report and Recommendation ("R&R") [ECF No. 253] of Magistrate

Judge David T. Schultz.  Judge Schultz recommends (1) denying Lazzaro's motion to

dismiss the indictment for selective or vindictive prosecution [ECF No. 236] and

(2) denying Lazzaro's motion for sanctions [ECF No. 213].  Lazzaro objects only to

Judge Schultz's recommendation that his selective-prosecution motion be denied.[1]

The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R.

_____

[1]Lazzaro briefly alludes to his vindictive-prosecution claim in his objection, but
the objection barely mentions it, and thus the Court will not address it.  So the record is
clear, though, the Court agrees with Judge Schultz's recommended disposition of that
claim.

Crim. P. 59(b)(3).  Based on that review, the Court overrules Lazzaro's objection, adopts

the R&R to the extent that it is consistent with this order, and denies Lazzaro's motions.

## I.  BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case.

To briefly summarize:  Lazzaro is a politically active Republican who describes himself

as a vocal critic of the Department of Justice and "corrupt politicians."  Sometime in

2020, the Minnesota Bureau of Criminal Apprehension ("BCA") and the Federal Bureau

of Investigation ("FBI") began investigating Lazzaro after various minor girls reported

to various law-enforcement agencies that Lazzaro had paid them to have sex with him.

In August 2021, Lazzaro was indicted, along with a co-defendant who is alleged to have

helped him find his victims.  Lazzaro is charged with one count of conspiring to commit

sex trafficking of minors, six counts of sex trafficking of a minor, and three counts of

obstruction.

Lazzaro originally moved to dismiss the indictment against him in January 2022,

alleging selective prosecution based on his wealth and "prominent public profile."  ECF

No. 133.  Before the Court could decide the motion, however, Lazzaro's attorneys

withdrew it over his objection.  *See* ECF Nos 187, 190.  Several months later, Lazzaro

(through new counsel) moved to reinstate and amend his motion to dismiss for

selective prosecution.  Judge Schultz gave Lazzaro permission to file an amended motion.

The amended motion argues that Lazzaro has been selectively prosecuted on account of his exercise of his First Amendment right to political speech and because the government wants to seize his many valuable assets.  After evaluating the evidence, Judge Schultz concluded that Lazzaro has not established a prima facie case of selective prosecution.  Lazzaro argues that Judge Schultz erred by "employ[ing] new standards unsupported by any authority, and capriciously dismissed the evidence in support of the claim as insufficient."  Obj. [ECF No. 261] at 2.

## II.  ANALYSIS

Analysis of any selective-prosecution claim begins with the assumption that prosecutors "have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)).  The government "retain[s] broad discretion to enforce the Nation's criminal laws," and a "'presumption of regularity supports' [its] prosecutorial decisions."  *Id*. Prosecutors' "broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."  *Wayte v. United States*, 470 U.S. 598, 607 (1985).  Nevertheless, prosecutors' discretion "is subject to constitutional constraints."  *Armstrong*, 517 U.S. at 464 (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)).  A court must ensure that the decision of a government attorney to bring

criminal charges against a citizen does not violate equal protection and is not based on

"an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*

(quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

"To establish a prima facie case [of selective prosecution], a defendant must

demonstrate: 1) that he has been singled out for prosecution while others similarly

situated have not been prosecuted for similar conduct and 2) that the government's

action in thus singling him out was based on an impermissible motive." *United States v.*

*Parham*, 16 F.3d 844, 846 (8th Cir. 1994).  These two elements are often referred to as

"discriminatory effect" and "discriminatory purpose."  *See Armstrong*, 517 U.S. at 465.

Due to the highly sensitive nature of judicial inquiries into governmental

decisions to prosecute, the defendant carries a heavy burden to show that he was

selectively prosecuted.  *Parham*, 16 F.3d at 846; *see also Armstrong*, 517 U.S. at 464

(requiring "clear evidence").  Before even obtaining discovery on a selective-

prosecution claim, a defendant "must present some evidence that tends to show the

existence of both" discriminatory effect and discriminatory purpose.  *United States v.*

*Perry*, 152 F.3d 900, 903 (8th Cir. 1998); *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir.

2008) (requiring less than "clear evidence" but noting the threshold is "nonetheless

fairly high"); *see also Armstrong*, 517 U.S. at 470 (requiring defendant to make "a credible

showing of different treatment of similarly situated persons").  Courts enforce this

standard rigorously.  *See Armstrong*, 517 U.S. at 464 ("[T]he showing necessary to obtain

discovery should itself be a significant barrier to the litigation of insubstantial claims.");

*Perry*, 152 F.3d at 903 (standard for obtaining discovery is "rigorous").

*A.  Discriminatory Effect*

The first prong of the selective-prosecution analysis asks whether the challenged

prosecutorial decision had a discriminatory effect.  *Armstrong*, 517 U.S. at 465.

A defendant must show that he was treated differently from "comparators"—that is,

other individuals:

> (1)    who committed "roughly the same crime under
>        roughly the same circumstances," *Lewis*, 517 F.3d at
>        27; *see also United States v. Smith*, 231 F.3d 800, 810
>        (11th Cir. 2000) (comparators must have "committed
>        the same basic crime in substantially the same
>        manner as the defendant");
>
> (2)    who are "outside the protected class," *Lewis*, 517 F.3d
>        at 27—i.e., who did not share the trait or participate in
>        the activity on which the prosecutor allegedly relied;
>        and
>
> (3)    who were known to the prosecutor.

*See Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) ("In order to make out an equal

protection claim on the basis of selective enforcement, a plaintiff must demonstrate that

someone similarly situated *but for the illegitimate classification* used by the government

actor was treated differently." (emphasis added)); *see also Armstrong*, 517 at 470 ("The

study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted.").

So, for example, an African-American defendant charged with unlawfully possessing a firearm who alleges that he was selectively prosecuted on account of his race by the United States Attorney for the District of Minnesota would have to introduce evidence that the United States Attorney for the District of Minnesota had decided not to prosecute comparators—that is, individuals who had committed the same crime under the same circumstances but who were not African American. Contrary to Lazzaro's assertions, the requirement to identify comparators does not apply only "[i]n cases arguing discrimination based on race or religion," Def. Reply on Motion to Dismiss [ECF No. 244] at 2. *See United States v. White*, 928 F.3d 734, 744 (8th Cir. 2019) (concluding defendant had not satisfied first element of selective-prosecution claim where he had "not shown, or even alleged, that a resident of a state that has legalized marijuana would not be prosecuted for cultivating it in the same manner that White cultivated it [in a state that had not legalized marijuana]"). Instead, the requirement applies in any case in which the defendant argues that he has been targeted by prosecutors for an illicit reason, including speech and political affiliations. *See Wayte,* 470 U.S. at 610 (petitioner had not shown a discriminatory effect where the government "treated all reported nonregistrants similarly" and "did not subject vocal

nonregistrants to any special burden" as compared to non-vocal nonregistrants); *United States v. Ojala*, 544 F.2d 940, 945 (8th Cir. 1976) ("There was no evidence presented that the government did not prosecute others who failed to file returns but who did not take a vocal stand on the issue.").[2]

The degree of similarity required between the defendant and a comparator is high.  *Smith*, 231 F.3d at 811 (describing required showing in voter-fraud case); *Parham*, 16 F.3d at 846–47 and n.3 (same).  As noted, an individual does not qualify as a comparator merely because he committed the same crime as the defendant; rather, the individual must have committed the same crime under the same circumstances.  So, for example, an individual who distributed heroin and who was not charged will not

---

[2]On this point, Lazzaro argues that Judge Schultz erroneously described the law related to selective prosecution targeting individual speech by concluding that Lazzaro must "show that others engaged in similar speech to his—engaging in the advocacy of the GOP—were not prosecuted."  R&R at 9.  The Court agrees that Judge Schultz erred.  Lazzaro must show just the opposite—i.e., that others who engaged in the same crime but who did *not* "engage in the advocacy of the GOP" were not prosecuted.  Ultimately, however, Judge Schultz's misstatement does not matter, as Lazzaro fails to meet his burden as this Court has (correctly) described it.

Further, to the extent Lazzaro's claim is premised on a "class-of-one" equal-protection theory, he has not explained how that theory is compatible with the Eighth Circuit's opinion in *Flowers v. City of Minneapolis*, 558 F.3d 794 (8th Cir. 2009), in which the court held that criminal-investigative decisions "remain subject to traditional class-based equal protection analysis, [but] they may not be attacked in a class-of-one equal protection claim."  *Id.* at 799–800.  While *Flowers* addressed a claim against a police officer and not a prosecutor, the Court cannot think of any reason why its holding would not also apply in the prosecutorial context.

qualify as a comparator to a defendant who distributed heroin and was charged if the

defendant distributed much more heroin, or if the defendant had a longer criminal

record, or if one of the defendant's customers died from overdosing on heroin supplied

by the defendant.  *See White*, 928 F.3d at 743–44 (to prove a claim of selective

prosecution for manufacturing marijuana in violation of federal law, the defendant

could not rely on the fact that he was prosecuted while individuals in other states who

engaged in "large-scale marijuana cultivation" were not because those individuals "are

subject to strict [state] regulatory and enforcement systems to which White simply is not

subject"); *see also Lewis*, 517 F.3d at 27 ("[A] district court should assess *every material fact*

in rendering its judgment as to which offenders should be deemed similarly situated."

(emphasis added)).[3]

---

[3]In *Lewis*, the First Circuit found that the district court had not erred by narrowly
defining the class of comparators as "non-African-Americans and/or non-Muslims who
had committed multiple misrepresentation offenses in connection with firearms
paperwork, who posed a danger of violence, and who may have had links to terrorism."
517 F.3d at 26.  The defendant had argued (similar to Lazzaro here) "that the pool of
similarly situated offenders should be populated by those who have committed the
same basic offense—no more and no less."  *Id.*  The First Circuit disagreed:  "In this
case, the district court . . . configured the pool of similarly situated offenders with
reference to the nature and numerosity of the offenses and the incidence of possible
links to terrorism.  While the defendant labors to persuade us that this configuration is
too specific, we are not convinced.  Each of the items that the district court factored into
the configuration calculus is relevant and material.  Those criteria are, therefore,
appropriate."  *Id.* at 28.

Here, Lazzaro is accused of violating 18 U.S.C. § 1591 by acting as a "sugar daddy" to multiple minor girls—that is, by "engag[ing] in sexual acts with [them], and pay[ing] them with alcohol, cash, cellular telephones, vaping pens, and [hotel] accommodations." Def. Am. Motion to Dismiss [ECF No. 236] at 2 (quotations omitted). Therefore the relevant pool of comparators is composed of individuals (1) who committed the same crime as Lazzaro is accused of committing under the same circumstances—i.e., who enticed multiple minors to engage in sexual acts by giving them cash or other valuable "gifts"; (2) who did not share Lazzaro's protected characteristics—i.e., who were not politically active Republicans and who did not possess a large amount of forfeitable assets; and (3) who were known to the United States Attorney's Office for the District of Minnesota but who, unlike Lazzaro, were not prosecuted by that office.

The comparator evidence Lazzaro provides to support his motion includes:

(1)     A list of ten defendants who were charged with sex crimes by the State of Minnesota;

(2)     Statistics related to the number of tips with some connection to Minnesota that were made to the National Human Trafficking Hotline in 2020;

(3)     Information about funding for the Minnesota Human Trafficking Investigators Task Force and the number of prosecutions in which it was involved between December 2020 and August 2021; and

> (4)    Data from the Minnesota Sentencing Guidelines
> Commission about the number of sex offenses
> prosecuted in Minnesota state courts between 2009
> and 2019.

The problem for Lazzaro is that none of this information establishes "a credible

showing of different treatment of similarly situated persons."  *Armstrong*, 517 U.S. at

470.[4]

## 1. State Prosecutions

Lazzaro's list of other sex-crime prosecutions in state court (*see* Ex. C to Def. Am.

Motion to Dismiss [ECF No. 236-3]) does not help him for a number of reasons:

*First*, Lazzaro himself argues that the offenders prosecuted by the state were *not*

engaged in conduct similar to the conduct of which he is accused:  "[I]t is worth noting

that the conduct alleged in most of th[e state cases] was more egregious . . . including

mothers selling prepubescent daughters, and the flagrant prostitution of middle-school-

aged children."  Obj. at 4–5.  Lazzaro clearly believes that this conduct is worse that the

conduct with which he is accused—a conclusion with which the United States

Attorney's Office has the right to disagree.  But for present purposes, what matters is

that this conduct is *different*, and because it is different, the defendants who committed

---

[4]In his objection, Lazzaro suggests that Judge Schultz conceded that he had
provided evidence of individuals who had engaged in similar criminal conduct.  *See*
Obj. at 4.  Lazzaro is incorrect.  Judge Schultz specifically noted that he was "assum[ing]
*without deciding* that these tips alleged crimes similar to the ones of which Lazzaro is
accused."  R&R at 9 n.2 (emphasis added).

it are not comparators.  Putting that aside, Lazzaro has not identified the crimes with

which these state-court defendants were charged, provided evidence that they could

have been federally prosecuted under 18 U.S.C. § 1591, or provided evidence that their

crimes were known to the United States Attorney's Office.

*Second*, Lazzaro does not even try to establish that these purported comparators

did not engage in similar political activism and did not possess similar "forfeitable

assets."  Def. Am. Mot. to Dismiss at 4.  Lazzaro's passing allegation that the

government failed to prosecute potential defendants who "did not engage in the

exercise of their First Amendment right to loud and free political speech and did not

offer the Government the opportunity for lucrative seizures of forfeitable assets," *id.*, is

unsupported by any evidence.

As explained above, Lazzaro needs to show more than that others who had

engaged in "similar *criminal* conduct" had not been prosecuted.  *See* Obj. at 3 (emphasis

in original).  Instead, Lazzaro must *also* show that the unindicted comparators differed

from him with respect to the characteristics upon which he alleges the government

impermissibly relied.  Otherwise, all that Lazzaro has demonstrated is that the

government did not prosecute every single person who was suspected of committing

crimes similar to his.  That, of course, is hardly breaking news.  Neither the federal

government nor any state government has the resources to prosecute every single

person suspected of committing a particular crime.[5]  If non-prosecution of individuals who committed the same crime was enough to show a discriminatory effect, the first element of the selective-prosecution test would be meaningless.

*Finally*, the fact that the State of Minnesota prosecuted ten defendants for unidentified sex crimes and those defendants were (presumably) not also federally prosecuted under 18 U.S.C. § 1591 despite (presumably) being known to the United States Attorney's Office is simply not statistically significant.  To identify ten defendants prosecuted for sex crimes by the State of Minnesota says nothing about the total number of individuals who could have been prosecuted in federal court for sex trafficking but were not.  *Cf. Ojala*, 544 F.2d at 943 (statistical evidence showed that during two-year period, there were 51,000 tax delinquency investigations in Minnesota, 4,000 possible criminal violations were brought to the IRS's attention, and only nine cases were recommended for criminal prosecution); *United States v. Falk*, 479 F.2d 616, 621 (7th Cir. 1973) (noting that defendant offered evidence to prove "over 25,000 Selective Service

---

[5]*See Boone*, 385 F.3d at 932 ("[P]olice resources are limited, and . . . only a fraction of those guilty of criminal activity can be prosecuted."); *Smith*, 231 F.3d at 807 ("The reality resulting from limited law enforcement and judicial resources is that not every criminal violation of the United States Code can be prosecuted."); *Boyce v. Fernandes*, 77 F.3d 946, 950 (7th Cir. 1996) ("The majority of lawfully arrested persons are not prosecuted.  Prosecutors' time and other resources are severely limited in relation to the amount of crime in this country, and prosecution may be declined merely because the evidence of guilt is not overwhelming."); *Ojala*, 544 F.2d at 945 ("The government lacks the means to investigate and prosecute every suspected violation of the tax laws.")

registrants had dispossessed themselves of their draft cards without criminal sanction"); *Wayte*, 470 U.S. at 604 and n.3 (only 16 nonregistrants were indicted for failing to register for Selective Service draft, despite "an estimated 674,000 nonregistrants," 286 of whom had been referred to the Department of Justice); *Armstrong*, 517 U.S. at 459 and n.1 (discounting defendant's "study" that showed "in every one of the 24 § 841 or § 846 cases closed by the office during 1991, the defendant was black," and crediting the district court's explanation "that the 23-person sample before him was 'statistically insignificant'").

2.  Sex-Crime Statistics

The statistics from the National Human Trafficking Hotline and the Minnesota Sentencing Guidelines Commission—and the information that Lazzaro presents about the activities of the Minnesota Human Trafficking Investigators Task Force—are even less probative of discriminatory effect than the list of ten defendants who were prosecuted for sex crimes in state court.

Information about the total number of tips received by the National Human Trafficking Hotline says nothing about how many of those tips were credible or might have led to a successful *federal* sex-trafficking indictment—let alone demonstrates that the offenders were similarly situated to Lazzaro in all respects save his protected characteristics. *See Flowers*, 558 F.3d at 798 ("Courts are not well-equipped to evaluate

whether a particular lead warrants investigation, because that decision may depend on the strength of the information provided, an agency's enforcement priorities, and how a particular investigation relates to an overall enforcement plan.").  Likewise, the bare-bones sex-crimes statistics from the Minnesota Sentencing Guidelines (which the Court has no way of verifying, as Lazzaro did not submit the data or provide a citation to its source) do not provide nearly enough detail to allow the Court to determine whether any of the offenders prosecuted by the state were similarly situated to Lazzaro (save for his protected characteristics) or known to the United States Attorney's Office.[6]

Finally, Lazzaro's suggestion that the Minnesota Human Trafficking Investigators Task Force ("Task Force") "receives several million dollars a year in funding and grants" but has failed "to have even a single similarly situated defendant accepted for federal prosecution [other than Lazzaro] from December 2020 to August 2021," Def. Am. Mot. to Dismiss at 5–6, is unsupported by any evidence.[7]  And even if

---

[6]The Court also notes that the Justice Department has adopted a policy—the "*Petite* policy," so named after the Supreme Court's decision in *Petite v. United States*, 361 U.S. 529 (1960)—"of refusing to bring a federal prosecution following a state prosecution except when necessary to advance compelling interests of federal law enforcement.*" Rinaldi v. United States*, 434 U.S. 22, 28 (1977).  The *Petite* policy is one reason why a defendant who has been prosecuted in state court is not similarly situated to a defendant (such as Lazzaro) who has not:  As to the former, the *Petite* policy discourages federal prosecution, while as to the latter, it does not.

[7]The only source related to the Task Force that Lazzaro cites (a news article from a local radio station, *see Grant Funds Sex Trafficking Task Force For Two More Years*, KNSI

(continued...)

Lazzaro did introduce evidence to support these claims, they would still not show a discriminatory effect—again because there is no indication that the Task Force knew about other offenders who were similar to Lazzaro in all relevant respects (save for the protected characteristics) and failed to prosecute them.

At bottom, Lazzaro needs to point to someone who committed the same crime under the same circumstances, who did not engage in the same protected activity, who was known to the U.S. Attorney's Office, and who was not prosecuted. Lazzaro has failed to do so, and thus he has failed to establish discriminatory effect, the first element of his selective-prosecution claim.

### B. Discriminatory Purpose

Lazzaro has also failed to establish discriminatory purpose, the second element of his selective-prosecution claim. The Court agrees with Judge Schultz that Lazzaro has not submitted sufficient evidence that the government harbored an improper motive in prosecuting him. The "coincidences" to which Lazzaro points—such as the fact that one of the prosecutors donates money to Democratic candidates or the fact that

---

[7](...continued)
Radio, https://knsiradio.com/2021/12/13/grant-funds-sex-trafficking-task-force-for-two-more-years/ (Dec. 13, 2021, 5:58 A.M.)) contradicts Lazzaro's claims. The article states that the Task Force received a $575,000 grant in 2021 to fund it for two more years, and reported that "the task force has received more than 350 tips, investigated over 100 cases, charged 44 felonies, and given aid to 239 victims of sex trafficking since the task force began in 2018." *Id.*

Lazzaro was arrested on a day on which (like most days) he was engaged in political activism—provide minimal evidence of a discriminatory purpose.

Lazzaro argues that "there is no evidence—none—that supports the magistrate's further findings that this lawsuit's connection to his vocal political speech is merely 'coincidental,' and not 'obviously' connected." Obj. at 6. But it is not the *Court's* burden to show that the government did *not* act with a discriminatory purpose. Rather, it is *Lazzaro's* burden to show that the government prosecuted him because of his "vocal political speech" or "forfeitable assets." *Wayte*, 470 U.S. at 610. He has not carried that burden.

ORDER

Based on all of the files, records, and proceedings herein, the Court OVERRULES defendant's objection [ECF No. 261] and ADOPTS the R&R [ECF No. 253] to the extent that it is consistent with this order. IT IS HEREBY ORDERED THAT:

1.      Defendant's Amended Motion to Dismiss for Selective and Vindictive Prosecution [ECF No. 236] is DENIED.

2.      Defendant's Motion for Sanctions for Government Breach of Privileged Communications [ECF No. 213] is DENIED.

Dated:  November 15, 2022                    s/Patrick J. Schiltz
                                             Patrick J. Schiltz, Chief Judge
                                             United States District Court

-16-