UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-173-01 (PJS/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTON JOSEPH LAZZARO,
a/k/a Tony Lazzaro,
a/k/a Tony,

    Defendant.

**GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Emily Polachek, Laura Provinzino, and Melinda Williams, Assistant United States Attorneys, hereby submits its omnibus response to Defendant's motions in limine.

**1. Defendant's Motion to Preclude 1006 Summary Charts (ECF No. 307)**

Defendant takes issue with the Government's proposal to use summary charts under Federal Rule of Evidence 1006. The Government noticed four possible charts: (1) a chart listing the minor victims and charged counts, (2) a chart listing the items of value that Defendant provided to Gisela Castro Medina, (3) Snapchat records showing contact and frequency of contact between Defendant, Castro Medina, and others, and (4) Uber records documenting the transportation of the minor girls. Defendant claims

these charts do not fall within the ambit of Rule 1006, citing the requirement that the charts must fairly summarize voluminous trial evidence.

The Government now plans to offer the chart listing the victims and their charged counts as a demonstrative exhibit only.

The other three charts are certainly based on voluminous data and otherwise meet the requirements of Rule 1006. The items of value and cash that Gisela Castro Medina received from Lazzaro are based on Venmo records, WhatsApp communications, bank records, and other documents invoicing expenses. The Snapchat records associated with this case number in at least the tens of thousands of pages. And there are ten separate Lyft and Uber transactions documenting transport of minor victims that can be best summarized in a chart as opposed to the grand jury subpoena returns. The charts are being finalized and will be provided to defense counsel in advance of the pre-trial hearing.

**2. Defendant's Motion to Prohibit Inappropriate Comment on Lawful Sexual Relationships (ECF No. 308)**

Defendant's motion to prohibit comment on his "lawful" sexual relationships demonstrates the necessity of the order requested in the Government's motion to preclude evidence and arguments regarding consent and state laws (ECF No. 301).

In support of his motion, Defendant reasserts that his actions were lawful because some of his victims were 16 years old at the time he recruited and paid them for sex. As is discussed at length in the Government's earlier motion, that is incorrect.

First, claiming that Minnesota's "age of consent" for engaging in sexual activities is 16 years is an oversimplification of state law and ignores Defendant's actual conduct. In fact, Defendant's conduct violated *many* Minnesota state laws. It is illegal under Minnesota state law to pay minors under the age of 18 for sex, to pay others to procure minors under the age of 18 for sex, and to have sex with intoxicated minors. Defendant did each of these things. Defendant's conduct was *not* legal under Minnesota state law.

Second—and more to the point—this is not state court. Defendant was charged with federal sex trafficking of minors by a federal grand jury. It is federal law that governs this case and Defendant's trial. And federal law is clear: 18 U.S.C. § 1591(a) prohibits commercial sex acts with individuals under the age 18 who have been trafficked. In this case, the only relevant age for the jury to consider with respect to the victims is whether the victims "ha[d] not attained the age of 18 years." *Id.* Consent is not an element of the offense of sex trafficking of a minor, nor is it a valid defense to the charged offenses. *See United States v. Taylor*, 44 F.4th 779, 790 (8th Cir. 2022).

The Court should deny Defendant's motion. The Court should also prohibit Defendant from introducing evidence and making arguments at trial concerning Minnesota state law or suggesting that the minor victims in this case "consented" to being trafficked.

3.  **Defendant's Motion to Prohibit Reference to Defendant's Investment and Participation in Adult-Themed Businesses (ECF No. 309)**

The Government objects to Defendant's motion to prohibit references to his adult-pornography business and website to the extent those topics are intrinsic to the charged offenses.

Defendant ran a pornography website called Only Tiny Teens. This website featured Defendant as well as other adult performers. Defendant discussed his pornography business with several of his minor victims in the process of recruiting them, as well as with his co-defendant, Gisela Castro Medina. While the Government does not intend to spend a significant amount of time on this evidence at trial, the Government does intend to introduce this evidence insofar as it is intrinsic to the case.

During the conspiracy, Defendant used his pornography videos and business to recruit and entice his co-defendant, the minor victims, and a witness, to engage in commercial sex. Defendant showed his pornography videos to Minor Victim A in recruiting her for sex. Defendant similarly showed Castro Medina his pornography videos in attempting to have sex with her, and later asked her to star in one of his pornography films. Defendant offered T.L. (Minor Victim B's older sister) $6,000 to star in one of his pornography films. Defendant told Minor Victims A and B that, when they turned 18 years old, they could also star in his pornography films and get paid even more money.

Defendant chose to use his pornography business as a means of recruiting and enticing his victims. As such, this evidence is admissible as intrinsic to the case, or as Rule 404(b) evidence. Moreover, the probative nature of this evidence is not outweighed by the potential for unfair prejudice because it is, as Defendant notes, legal adult pornography.

**4.     Defendant's Motion to Prohibit Reference to Other Cases Raising Similar Allegations (ECF No. 310)**

Defendant seeks an order prohibiting the prosecution from referring to nationally prominent cases with same or similar allegations. The Government will not refer to any other notorious sex-trafficking cases during its arguments. The Government objects to Defendant's motion to the extent it limits the Government's witnesses, including its expert, from describing the events charged in the indictment.

**5.     Defendant's Motion to Prohibit Reference to Other Sexual Conduct and Relationships (ECF No. 311)**

Defendant seeks an order prohibiting the Government from introducing any evidence about his sexual relationships with persons who are not named in the indictment. The Government objects to Defendant's motion to the extent those topics are intrinsic to the charged offenses.

Defendant instructed Castro Medina to recruit young girls for him to have sex with, in exchange for money. In asking Castro Medina to serve as his "recruiter," Defendant told Castro Medina that he had previous "recruiters" in California. Defendant instructed Castro Medina as to the types of girls he wanted her to recruit for

him. Defendant told Castro Medina the girls should be: young (16 to 18 years old), white, skinny, with no tattoos, they should be "whores" and "sluts" and—above all—"broken girls." Defendant paid Castro Medina well over $50,000 for her recruitment of these girls and young women, as well as for her later silence.

The indictment charges Defendant with sex trafficking five minor victims (ages 15 and 16)—Minor Victims A, B, C, D, and E. But these five girls were certainly not the only girls or young women involved in Defendant's scheme.

For instance, Defendant made sexual overtures to other minor girls in the case, some of whom will testify at trial. For instance, one 14-year-old witness was a part of a group of girls (ages 14 and 15) who, in the middle of the night, Defendant transported from a slumber party to his penthouse condo. Defendant gave the girls liquor. He then sexually assaulted one of the girls—a charged minor victim—who was black-out drunk. Defendant gave each girl present, including the 14-year-old witness, a $100 bill, and gave them additional money to give to their friends back home. Defendant later gave more money to the 14-year-old witness, who believed that Defendant wanted to have sex with her and for her to stay quiet about what she had seen. While Defendant did not have sex with this witness, Defendant's interactions with this witness and with other minor girls are of course intrinsic to the charged counts.

In another example, Defendant had sex with Minor Victim B as well as her 18-year-old sister, T.L., both of whom Castro Medina and an uncharged co-conspirator recruited on Defendant's behalf. Defendant gave T.L. and Minor Victim B alcohol and

6

paid them for sex. There was no time that Minor Victim B went to Defendant's condo without T.L. Defendant's sexual relationship with T.L.—while not charged in the indictment—is therefore intrinsic to the case, and evidences the conspiracy between Defendant, Castro Medina, and others.

Additionally, Castro Medina recruited other girls and women to have sex with Defendant. At times, Castro Medina would send Defendant photos of minor girls and women and Defendant would approve or decline the photos. This was a part of Defendant's conspiracy with Castro Medina and evidences her role as his recruiter. At other times, Defendant would identify photos of minor girls and women and instruct Castro Medina to reach out to them. Indeed, Defendant's current girlfriend was recruited for Defendant when she was a minor by Castro Medina and another co-conspirator.

All of this evidence is admissible as intrinsic to the case, or as Rule 404(b) evidence.

6.   **Defendant's Motion to Prohibit Reference to the Complaining Witnesses as Victims (ECF No. 312)**

Defendant moves to prohibit the Government from using the word "victim" at trial. Defendant's motion should be denied.

The Government and its witnesses should be allowed to use the term "victim." They are labeled as such in the indictment. The grand jury charged that Minor Victims

A, B, C, D, and E were trafficked by Defendant. Thus, they are properly categorized as victims in this matter.

Moreover, the jury is entitled to hear the Government's theory of its case: that Defendant and Castro Medina entered into a sex trafficking conspiracy to recruit minor victims for commercial sex with Defendant. Describing individual roles is a component of the Government's theory of the case. Courts have repeatedly affirmed the use of terms that are consistent with the government's theory of the case, including the use of the term "victim" in sex trafficking and assault cases. *See, e.g.*, *United States v. Stennis*, No. 20-cr-19 (PJS/BRT) (Oct. 1, 2021), ECF No. 144 ¶ 18 (denying this same motion from defense counsel in a sex trafficking case); *United States v. Michael Morris, et al.*, 17-cr-107 (DWF/TNL) (same); *United States v. Pumpkin Seed*, No. 07-cr-50062 (AWB), 2008 WL 11450454, at *1 (D.S.D. 2008) (permitting use of the word "victim" in a sexual assault case); *see also United States v. Johnson*, 463 F.3d 803, 809 (8th Cir. 2006) (use of term "kickback" to describe defendant's conduct, while "certainly not favorable to" the defendant, was not unfairly prejudicial where evidence supported the use of the term, which was of a "generally understood meaning"); *United States v. Carpenter*, 736 F.3d 619, 628 (1st Cir. 2013) (affirming government's use of terms "parking" money in "escrows" to describe fraud scheme consistent with government theory of the case). Courts have also approved the use of the term "victim" in the context of jury instructions. *United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) ("[A] number of courts have determined that the use of the term 'victim' in jury instructions is not prejudicial to a

8

defendant's rights when, as is the case here, the instructions taken as a whole clarify the government's burden of proving all elements of the crime.").

As such, the Court should deny Defendant's motion in limine.

7. **Defendant's Motion to Prohibit Rule 404(b) Evidence (ECF No. 313)**

The Government timely noticed that it would be offering two categories of other bad acts evidence that are admissible as intrinsic evidence or, alternatively, under Federal Rule of Evidence 404(b). These included (1) references to uncharged victims and uncharged instances of, and attempts to engage in, sex trafficking and obstruction of justice; and (2) evidence that, while committing the charged offenses, Defendant engaged in various illegal behaviors, including providing and gifting alcohol and vapes to minors, giving his co-defendant Adderall, allowing minors to hold weapons, and offering to show his co-defendant how to make a fake ID.

Defendant asserts that he is objecting to all of this evidence, though he only addresses the first category in his motion in limine. Defendant claims the Government's notice is too vague (though no clarification was sought by Defendant during the meet-and-confer process).

The acts and individuals the Government plans to call are outlined in the indictment, discovery, and the draft exhibit list that the Government provided to defense counsel on March 3, 2023. Specifically, the Government intends to present (1) evidence underlying the counts that the Government will be dismissing at the pretrial hearing; (2) testimony that Defendant convinced Castro Medina to become his

9

recruiter by saying that he had other people performing that service for him in California; (3) evidence that Defendant and Castro Medina attempted to recruit other girls and young women, both directly and through associates of Castro Medina; and (4) testimony from girls who went to Defendant's condo with the victims, but did not have sex with Defendant.

As discussed in the Government's trial brief (ECF No. 306 at 15–18) and above, this evidence is intrinsic to the charged crimes or, alternatively, is admissible under Rule 404(b).

**8.     Defendant's Motion to Prohibit Testimony Based on Speculation and Conjecture (ECF No. 314)**

Defendant moves to exclude testimony "based on speculation, imagination, or conjecture, without basis in fact." He specifically objects to "fanciful assertions regarding hidden cameras, controlled substances, prescription medications, even witchcraft." The Government does not plan to elicit testimony that is based on conjecture. But the specific items that Defendant lists are based in fact. The Government seeks to admit some, but not all, of this evidence.

First, evidence of cameras and concerns about surreptitious recording is admissible. Several victims will testify that Defendant told them his bathroom mirror was a one-way mirror. Most victims will remark about a large gold mirror that hung above Defendant's bed. Defendant forced one victim to watch them have sex in this mirror. Victims felt "posed" by Defendant in the mirror. More than one victim

explained they were concerned that Defendant filmed their commercial sex acts. One victim explained this concern chilled her from reporting the trafficking. Castro Medina will describe Defendant sending her a photo of several naked girls, including one of the minor victims, naked on his bed face down, packed together like "sardines." All of this is intrinsic to the charged crimes, relevant, and properly admitted at trial.

Second, controlled substances and prescription medications are also fair game. Defendant—almost as a rule—plied his victims with alcohol. He gave one minor victim Klonopin or Xanex while they were drinking. And he regularly provided Castro Medina with Adderall as payment for her recruitment services.

Finally, Defendant was involved with witchcraft and voodoo. Castro Medina is aware of this fact based on her relationship with Defendant. Victims noted seeing voodoo dolls and other similar items when they were in Defendant's condo. Such items were photographed during the Government's execution of a search warrant at Defendant's home. These personal observations of the victims are relevant to prove that the victims were in fact in Defendant's home, as well as in explaining their concerns about Defendant. However, given the nature of these items, the Government will not seek to elicit this testimony in its case-in-chief at trial. Should the defense open the door to this evidence, the Government reserves its right to seek its admission, but will seek permission of the Court before doing so.

Respectfully submitted,

Dated: March 10, 2023

ANDREW M. LUGER
United States Attorney

*s/ Emily Polachek*
BY: EMILY A. POLACHEK
Attorney Reg. No.0390973
LAURA M. PROVINZINO
Attorney Reg. No. 0329691
MELINDA A. WILLIAMS
Attorney Reg. No. 491005 (D.C.)
Assistant United States Attorneys