UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ) | |
| ) | DEFENDANT ANTON JOSEPH |
| Plaintiff, ) | LAZZARO'S MOTION FOR A NEW |
| ) | TRIAL BASED ON JUROR AND |
| vs. ) | PROSECUTORIAL MISCONDUCT |
| ) | |
| Anton Joseph Lazzaro, ) | Crim. No. 21-173 (PJS/DTS) |
| ) | |
| Defendant. ) | |

\* \* \*

## MOTION

Defendant Anton Joseph Lazzaro, through his counsel, Daniel L. Gerdts, Esq., respectfully moves the Court for a new trial, pursuant to Federal Rule of Criminal Procedure 33(a) and (b)(1), based on newly discovered evidence of both juror and prosecutorial misconduct.

## ARGUMENT

I.   Juror Misconduct.

After the trial in this case, Mr. Lazzaro engaged an investigation firm to determine if the seated jurors had been truthful in their responses to the Court's questions in voir dire. After the preparation of transcripts, and a full investigation, the firm determined that five of the seated jurors likely concealed or were otherwise dishonest about material information. The final report regarding that information

was received by counsel over the weekend. The full report and exhibits are made a part of this motion as a sealed addendum. It has been submitted as a sealed filing because of the personal juror information contained therein.

None of this information was available to the Parties during the trial or within the weeks immediately following trial, and Defendant Lazzaro therefore invokes the Court's consideration of the motion pursuant to Rule 33(b)(1). He seeks a new trial based on jury misconduct that deprived him of a fair trial in violation of the Due Process clause. The standard for assessing such questions is well established:

> We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). The Eighth Circuit has construed McDonough as requiring a three-pronged showing to obtain relief: "Tucker would have to prove three things about the voir dire: 1) that Juror Johnson answered dishonestly, not just inaccurately; 2) that she was motivated by partiality; and 3) that the true facts, if known, would have supported striking her for cause. *United States v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998). In this case, of course, the voir dire was supplemented by a juror questionnaire. The Parties were forbidden from retaining copies of the completed questionnaires, however, so for the

2

reasons that will become obvious upon an examination of the investigation, Defendant seeks to make those questionnaires a part of the formal case record.

A summary of some of the findings regarding five of the seated jurors, and information that may have been dishonestly concealed:

Juror 34. The investigation revealed that this juror has a sister-in-law (her brother's wife) who is a "certified sexual and domestic abuse advocate with 12 years of experience" who "knows first-hand the traumatic effects of sexual violence." Juror 34's aunt (her mother's sister) also "is the new executive director for Sexual Assault Services in Brainerd." That aunt is "[a] survivor of both sexual assault and domestic violence." Her sister-in-law works for the same sexual assault services organization as her aunt. Obviously, the work and personal experiences of these fairly close family relations are material and important pieces of information in this kind of a case that appear to have been concealed by juror 34.

Juror 45. The investigation discovered that this juror's daughter has had 38 criminal cases in the state of Minnesota. The juror's sister also has a long criminal history going back to 1982. This kind of information is highly material in the voir dire of a potential juror in a criminal case. Although she also answered that she could be "very fair," she did not disclose her very strong anti-Trump political views and her extreme dislike of Justice Kavanaugh, re-posting a show about how "Trump's greatest weapon is his ability to wield victimhood, and he's taking full advantage of

it to defend Kavanaugh and undermine the #MeToo movement." Her support of the "Me-Too" movement, and apparent inability to be impartial regarding the allegations against Kavanaugh, render her answer that she can be "very fair" highly suspect. She also posted after the trial that she "was one of the lucky 12 to be picked for the Anton Lazzaro federal child sex trafficking case" There is ample reason to believe that she was not completely honest precisely because she wanted to be one of the "lucky 12" on this jury.

    Juror 10. The investigation revealed that this juror's only sister is "a member of and volunteer with RCDV Safe Haven, which is a non-profit organization that advertises they, 'Provide prevention, intervention, support, and advocacy, with emphasis on empowerment, to victims of rape and domestic violence.'" Once again, the close relation who advocates on behalf of victims of sexual abuse would have been material information.

    Juror 5. The investigation revealed that although this juror disclosed a pair of prosecutors with whom she was related by marriage, she did not reveal that she also was related to at least two police officers, including a police chief and a police captain.

    Juror 17. The investigation revealed that this juror's brother was convicted in Olmsted County after being charged with felony stalking and malicious punishment of a child.

4

The full investigation report, together with dozens of exhibits is submitted herewith as a sealed addendum, and provides much more detailed information. "There is a presumption that a juror's failure to respond honestly is indicative of bias." *United States v. Brown*, 913 F. Supp. 1324, 1333 (D. Minn. 1996), *aff'd,* 108 F.3d 863 (8th Cir. 1997). Mr. Lazzaro requests an evidentiary hearing to determine the extent of the juror misconduct pursuant to the procedures set forth in *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984), and *United States v. Tucker*, 137 F.3d 1016 (8th Cir. 1998).

II.   Prosecutorial Misconduct.

There is one issue regarding prosecutorial misconduct that also did not become known to Defendant until recently. It is the subject of Defendant's pro se submission just under a month ago, on 10 July 2023. *See* R. Doc. 417. It arises from the Government's use of a photograph that was received into evidence as Exhibit A-6, well known at trial as the "I don't fuck around" photo. The photo was sent as part of a group chat between Defendant Lazzaro, Coconspirator Castro-Medina, and Gabbie. In questioning Castro-Medina about the photograph, but without disclosing the context, the prosecution elicited information that was intended to mislead:

> Q. What photo did he send?
> A. He sent the picture on the screen.
> Q. What did it mean to you?
> A. It meant to me that he isn't going to play games. Like he's -- you know, he's going to pay up or he doesn't joke around.
> Q. He's going to pay for what?

5

>     A. Sex.

Tr. at 317-18. In the context of this case, that answer was calculated to misrepresent, and in a very material way. The actual context of the communications in which the photograph was sent had to do with a discussion about Jamaica, and people faking their wealth. There was no reference to sex whatsoever. The Government never disclosed the true context, and while the discovery supplied to Defendant included both the photo and the conversation, the software supplied did not display both the images and the texts together in context.

The photo was referenced several times at trial. In using it to cross-examine Defendant, Mr. Lazzaro explicitly asked for the context, but was rebuffed:

>     Q. This is the picture you sent with the caption, "I don't fuck around"?
>     A. Yes, but I don't --
>     Q. Mr. Lazzaro, just a yes or no.
>     A. Ma'am, with all due respect, you've taken out the context. I'm sure there was context. I wouldn't just send someone a picture of me with cash saying "I don't fuck around." That doesn't make any sense. There had to have been some context, and if I saw it, I would be happy to clarify why I sent that message, sure.
>     Q. Mr. Lazzaro, did you send this message to Gabbie and Gisela, this picture, "I don't fuck around"?
>     A. It appears so, yes.

Tr. at 1415-16. The prosecution even used it in closing argument to buttress its theory of the case, knowing it to be a misrepresentation:

>     the defendant made no bones about what he wanted. I don't fuck around. Stacks of cash. Message received. You see, the defendant liked what he bought: Sex with Gabbie, a minor.

6

Tr. at 1591-92. Since the end of trial, Defendant requested all of the data from ATT, and now understands the nature of the misrepresentation. He submits that this misrepresentation by the Government constitutes severely prejudicial misconduct by the prosecution that deprived him of a fair trial.

## CONCLUSION

Mr. Lazzaro moves the Court for a new trial based on the juror misconduct and prosecutorial misconduct identified herein.

Dated: 8 August 2023
Respectfully submitted,

DANIEL L. GERDTS, LAWYER

*s/ Daniel L. Gerdts*

Daniel L. Gerdts (#207329)
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
612.800.5086