UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| UNITED STATES OF AMERICA, | Case No. 21-CR-0173(1) (PJS/DTS) |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| ANTON JOSEPH LAZZARO, | |
| Defendant. | |

---

On March 31, 2023, a jury convicted defendant Anton Lazzaro of one count of conspiracy to commit sex trafficking of a minor and five counts of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594. ECF No. 346. On the evening of August 8, 2023—just hours before he was scheduled to be sentenced—Lazzaro moved for a new trial under Federal Rule of Criminal Procedure 33(b)(1) "based on juror and prosecutorial misconduct." ECF No. 448. The Court proceeded with sentencing as scheduled on August 9 and reserved its decision on Lazzaro's motion. ECF No. 452. Having now fully considered the motion, the Court denies it.

## I. BACKGROUND

For the most part, Lazzaro's new-trial motion is based on alleged juror misconduct that he claims to have discovered after hiring an outside firm—Covert Ops Jury Investigations, LLC ("Covert Ops")—to investigate the personal lives of the jurors

who returned the verdict against him.  The 17-page Covert Ops report provides

information related to five jurors who Lazzaro alleges were biased because they

concealed information during voir dire.  Lazzaro's allegations include the following:

1.      Juror 5 did not disclose that one of her cousins and one of her husband's
        cousins are police officers.

2.      Juror 10 did not disclose that her sister volunteers with an organization
        that provides support to survivors of rape and domestic violence.  The
        report also speculates, based on a Facebook post, that Juror 10's sister may
        herself be a survivor of domestic violence, something that (if true) Juror 10
        did not disclose.

3.      Juror 17 did not disclose that her brother was arrested and sentenced for a
        crime related to domestic violence.

4.      Juror 34 did not disclose that her sister-in-law and aunt have both worked
        for organizations that provide services to victims of sexual assault.

5.      Juror 45 did not disclose that her sister and daughter both have criminal
        records and that she has negative views of former President Trump and
        Supreme Court Justice Brett Kavanaugh.  Juror 45 also posted on
        Facebook (after the trial concluded) that she "was one of the lucky 12 to be
        picked for the Anton Lazzaro federal child sex trafficking case."

*See generally* ECF No. 449.

Lazzaro also seeks a new trial based on alleged prosecutorial misconduct related

to a single exhibit that the government offered at trial.  The exhibit—Government

Exhibit A-6—is a photograph of Lazzaro standing in underwear or a swimsuit[1] with

---

[1]Lazzaro contends that he is wearing a "swimsuit bedazzled with Vikings
Football imagery."  ECF No. 479 at 5.

stacks of cash visible in the foreground.  The photograph was originally sent by Lazzaro

as a text message to his codefendant (Gisela Castro Medina) and one of his victims.  The

government referred to the exhibit several times at trial, including during Castro

Medina's testimony, when she testified that the photo "meant to [her] that [Lazzaro]

isn't going to play games . . . he's going to pay up [for sex]."  Trial Tr. 317–18.

According to Lazzaro, the government's use of the exhibit was misconduct because the

government did not introduce "[t]he actual context" of the photograph or explain why

it was sent to Castro Medina—which, according to Lazzaro, "had to do with a

discussion about Jamaica, and people faking their wealth."  ECF No. 448 at 6.[2]

---

[2]In a pro se letter to the Court filed on July 10, 2023 [ECF No. 417], Lazzaro
purported to reproduce the context of the text-message conversation in which the
photograph was sent.  He said that he discovered this information by searching through
phone records after he was convicted.  According to Lazzaro, the photograph was sent
in the course of the following exchange of messages:

> Gisela Medina:  when tony said there's niggas who fake their
> wealth, he was right.  how's the ranch @tony
>
> Tony Lazzaro:  I don't fuck around [MMS Attached -
> (Exhibit A6), and Ranch Photos]
>
> Gisela Medina:  Someone likes football
>
> Gxxxxx:  the vikings

*Id*. at 2.

## II.  ANALYSIS

### A. Standard of Review

Lazzaro moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(1).  Under Rule 33(b)(1), a defendant may move for a new trial within three years of the jury's verdict, as long as the motion is based on "newly discovered evidence."  In order to succeed on his motion, Lazzaro must show that: "(1) the evidence was actually newly discovered since trial; (2) [Lazzaro] acted diligently; (3) the newly discovered evidence is neither merely cumulative nor impeaching; (4) the newly discovered evidence is material to the issues involved; and (5) it is probable that the newly discovered evidence would produce an acquittal."  *United States v. Chappell*, 990 F.3d 673, 677 (8th Cir.), *cert. denied*, 142 S. Ct. 217 (2021).

### B.  Newly Discovered

As a preliminary matter, the Court doubts that any of the information on which Lazzaro's motion is based is "newly discovered" within the meaning of Rule 33(b)(1).  If the evidence on which he relies is not, in fact, "newly discovered," Lazzaro's motion is untimely.  *See* Fed. R. Crim. P. 33(b)(2) (new-trial motion based on any reason *other* than newly discovered evidence must be brought within 14 days of jury verdict).

Whether evidence is "newly discovered" depends on "whether [it] could have been discovered earlier in the exercise of due diligence. . . . Rule 33 does not authorize district courts to grant new trials on the basis of [evidence that] is not newly discovered, but merely newly available." *United States v. Bell*, 761 F.3d 900, 911 (8th Cir. 2014) (quotations omitted). The evidence on which Lazzaro bases his new-trial motion seems to have been available before or during trial, and it seems that the evidence could have been discovered with due diligence.

With respect to the juror-misconduct claim: Both parties were given ample opportunity to participate in the jury-selection process, and Lazzaro did not make any attempt to use that process to explore the issues that he now raises. *Cf. id.* at 912 (noting that evidence was not newly discovered where "party knew that witness's importance, [but] failed to obtain the witness's testimony earlier"); *United States v. Ryan*, 153 F.3d 708, 713 (8th Cir. 1998) ("Ryan, who was afforded an adequate opportunity to conduct these types of tests prior to his trial, now seeks to retry his case in his motion for a new trial. His motion is premised, not on the existence of newly discovered evidence, but on the possibility that such evidence would have been revealed had he undertaken similar testing prior to his trial.").

For example, Lazzaro claims that certain jurors should have disclosed information about certain of their relatives. But both the Court's pre-screening

questionnaire that was mailed to prospective jurors and the Court's in-court

questioning of prospective jurors—neither of which Lazzaro objected to, despite being

given the opportunity to do so—made clear that jurors should only answer questions

about "anyone close to [them]" and *not* "everyone [they] know."  Voir Dire Tr. 7.  The

Court offered examples of the types of close relationships that mattered for purposes of

voir dire (which included some, *but not all*, familial relationships), but the Court

ultimately told the jurors to use their "honest judgment in deciding whether someone is

close to you."  *Id.*  If Lazzaro cared about other types of relationships, or was unwilling

to rely on the jurors' honest judgments about who was "close" to them, he could have

addressed those concerns with the Court before or during voir dire.  He did not.

Lazzaro also objects to the fact that certain jurors did not disclose that they have

family members who work or volunteer with organizations that provide support to

victims of sexual assault or domestic violence.  But the Court did not *question* the jurors

about ties to such organizations, and Lazzaro never asked the Court to do so.  Similarly,

Lazzaro objects to the failure of certain jurors to disclose that certain family members

had criminal records.  Again, though, the Court never *questioned* the jurors about the full

criminal histories of their family members, and Lazzaro never asked the Court to do so.[3]

---

[3]During voir dire, the Court asked about jurors' experiences with certain law-
enforcement agencies and criminal *trials*, but the Court did not ask the jurors to disclose
their family members' complete criminal histories, including arrests, minor traffic

(continued...)

And Lazzaro's objection to one juror's outspoken political opinions could have been addressed if he had asked the Court to question jurors about their political views during voir dire.  He did not.

With respect to his prosecutorial-misconduct claim:  The only basis for this claim is Lazzaro's contention that the government misrepresented the context of a photograph that it introduced at trial.  But it was Lazzaro who took the photo (it was a "selfie") and transmitted the photograph, and thus he already knew the context.  And even if he needed his memory refreshed, the documents that provided evidence of the context were available to Lazzaro and his attorneys before trial.  The fact that Lazzaro chose to wait until after trial to review records related to the text message does not make the context of the message "newly discovered."

In sum, Lazzaro has not provided a persuasive justification as to why he could not have discovered the evidence underlying his various misconduct claims before or during trial.[4]  *Cf. Bell*, 761 F.3d at 911–12 ("[T]he moving party must explain why the

---

[3](...continued)
infractions, and charges that did not go to trial.  And, again, Lazzaro never asked the Court to elicit that information.

[4]There is one exception:  Evidence that, *after* the trial, Juror 45 posted on Facebook that she "was one of the lucky 12 to be picked for the Anton Lazzaro federal child sex trafficking case" is obviously newly discovered.  But the fact that Juror 45 said that she was "lucky" to serve on the jury in this case—whether she was being sincere or sarcastic—does not in any way suggest that she was biased for or against either side.

evidence was not discovered before trial.  In other words, the moving party must allege facts from which the court may infer diligence on the part of the movant." (cleaned up)). All of the information contained in the Covert Ops report, as well as information providing the full context of Government Exhibit A-6, existed long before Lazzaro filed his new-trial motion, but he made no attempt to seek out or review that information. *Cf. Meadows v. Delo*, 99 F.3d 280, 282 (8th Cir. 1996).  Therefore, Lazzaro's motion is not properly before the Court under Rule 33(b)(1), and his motion is untimely under Rule 33(b)(2).

## C.  Juror Misconduct

Even if Lazzaro had brought a timely motion, the Court would reject it on the merits.  Lazzaro argues that the juror misconduct allegedly uncovered by Covert Ops "deprived him of a fair trial in violation of the Due Process clause."  ECF No. 448 at 2. He asks the Court to conduct an evidentiary hearing in order to determine the extent of juror misconduct.

In order to obtain a new trial based on alleged juror misconduct or bias, Lazzaro must show three things:

1.     That a juror or jurors answered questions during voir dire dishonestly (not just inaccurately);

2.     That the juror or jurors were motivated by partiality; and

-8-

3.    That the truth, if known, would have supported striking the juror
or jurors for cause.

*United States v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998); *see also McDonough Power*

*Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (holding that in order to obtain a new

trial based on a finding of juror misconduct or bias, the defendant must show "that a

juror failed to answer honestly a material question on *voir dire*, and then further show

that a correct response would have provided a valid basis for a challenge for cause").

This Court has discretion to determine whether an evidentiary hearing is

necessary. *Tucker*, 137 F.3d at 1026. The more serious the allegation of juror

misconduct, the more likely that an evidentiary hearing is required. *See id.*; *cf. United*

*States v. LaFuente*, 991 F.2d 1406, 1409 (8th Cir. 1993). A defendant is not entitled to an

evidentiary hearing if he fails to present a "colorable claim" of juror misconduct. *See*

*United States v. Muhammad*, 819 F.3d 1056, 1062 (8th Cir. 2016).

Here, Lazzaro has not presented the Court with sufficient evidence of

misconduct or bias to warrant an evidentiary hearing, much less a new trial. The Court

has thoroughly reviewed the Covert Ops report, and none of the information contained

in that report suggests that any juror answered a question dishonestly. As explained

above, the information "uncovered" by the report was not information that any juror

was *asked* to disclose during pretrial questioning or voir dire. Moreover, even if a

juror's answer to a question could be characterized as inaccurate, Lazzaro has not

offered any evidence that the inaccuracy was due to a juror's bias—rather than, say, to the fact that the juror had a lapse of memory or attention, or was nervous, or misunderstood the question, or honestly believed that someone was not "close" to him or her (as the Court defined that term).  *See United States v. Rushing*, 24 F.3d 243 (8th Cir. 1994) (per curiam) (unpublished) (affirming district court's denial of evidentiary hearing and new-trial motion based on allegation that juror answered voir dire question incorrectly); *see also United States v. Needham*, 852 F.3d 830, 839 (8th Cir. 2017) ("Because courts presume that a prospective juror is impartial, establishing juror partiality is a high hurdle.  Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position." (quotations omitted)).

Every juror seated on this case—including the five now challenged in Lazzaro's motion—assured the Court under oath that there was not any reason why he or she "might not be fair and impartial" if selected for the jury.  Voir Dire Tr. 47:18–21 (Juror 5), 77:10–14 (Juror 10), 110:11–16 (Juror 17), 173:6–9 (Juror 34), 226:6–9 (Juror 45).  None of the information in the Covert Ops report provides any reason to doubt these assurances.  Lazzaro's claim of juror misconduct is therefore denied.

### D.  Prosecutorial Misconduct

Lazzaro's claim of prosecutorial misconduct is meritless.  Lazzaro was given plenty of opportunity during trial to provide context for Government Exhibit A-6

during his own testimony, as well as during his cross-examination of the government's witnesses. In addition, the Court notes that Lazzaro did not actually provide the Court with any evidence of the allegedly missing context of the exhibit, other than his own unsworn explanation. *See* ECF No. 448 at 5–6 (citing Lazzaro's July 10, 2023 pro se filing, ECF No. 417). Even assuming that Lazarro's explanation is accurate, his explanation is not irreconcilable with Castro Medina's testimony about what the photo meant *to her* or with the arguments the government made at trial. As the government accurately points out in its response to Lazzaro's motion, "it is certainly possible for a photo to convey more than one message." ECF No. 473 at 14.

Finally, and most importantly, even if Lazzaro had introduced the allegedly missing context of the exhibit at trial, there is no chance—*none*—that the jury learning of the context of that photograph would have resulted in Lazzaro's acquittal. *See Chappell*, 990 F.3d at 677 (requiring defendant to prove, in order to obtain new trial based on newly discovered evidence, that the evidence "would [probably] produce an acquittal."). The jury had more than adequate evidence from which to find Lazzaro guilty—with or without Government Exhibit A-6. Therefore, Lazzaro is not entitled to a new trial based on his claim of prosecutorial misconduct.

-11-

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion for a new trial [ECF No. 448] is

DENIED.

Dated:   September 5, 2023

s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court