UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                    Case No. 21-CR-0173 (PJS/DTS)

Plaintiff,

v.                                                              ORDER

ANTON JOSEPH LAZZARO and
GISELA CASTRO MEDINA,

Defendants.

---

Laura M. Provinzino, Emily A. Polacheck, and Melinda A. Williams,
UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Daniel L. Gerdts, for defendant Anton Joseph Lazzaro.

Elizabeth R. Duel, for defendant Gisela Castro Medina.

Defendant Anton Lazzaro was convicted by a jury of five counts of sex

trafficking of minors and one count of conspiracy to commit sex trafficking of minors in

violation of 18 U.S.C. § 1591(a)(1), (b)(2) and § 1594(a), (c).  His codefendant, Gisela

Castro Medina, pleaded guilty to one count of conspiracy to commit sex trafficking of

minors in violation of 18 U.S.C. § 1594(c) and one count of obstruction in violation of 18

U.S.C. § 1591(d).  The Court recently sentenced Lazzaro and Castro Medina to prison

terms of 252 months and 36 months, respectively.  ECF Nos. 456, 484.

This matter is before the Court to resolve the issue of restitution.  For the reasons that follow, the Court orders that defendants' judgments be amended to award restitution in the total amount of $415,475.39.

### A.  Standard of Review

Victims of sex-trafficking offenses under §§ 1591 and 1594 are entitled to recover restitution for the "full amount" of losses incurred as a proximate result of the offenses. 18 U.S.C. § 1593(a), (b)(1), (b)(3); 18 U.S.C. § 2259(c)(2).  Such losses include:

> (A)  medical services relating to physical, psychiatric, or psychological care;
>
> (B)  physical and occupational therapy or rehabilitation;
>
> (C)  necessary transportation, temporary housing, and child care expenses;
>
> (D)  lost income;
>
> (E)  reasonable attorneys' fees, as well as other costs incurred; and
>
> (F)   any other relevant losses incurred by the victim.

18 U.S.C. § 2259(c)(2).  The government bears the burden of proving the amount of the loss by a preponderance of the evidence.  18 U.S.C. § 3664(e); *see* 18 U.S.C. § 1593(b)(2) ("An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.").

*B. Restitution for Victims other than Victim E*

The government has submitted exhibits documenting losses for the victims as follows:

- $1,994.23 for the father of Victim A, *see* Gov't Ex. A [ECF No. 443-1];

- $35,753.83 for the mother of Victim D, *see* Gov't Ex. B [ECF No. 443-2];

- $2,712 for the father of Victim E, *see* Gov't Ex. D [ECF No. 443-4]; and

- $2,782.53 for the Minnesota Crime Victims Reparations Board, representing $1,626.44 and $1,156.09 that the Board paid to the families of Victim A and Victim C, respectively, *see* Gov't Exs. E–F [ECF Nos. 443-5, 443-6].

All of these amounts are related to physical, psychiatric, or psychological care for the minor victims, Polachek Decl. ¶¶ 4–5, 7–9; Gov't Exs. A–B, D–F, which expenses are clearly compensable under § 2259(c)(2).  Castro Medina does not object to any of these amounts, *see* ECF No. 470 at 43, ECF No. 490 at 1, and Lazzaro objects only to the fact that the amounts listed in his first revised presentence investigation report ("PSR"), *see* ECF No. 419, are not tied to any identified compensable harm nor backed up by any evidence, *see* ECF No. 438 at 4, 9.  The Court admitted supporting evidence at Lazzaro's sentencing hearing, however, *see* ECF No. 475 at 33–34, and, as noted above, the

evidence supports the victims' restitution requests.  The Court therefore orders

restitution for the victims and in the amounts listed above.

### C.  Restitution for Victim E

Victim E requests restitution in the total amount of $717,232.80, which represents:

- $690,000 for future therapy;

- $902.23 in mileage to and from therapy appointments;

- $24,943.50 in anticipated lost wages; and

- $1,387.07 for replacing a purse given to her by Lazzaro.

Polachek Decl. ¶ 6; Gov't Ex. C [ECF No. 443-3]; *see also* ECF Nos. 436-1, 472.

### 1.  Mileage, Lost Wages, and Purse

With respect to the amounts for mileage, anticipated lost wages, and the purse:

Castro Medina raises no objection, *see* ECF No. 470 at 43, ECF No. 490 at 1, and, as

noted, Lazzaro only objects that the amounts listed are not tied to any identified

compensable harm nor backed up by evidence, *see* ECF No. 438 at 4, 9.

The cost of the purse is supported by a receipt for the amount requested, ECF

No. 443-3 at 4, and the Court therefore overrules Lazzaro's objection as to that amount.

The amount for mileage was calculated using the IRS reimbursement rate of

$0.655 per mile, *see* Polachek Decl. ¶ 6, and evidently relates to the 52 therapy sessions

that the victim has already had, *see id.* ¶ 7.  Based on the location of victim's residence

and the location of her therapist's office, *see* ECF No. 443-3 at 1–2, this appears to be a reasonably accurate request.  The Court therefore overrules Lazzaro's objection to this amount.

The amount for anticipated lost wages accounts for the fact that the victim was not able to complete high school on account of being victimized by Lazzaro.  In a letter, the victim's therapist recommends that the victim take six months off from work to complete school, with another six-month transition period of part-time work.  ECF No. 443-3 at 2.  According to the victim and the therapist, given the victim's current average earnings from her job, this would represent a loss of income of $24,943.50.  ECF No. 443-3 at 1–3.  Although the government did not submit any underlying documentation of the victim's current earnings, the victim's assertion in her declaration is sufficient to establish the amount.  *Cf. United States v. Hoskins*, 876 F.3d 942, 946 (8th Cir. 2017) ("in the context of already-incurred expenses, we have held that the district court was entitled to rely on the testimony of the victim and her mother, and 'a basic knowledge of medical expenses,' in determining the amount of restitution to be awarded" (citation omitted)).  The Court therefore overrules Lazzaro's objection to this amount.

-5-

2.  Future Therapy

Both Lazzaro and Castro Medina object to Victim E's request for $690,000 for future therapy.  The amount that Victim E has requested is extraordinary, and the request gives the Court pause.

"[I]t is well-established that mandatory restitution pursuant to § 2259 allows restitutionary damages for the future costs of therapy."  *Hoskins*, 876 F.3d at 946.  While "predicting future psychological damages is notoriously difficult," a district court is "only required to make a reasonable estimate, not establish the victim's future treatment costs with certainty."  *United States v. Palmer*, 643 F.3d 1060, 1067 (8th Cir. 2011); *see also Hoskins*, 876 F.3d at 946 ("there is a certain degree of conjecture involved in any estimation of future psychological damages").

The government's original submission in support of Victim E's future-therapy request consisted of a short letter from the victim's treating psychologist.  *See* ECF No. 436-1.  The Court requested more detailed evidence and gave each defendant a chance to respond.  *See* ECF No. 475 at 35–38; ECF No. 454; ECF No. 490.

In response, the government submitted a declaration from Victim E's treating psychologist.  ECF No. 472.  The psychologist, who has more than 20 years of experience, is an expert in treating post-traumatic stress disorder ("PTSD") and has worked with other trafficking victims.  *Id.* at 1–2.  The psychologist diagnosed Victim E

-6-

with (among other things) complex PTSD, which the psychologist traces to the victim's interactions with Lazzaro and to her being an eyewitness to Lazzaro's abuse of a friend. *Id.* at 2.  The psychologist opines that Victim E will need weekly therapy for the rest of her life, and the psychologist says that her opinion is shared by five other psychologists with similar expertise with whom she has consulted.  *Id.* at 3–4.  Based on this assessment, the psychologist calculates that Victim E will need $1,150 per month for 50 years to cover the cost of weekly therapy and periodic assessments.  ECF No. 444-3 at 2.

In addition to this evidence, there was testimony at trial concerning PTSD from Dr. Sharon Cooper, a developmental and forensic pediatrician and internationally recognized expert on sex trafficking who has treated over 300 sex-trafficking victims. Trial Tr. 57–58, 61–64 [ECF No. 362].  Dr. Cooper's experience includes 17 years with the National Center for Missing and Exploited Children, where she trained law-enforcement officers and judges both within and outside the United States.  Trial Tr. 60–61.  Dr. Cooper testified about the physical and mental harms caused by this type of victimization and opined that even victims who have had only one encounter may be highly traumatized.  Trial Tr. 65–66, 75–76, 99.

Based on the evidence from the victim's treating psychologist and Dr. Cooper's trial testimony, the Court finds it more likely than not that Victim E will require many

years of future therapy.  The Court does not believe, however, that the record supports

a finding that Victim E will require weekly therapy for the next 50 years.  The treating

psychologist traced the need for such a lengthy period of intensive treatment to the

various developmental stages and life situations that the victim will encounter, such as

dating and having children.  ECF No. 472 at 3–4.  But the psychologist relied heavily on

general information about the impact of adverse childhood experiences and did not

identify anything specific to Victim E to support such an extraordinary request nor

explain why Victim E would require *weekly* therapy until she is nearly *70 years old*.  By

way of comparison, the Court notes that in *United States v. Osman*, 853 F.3d 1184 (11th

Cir. 2017), an expert similarly testified that the victim would need support at certain

developmental stages, but did not prescribe a lifetime of weekly therapy; instead, the

expert opined that the victim would likely need discrete courses of therapy as she

encountered each stage.[1]  *Id.* at 1185–87.

---

[1]The psychologist also pointed to a recent case in which a victim was awarded approximately $875,000.  ECF No. 472 at 4.  But Victim E is not similarly situated to the victim involved in that case.

Among other things, that victim was 12 years old when her victimization began, her own family participated in her victimization by coercing her to send sexually explicit photographs of herself to the defendant, the victim was sexually assaulted by the defendant on multiple occasions, the defendant recorded and photographed those sexual assaults, and the defendant apparently distributed those images over the Internet (where they can forever be viewed).  Moreover, the award encompassed not just future medical expenses, but future lost income and future living expenses (because the victim

(continued...)

The Court therefore does not believe that $690,000 is a reasonable estimate of Victim E's future treatment expenses.  Given that the treating psychologist opined that Victim E would have a particular need for therapy to handle various developmental stages in her life, the Court finds that a restitution award calculated to cover 25 years of weekly therapy is adequately supported by the record.  Twenty-five years will cover the victim until she is almost 45 years old, an age when she will likely have established a stable partner relationship and finished having children.  While Victim E may need the help of a therapist to deal with life changes that occur after age 45, the Court believes that awarding restitution for weekly therapy on such a basis goes beyond the level of permissible conjecture.

The Court therefore orders restitution for Victim E's future therapy expenses in the amount of $345,000, which constitutes 25 years of weekly therapy calculated at

---

[1](...continued)
could not live with her family).  The victim's attorneys also acknowledged that the restitution award "was significantly higher than precedent restitution award orders." *See* https://www.lw.com/en/news/2022/11/firm-secures-restitution-victim-sexual-exploitation-human-trafficking (cited in ECF No. 472 at 4).

By contrast, Victim E had two brief sexual encounters with Lazzaro, both of which she sought out in the hope of being paid by Lazzaro, and neither of which involved violence or coercion (except the coercion implicit in the fact that she was too young to consent); she was 16 at the time of her victimization; her family was not involved; her sexual abuse was not recorded (much less distributed); and the $690,000 she seeks is solely for future medical expenses (not lost income or living expenses).

$1,150 per month.[2]  As Castro Medina does not dispute that she should be held jointly and severally liable with Lazzaro for Victim E's restitution award, the Court will impose joint and several liability.

Castro Medina suggests that the Court set up a trust for the award to ensure that it is spent on therapy and so that any unused portion may be returned to Castro Medina.  The Court rejects this suggestion.  To begin with, the Court notes that the restitution award is a conservative estimate, as it is based on the current cost of therapy without accounting for inflation.  *See* ECF No. 443-3 at 2.  This is sufficient to allow for the necessarily speculative nature of the estimate of the number of years and frequency of treatment that the victim will need.  For that reason alone, the Court does not believe that setting up a trust is necessary or advisable.

Setting that aside, the Court believes that such a condition would be inconsistent with the law governing the calculation and imposition of restitution awards.  As a general matter, courts are expected to calculate the full amount of restitution either at or shortly after sentencing.  18 U.S.C. § 3664(d)(5) ("If the victim's losses are not

---

[2]The Court notes that the treating psychologist's estimate of $245 per individual psychotherapy session, *see* ECF No. 443-3 at 2, is in line with the Court's knowledge of medical expenses in the Twin Cities.  *See United States v. Emmert*, 825 F.3d 906, 911 (8th Cir. 2016) (noting that the district court was entitled to rely on, among other things, "a basic knowledge of medical expenses" in calculating a restitution award).

-10-

ascertainable by the date that is 10 days prior to sentencing, the attorney for the

Government or the probation officer shall so inform the court, and the court shall set a

date for the final determination of the victim's losses, not to exceed 90 days after

sentencing.").  Castro Medina's proposal, by contrast, contemplates a reduction in the

restitution award that may take place many years in the future, essentially leaving the

issue of restitution open indefinitely and contingent on future events.  While courts

have limited authority to impose post-sentencing *increases* in the restitution award to

account for newly discovered losses, *see id.* (providing for limited authority to increase

the restitution award after sentencing), the Court is not aware of any authority that

would permit a post-sentencing *reduction* of an otherwise valid restitution award.  *Cf.*

*Palmer*, 643 F.3d at 1066–67 (reversing district court's special condition requiring the

defendant to maintain a fund containing $5,000 for restitution because "[t]he MVRA's

requirement of 'specified intervals' necessitates preordained dates and may not be

conditioned on the occurrence (or non-occurrence) of future events at unknown points

in time"); *see also In re Sealed Case*, 702 F.3d 59, 67 (D.C. Cir. 2012) ("We compensate a

victim with restitution, that is, money—whether she chooses to use the money in a

particular way is up to her."); *United States v. Rockett*, 752 F. App'x 448, 450 (9th Cir.

2018) ("We have . . .  affirmed restitution in similar cases without requiring actual use of

the award for its specified purpose.").[3]  The Court therefore declines to order that

restitution be paid into a trust.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      Defendant Anton Joseph Lazzaro's sentencing judgment [ECF No. 456] is

ordered to be amended as follows:

a.      Defendant is ordered to pay restitution in the total amount of

$415,475.39, to be distributed to the victims as follows:

i.      $1,994.23 to the father of Victim A;

ii.     $35,753.83 to the mother of Victim D;

iii.    $2,712.00 to the father of Victim E;

iv.     $2,782.53 to the Minnesota Crime Victims Reparations

Board; and

v.      $372,232.80 to Victim E.

---

[3]Castro Medina cites a case in which a district court ordered that restitution be
paid into a trust with any unused amount reverting to the defendant.  *See United States
v. Whitley*, 354 F. Supp. 3d 930, 938–39 (N.D. Ill. 2019).  But the district court imposed
that condition without explanation, and the Court does not find the case persuasive.

b.    Defendant is jointly and severally liable for this amount with his

codefendant Gisela Castro Medina.  This amount is due and

payable immediately.  The interest requirement is waived.

c.    While defendant is incarcerated, he must make payments toward

his restitution obligation as follows:  If he is working UNICOR, he

must make monthly payments of 50 percent of his earnings.  If he is

not working UNICOR, he must make quarterly payments of $25.

d.    Within 30 days of release from prison, defendant must begin

making monthly payments of $2,500 toward any remaining

restitution obligation.  If the probation officer determines that

defendant is able to pay more than $2,500 per month, the probation

officer must notify the Court so that the Court may determine

whether to modify this restitution order.  Defendant's payments

should be made to the Clerk of U.S. District Court for the District of

Minnesota.  Defendant's obligation to pay the full amount of

restitution continues even after his term of supervised release has

ended.  If he is unable to pay the full amount of restitution at the

time his supervised release ends, he may work with the U.S.

Attorney's Office Financial Litigation Unit to arrange a restitution

payment plan.

2.      Defendant Gisela Castro Medina's sentencing judgment [ECF No. 484] is

ordered to be amended as follows:

a.      Defendant is ordered to pay restitution in the total amount of

$415,475.39, to be distributed to the victims as follows:

i.      $1,994.23 to the father of Victim A;

ii.     $35,753.83 to the mother of Victim D;

iii.    $2,712.00 to the father of Victim E;

iv.     $2,782.53 to the Minnesota Crime Victims Reparations

Board; and

v.      $372,232.80 to Victim E.

b.      Defendant is jointly and severally liable for this amount with her

codefendant Anton Joseph Lazzaro.  The interest requirement is

waived.

c.      While defendant is incarcerated, she must make payments toward

her restitution obligation as follows:  If she is working UNICOR,

she must make monthly payments of 50 percent of her earnings.  If

she is not working UNICOR, she must make quarterly payments of $25.

d.    Within 30 days of release from prison, defendant must begin making monthly payments of $50 toward any remaining restitution obligation.  If the probation officer determines that defendant is able to pay more than $50 per month, the probation officer must notify the Court so that the Court may determine whether to modify this restitution order.  Defendant's payments should be made to the Clerk of U.S. District Court for the District of Minnesota.  Defendant's obligation to pay the full amount of restitution continues even after her term of supervised release has ended.  If she is unable to pay the full amount of restitution at the time her supervised release ends, she may work with the U.S. Attorney's Office Financial Litigation Unit to arrange a restitution payment plan.

Dated:  October 18, 2023

 s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court